1   **BURSOR & FISHER, P.A.**
    L. Timothy Fisher (State Bar No. 191626)
2   Sarah N. Westcot (State Bar No. 264916)
    1990 North California Boulevard, Suite 940
3   Walnut Creek, CA  94596
    Telephone: (925) 300-4455
4   Facsimile:  (925) 407-2700
    E-Mail: ltfisher@bursor.com
5           swestcot@bursor.com

6   **BURSOR & FISHER, P.A.**
    Scott A. Bursor (State Bar No. 276006)
7   369 Lexington Avenue, 10th Floor
    New York, New York  10017
8   Telephone: (646) 837-7150
    Facsimile:  (212) 989-9163
9   E-Mail: scott@bursor.com

10  *Attorneys for Plaintiffs*

11  [Additional counsel listed on signature page]

12                  UNITED STATES DISTRICT COURT

13              EASTERN DISTRICT OF CALIFORNIA

14

15  KYLE DEI ROSSI and MARK LINTHICUM, on        Case No. 2:12-cv-00125-JAM-JFM
    behalf of themselves and those similarly situated,
                                                 **FIRST AMENDED CLASS ACTION**
16                                               **COMPLAINT**
                              Plaintiffs,
17                  v.                           **JURY TRIAL DEMANDED**

18  WHIRLPOOL CORPORATION,

19                              Defendant.

20

21

22

23

24

25

26

27

28

---
                 FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kyle Dei Rossi and Mark Linthicum, by their undersigned attorneys, bring this class action complaint against Whirlpool Corporation ("Whirlpool").  Plaintiffs' allegations are based upon personal knowledge as to their own acts and upon information and belief as to all other matters.

### JURISDICTION

1.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

### VENUE

3.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant Whirlpool does business throughout this district, and a substantial part of the events giving rise to Plaintiffs' claims took place within this judicial district.

### NATURE OF THE ACTION

4.    This is a class action against Whirlpool for misrepresenting the energy efficiency of KitchenAid KSRG25FV** and KSRS25RV** model refrigerators (hereafter, the "Mislabeled Refrigerators") by promoting them as ENERGY STAR®-qualified and labeling them with the ENERGY STAR® logo.  In fact, the Mislabeled Refrigerators do **not** meet the ENERGY STAR® standards for energy efficiency, and consume significantly more energy than their labels state.[1]

5.    ENERGY STAR®-qualified refrigerators are required by the U.S. Department of Energy ("DOE") to use 20% less energy than standard models.  They are more expensive than standard models, but they come with the promise of reduced energy bills that, over time, will

---

[1]  KitchenAid models KSRG25FV** and KSRS25RV** are available in a variety of colors where ** indicates the model's color, *e.g.*, KSRG25FVMS (monochromatic stainless steel), KSRG25FVMT (monochromatic satina), KSRG25FVBL (black), and KSRG25FVWH (white-on-white).  Each of these variations shares the same Energy Guide and ENERGY STAR® label.

generate enough savings to recoup the higher price.  This is the fundamental bargain the ENERGY STAR® program offers: consumers pay a higher up-front price initially, but save more on energy bills over time using the product.

6.     As a result, there is tremendous demand by consumers for ENERGY STAR®-qualified appliances and products that bear the distinctive ENERGY STAR® mark.  "The ENERGY STAR® label is a critical tool for consumers looking to save energy and money with their appliances."  Scott Blake Harris, Department of Energy, General Counsel.  In fact, "[t]he ENERGY STAR mark ranks among the highest level of influence on product purchase among all consumer emblems, similar in ranking to the Good Housekeeping Seal."  An independent study commissioned by Whirlpool confirms that the "majority of consumers look for [the] ENERGY STAR label when making purchase decisions."

7.     Defendant's promotion and sale of Mislabeled Refrigerators as ENERGY STAR® compliant, when in fact they are not, is false and misleading, rendering any promised benefits of energy efficiency and savings illusory.  For class members who purchased the Mislabeled Refrigerators, the promised savings from reduced energy bills never came.  Instead, class members were hit with a costly double-whammy: a higher up-front price due to the substantial price premium that ENERGY STAR® refrigerators command in the marketplace, followed by higher energy bills over the refrigerator's useful life, since its actual energy consumption is substantially higher than what was promised.  Each class member paid a higher initial price for their refrigerator and will pay higher energy bills every month – month after month and year after year – for as long as the refrigerator remains in use.  Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of the Mislabeled Refrigerators, for violations of the Magnuson-Moss Warranty Act, for breach of express warranty, for breach of implied warranty of merchantability, for unjust enrichment, for violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, et. seq., for violation of the California Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 et seq., and for violation of California's False Advertising Law ("FAL"), Business & Professions Code §§ 17500 et seq.

**THE PARTIES**

8.      Plaintiff Kyle Dei Rossi is a citizen of California, residing in Stockton, California.

9.      Plaintiff Mark Linthicum is a citizen of California, residing in Los Angeles, California.

10.     Defendant Whirlpool is a Delaware corporation with its principal place of business in Benton Harbor, Michigan.  Whirlpool is one of the world's leading manufacturers of home appliances.  Whirlpool represents that it "is an industry leader in developing high-performance appliances that help conserve the earth's resources and allow homeowners to use resources more efficiently."  Whirlpool's Chairman and CEO, Jeff M. Fettig, boasts on Whirlpool's corporate website that, "At Whirlpool Corporation, we take our environmental responsibilities very seriously. Just as we have taken a global approach to our home appliance business, we believe our world's environmental issues, such as climate change, must be addressed in a similarly comprehensive way. This is why we continue to develop innovative products that minimize their impact on the environment while making our consumers' lives easier."   Since 1975, the Company has played a leadership role in crafting every major appliance efficiency regulation, "including a leading role in setting the ENERGY STAR program standards."

**FACTS COMMON TO ALL CLAIMS**

**A.  The ENERGY STAR® Promise and Its Significant Effect on Consumers**

11.     The Energy Policy and Conservation Act of 1975 ("EPCA"), 42 U.S.C. §§ 6291, *et seq.*, established an energy conservation program for major household appliances.  EPCA was amended by the National Energy Conservation Policy Act of 1978 ("NECPA"), Pub. L. 95-619, to, among other things, give the DOE authority to regulate the minimum energy efficiency of several products, including residential refrigerator-freezers.  Further amendments to EPCA in the National Appliance Energy Conservation Act of 1987 ("NAECA"), Pub. L. 100-12, established minimum energy efficiency standards for refrigerator-freezers.  In totality, the ECPA, NAECPA, and NAECA give the DOE authority to establish energy efficiency standards for refrigerators, "promote Energy

Star compliant technologies," and the power to "preserve the integrity of the Energy Star label." 42 U.S.C. § 6294a.

12.    ENERGY STAR® is a government-backed program to "identify and promote energy-efficient products in order to reduce energy consumption, improve energy security, and reduce pollution through voluntary labeling of, or other forms of communication about, products and buildings that meet the highest energy conservation standards." *See* 42 U.S.C. § 6294a.  The program is jointly administered by the DOE and the Environmental Protection Agency ("EPA"). To qualify for the ENERGY STAR® program, most refrigerators must be at least 20% more energy efficient than the minimum energy efficiency standards mandated by federal law.

13.    Participation in the ENERGY STAR® program has a significant impact on the marketability of products.  The most significant tool used in the ENERGY STAR® program is the ENERGY STAR® label that incorporated the ENERGY STAR® certification mark.  All appliances with the ENERGY STAR® label are required to meet the strict energy efficiency guidelines set by the EPA and the DOE.  The message conveyed by the ENERGY STAR® logo is that the consumer can maximize his or her energy savings while helping to protect the environment.  The national retailers that dominate the appliance market rely extensively on ENERGY STAR®-related promotions, as well as the distinctive logo, to sell refrigerators and bring consumers to their stores.



14.    To promote the message of energy efficiency and savings, the EPA launched a broad outreach campaign in 1997, encouraging consumers to look for the distinctive ENERGY STAR® label.  The campaign prominently mentioned the environmental benefits of the ENERGY STAR®

program, but the focus was still on the financial savings that consumers could realize through superior energy efficiency.  According to the EPA, the first consumer campaign had three key messages:

>**ENERGY STAR saves you money and protects the environment.** Use of qualified products in your home can mean up to 30 percent savings.
>
>**The second price tag.**  Products have two price tags: the purchase price plus the cost of electricity needed to use the product over its lifetime.
>
>**An easy choice.**  Either the product is energy efficient because it displays the ENERGY STAR label, or it isn't.

15.     To facilitate the guiding principle of easily identifying energy efficient appliances that offer savings on energy bills, EPA set up specific promotional and labeling guidelines for ENERGY STAR® qualified appliances and the use of its distinctive ENERGY STAR® mark as a label.  Specifically, the publication titled "Using the Energy Star Identity to Maintain and Build Value" provides examples and recommendations by the EPA "on how to get the greatest value of the Certification Mark."

16.     These marketing efforts have culminated in one of the most recognizable, global symbols for energy efficiency.  Scott Blake Harris, General Counsel for the DOE has stated that "[t]he ENERGY STAR® label is a critical tool for consumers looking to save energy and money with their appliances."

17.     In fact, the ENERGY STAR® label was *specifically engineered* to convey a simple message to consumers: that a given appliance meets rigorous energy efficiency standards.  For instance, in a January 2006 letter to the Federal Trade Commission, Whirlpool wrote that "Whirlpool and the Association of Home Appliance Manufacturers (AHAM) conducted a consumer research study where a nationally representative sample of 1,000 respondents compared the current [ENERGY STAR®] label with three alternatives…  The purpose of the study was to … determine which label design which, with an ENERGY STAR® logo added, *most clearly conveyed high efficiency of that appliance*.  The goal was to determine which label provided the consumer with

the best information on the relative and absolute energy consumption of a particular model appliance.  It was equally important that the label <u>not</u> create the impression that it included information on anything other than energy consumption; that is, that it not imply anything about product quality, product performance or any other non-energy characteristic." (bold and italicized emphasis added, underline in original).

18.     The ENERGY STAR® label is more than a symbol.  It is an extremely successful informational device.  The DOE and EPA have found that "[s]ubstantial portions of U.S. households in the surveyed population recognize, understand, and are influenced by the ENERGY STAR label."  This is supported by a prominent national survey conducted in 2011, which found that 85% of households had at least a general understanding of the label's purpose, including 75% that had a "high understanding."

19.     That same survey found the ENERGY STAR® logo material, influencing the purchasing decisions of 88% of households that recognized it, including 76% whose purchase decisions were influenced "very much" or "somewhat."

20.     In September 2010, the EPA prepared a PowerPoint presentation entitled "Energy Star® Sales Associate Training – Refrigerators."  The EPA's PowerPoint presentation emphasizes that the ENERGY STAR®  logo helps consumers easily identify energy–efficient products and that "[t]he ENERGY STAR mark ranks among the highest level of influence on product purchase among all consumer emblems, similar in ranking to the *Good Housekeeping Seal*."  The PowerPoint presentation also included the following slide showing that the ENERGY STAR® label has an influence on 91% of consumers:

About ENERGY STAR

The ENERGY STAR mark ranks among the highest level of influence on product purchase among all consumer emblems, similar in ranking to the *Good Housekeeping* Seal.

21.     Moreover, Whirlpool's own internal survey data supports a similar finding of materiality.  On March 14, 2011, Whirlpool issued a press release stating: "According to a Whirlpool Corporation survey … energy efficiency is more important than ever in the purchase decision of consumers shopping for major appliances.  The majority of U.S. consumers (72%) said they actively look for the ENERGY STAR® label when making purchase decisions."  Similarly, on November 5, 2004, Whirlpool submitted a position paper to the DOE stating that "consumers recognize the ENERGY STAR mark as an indication that they will incur lower operating costs with these products."

22.     Earlier this year, on the 20th anniversary of the ENERGY STAR® program, the EPA issued a book entitled "Energy Star® Products – 20 Years of Helping America Save Energy, Save Money and Protect the Environment."  In the book, the EPA stated:

> Twenty years later, ENERGY STAR is a ***global symbol for energy efficiency***.  EPA recognizes ENERGY STAR products in more than 60 categories.  More than 90 percent of U.S. consumers recognize and understand the label, collectively buying an estimated 300 million ENERGY STAR qualified products every year. (emphasis added)

23.    In that book, Whirlpool's Government Relations Senior Specialist Nick Gillespie stated:

> Throughout the last 20 years, ENERGY STAR has been the market transformation program catalyzing manufacturers to introduce eco-efficient appliances into the market place that significantly benefit the consumer and the environment.  Although ENERGY STAR is a voluntary program, it did not take long for Whirlpool Corporation to see the potential in and help formulate what has been ***one of the most recognizable brands of its kind***.  Our ongoing commitment to the growth, success and integrity of the ENERGY STAR partnership has been a strong source of pride for Whirlpool Corporation for the last 20 years. (emphasis added)

24.    There is no doubt that Whirlpool considers the ENERGY STAR® label to be a "promise" of "energy savings," and "energy efficiency."  For example, on September 5, 2008, Whirlpool issued a press release titled "Whirlpool Corporation Leads Industry in Energy Efficiency; Company's ENERGY STAR(R) Qualified Appliances Deliver Promised Savings."  The article, released in response to reports of competitors exceeding reported energy ratings, was released to "reassure consumers that all of its French Door Bottom-Mount refrigerators - sold under the Whirlpool, Maytag, KitchenAid and Amana brands - have legitimately earned the ENERGY STAR credential by rigorously following the required energy testing procedures."  Furthermore, Phil Pejovich, vice president refrigeration, Whirlpool North America, stated: "We want consumers to know that when they purchase French Door Bottom-Mount refrigerators - and all ENERGY STAR qualified appliances by Whirlpool - they can do so with the confidence that they will deliver energy savings as communicated in-store, on the product and in the product literature."  Mr. Pejovich further added:

> Consumers who proactively seek ENERGY STAR qualified products are being deprived of the opportunity to effectively comparison shop based on energy consumption, not because of a problem with the test procedure, but by the failure of some manufacturers to follow it.
>
> We also are concerned for companies that purchase products from these manufacturers and re-sell them under their own brand names. They may be unwittingly depriving consumers of the energy savings and environmental benefits they expect of genuine ENERGY STAR qualified refrigerators.

25.     That same day, Michael A. Todman, President of Whirlpool North America, participated in a Morgan Keegan Equity Conference and stated: "***ENERGY STAR qualifications essentially say that there are significant savings from a consumer perspective***. So against the conventional appliances for electricity, okay, with an appliance that's ENERGY STAR qualified is on average about a 31% savings." (emphasis added).  He further declared: "If you put it into real terms, there is a slight premium that consumers will pay for [ENERGY STAR®] appliances.  But they're looking for pay back and right now on average the pay back period for ENERGY [STAR®] qualified appliances is around three, a little over three years, 3.4 years."

26.     Similarly, on March 9, 2009, Jeff M. Fettig, Chairman and Chief Executive Officer of Whirlpool, attended a Raymond James Institutional Investors Conference and boasted:

> We've been really championing the ENERGY STAR program and fundamentally reducing the energy efficiency in appliances.  We think it's also a compelling value story, and you'll see a lot of this at our point of sale, in stores on our products about the value opportunity for consumers.

> This is just an example of a typical product today in the marketplace. You can see the conventional appliance, which is what I would call a non-ENERGY STAR appliance.  Although the initial purchase price is less, the cost of ownership over a 10-year cycle is higher.  The product on the right is a comparable product with energy efficiency ratings. You pay a little bit more on the front end, but you save about 20% over the life of the product.  And if you compare that to an existing product that's over 10 years old, then it's more than 50%.  It's a dramatic opportunity for consumers to save and we're seeing very strong interest in our energy offerings in the marketplace today.

27.     In his presentation, Mr. Fettig showed several slides regarding Whirlpool's participation in the ENERGY STAR® program and the savings consumers could expect from purchasing ENERGY STAR® products.  Mr. Fettig's slides included the ENERGY STAR® logo.



28.     On April 7, 2010, Tom Catania, Whirlpool's Vice President for Government

Relations, participated in the Pew Center on Global Climate Change Best Practices Conference.

Mr. Catania made a presentation entitled "Increasing the Value of Energy Efficiency to the

Consumer: The Case of Major Home Appliances."  In the presentation, Mr. Catania showed a slide

entitled "ENERGY STAR Makes it Simple."  The slide, reproduced below, included the ENERGY

STAR® logo and touts the importance of the logo as the "National symbol for energy efficiency."



29.    Mr. Catania also said that in a December, 2008 survey, Harris Interactive discovered that "nearly three quarters (72%) of respondents actively look for the ENERGY STAR® label when making purchasing decisions" and that 84 percent of consumers said that energy "is most important to them when it comes to home appliance efficiency."    One of the slides from Mr. Catania's presentation is reproduced below:

**Whirlpool Corporation survey taps into today's eco-conscious consumer**

We commissioned a survey, conducted by Harris Interactive to be fielded online over a three day period in December 2008. In total, 2,042 consumers were surveyed from across all demographics – showing Whirlpool that appliance choice and habits vary across ages, sexes and even marital status.

With savings – on energy, water and money – top-of-mind for today's consumer, the survey took a deep dive into what's really driving consumer appliance purchases today.

A top finding revealed that **84 percent of consumers said that energy - not water or time - is most important to them when it comes to home appliance efficiency. In fact, nearly three quarters (72%) of respondents actively look for the ENERGY STAR® label when making purchasing decisions.**

WHIRLPOOL CORPORATION ▪ CONFIDENTIAL

**B.    Whirlpool's Reliance on the ENERGY STAR Logo in the Marketing and Sale of the Mislabeled Refrigerators**

30.    Whirlpool's Chairman and CEO, Jeff M. Fettig has boasted "[w]e've been really championing the ENERGY STAR program and fundamentally reducing energy efficiency in appliances.  We think it's a compelling value story, and you'll see a lot of this at our point of sale, in stores on our products about the value opportunity for consumers."

31.    In fact, in September 2008, after news broke that French Door refrigerators made by a competing manufacturer had been found to consume far more energy than their reported energy ratings, Whirlpool issued a press release assuring consumers that all of its refrigerators "have legitimately earned the ENERGY STAR credential by rigorously following the required energy testing procedures."  The press release further stated "Whirlpool Corporation asserts that all of its ENERGY STAR qualified products are in full compliance with ENERGY STAR requirements.  *See* http://investors.whirlpoo.com/releasedetail. cfm?ReleaseID=531663 (last accessed September 18, 2012).

32.     Moreover, Whirlpool touts the numerous awards received from the EPA in connection with its participation in the ENERGY STAR® program, including seven consecutive ENERGY STAR® awards for "Sustained Excellence."  For example, in 2009, Whirlpool announced that the "Company [was] being recognized for its exceptional efforts to manufacture, market, and promote ENERGY STAR qualified products."  Whirlpool noted that it received the ENERGY STAR® Award for "Sustained Excellence" for certain key accomplishments, including:

> Delivering ENERGY STAR training and marketing to retailers, housing industry representatives, utility companies, and consumers. Whirlpool's 2009 national print media featured creative executions that included the ENERGY STAR mark, along with energy and water efficiency messaging that reached over 550 million consumers.

33.     Similarly, Whirlpool aggressively marketed the KSRG25FV** and KSRS25RV** based on their ENERGY STAR® rating.  For example, one of the promotional brochures for the KSRS25RV printed in March of 2008, reproduced below, lists ENERGY STAR QUALIFICATION as the first feature of the product, along with an oversized image of the distinctive ENERGY STAR® logo alongside a photo of the model:

## Standard-Depth Side-by-Side
# Refrigerator






**Flush Advanced Electronic Through-the-Door Ice & Water Dispenser**

From the attractive design to the quick-fill performance, you'll find many reasons to appreciate this through-the-door dispenser. The sleek design includes an LCD display and two pads that are mounted to the back of the dispenser to allow tall and wide-mouthed containers to be filled.



**ExtendFresh™ Temperature Management System**

A system that features a single compressor with independent sensors in the refrigerator and freezer compartments to help monitor temperatures and maintain freshness.

### KSRS25RV – 25 Cu. Ft.

- ENERGY STAR® Qualified
- Formed Doors
- Flush Advanced Electronic Through-the-Door Ice & Water Dispenser
- LCD Dispenser Display
- Digital Controls
- ExtendFresh™ Temperature Management System
- AquaSense™ Base-Grille Filtration System – Filtered by POR®
- AquaSense™ In-Door-Ice® Ice Dispensing System
- Automatic Ice Maker
- On Demand Pulsed Defrost System
- Quick-Fill Water Dispenser
- FreshSeal™ Humidity-Controlled Crisper
- FreshChill™ Temperature-Controlled Meat Locker
- FreshSeal™ Deli Locker
- SatinGlide® System
- ClearVue™ Bins with Window
- OptimIce® Feature
- Max Cool
- Foam-in-Place Insulation
- White (WH), Black (BL), or Monochromatic Stainless Steel*

*with monochromatic Apollo grey cabinet (MS) or stainless steel cabinet (MK)

### PRODUCT DIMENSIONS



35½"     50"

69¾"

29¼"

35¼"

Dimensions are for planning purposes only. For complete details, see Installation Instructions packed with product. Specifications subject to change without notice.

## KitchenAid®
### FOR THE WAY IT'S MADE.®

®Registered trademark/™ Trademark of KitchenAid, U.S.A.
©2008. All rights reserved.
KitchenAid • Benton Harbor, Michigan 49022 U.S.A.
®ENERGY STAR is a U.S. registered mark.
POR® is a registered trademark of The Procter & Gamble Company.
®Shenandoah Cabinetry is a registered trademark of American Woodmark Corporation.
03/08    ®Zodiaq is a DuPont registered trademark for its quartz surfaces. Only DuPont makes Zodiaq.    (28158RC0308)

**For Additional Information About KitchenAid® Appliances**

Visit KitchenAid.com or call the Customer Experience Center 1-800-422-1230.

34.     Additionally, Whirlpool voluntarily posted the ENERGY STAR® logo on the Energy Guide label, which was packaged with each of the Mislabeled Refrigerators.  These Energy Guide labels have been routinely displayed on internet retailers' product websites for the Mislabeled Refrigerators and in or on the display models placed in retail showroom floors.  *See e.g.*, http://www.ajmadison.com/ajmadison/itemdocs/KSRG25FV-EnergyGuide.pdf (last accessed Sept. 21, 2012).

35.     The Federal Trade Commission maintains a website titled: Energy Guidance: Appliance Shopping With the Energy Guide Label.  Available at http://www.ftc.gov/bcp/edu/ pubs/consumer/homes/rea14.shtm (last accessed Sept. 21, 2012).  The site informs consumers about the significance of the ENERGY STAR® logo when it appears on a product's Energy Guide label.  The website states: "If you've shopped for appliances, you've seen the bright yellow Energy Guide label. … The more energy efficient an appliance is, the less it costs to run" and "If you see the ENERGY STAR® logo, it means the product is better for the environment because it uses less energy than standard models."



36.     Each of the Mislabeled Refrigerators included one of the following Energy Guide labels bearing the ENERGY STAR® logo:




37.     A listing for the KitchenAid KSRG25FVMS on the website of online retail giant Amazon.com highlighted the model's purported ENERGY STAR® qualification at the very top of the product feature list.  Previously available at http://www.amazon.com/Kitchenaid-KSRG25FVMS-Width-Standard-Depth-Architect/dp/B001BELCS/ref=sr_1_1?ie=UTF8&qid=1326140951&sr=8-1 (last accessed Jan. 9, 2012).

38.     Moreover, Lowe's included the Mislabeled Refrigerators' ENERGY STAR® qualification in the product description on its website "KitchenAid® 25.3 Cu. Ft. Side-by-Side Refrigerator (Color: Stainless) ENERGY STAR®," along with an oversized ENERGY STAR logo displayed next to a photograph of the Mislabeled Refrigerator:





39.     An enlarged image from the Lowe's website is reproduced below:

40.     Likewise, the consumer comparison site FindTheBest.com lists the Mislabeled Refrigerators as ENERGY STAR® refrigerators.



*See* http://energy-star-refrigerators.findthebest.com/l/902/KSRG25FV-0 (last accessed on September 21, 2012).



*See* http://energy-star-refrigerators.findthebest.com/l/908/KSRS25RV-0 (last accessed on September 21, 2012).

41.     On October 23, 2009, Whirlpool once again took the opportunity to reaffirm their compliance with the ENERGY STAR® program and promise of energy savings.  Specifically, on October 23, 2009, in an article titled "Whirlpool Corporation Applauds U.S. Department of Energy's Steps to Enforce Energy Efficiency Standards, the Company stated:  "'We're pleased that DOE is stepping up [ENERGY STAR®] enforcement as these actions are important for several reasons,' said Katrina Helmkamp, senior vice president, product business teams, Whirlpool Corporation.  'They will help ensure manufacturers of appliances are held accountable to deliver ***the energy savings they promise.***  In turn, consumers will be able to confidently use the Energy Guide

1  label to make energy performance comparisons among brands while shopping, and to attain in real

2  world use *the energy efficiency promised when they purchased the appliance*.'" (emphasis added).

3      **C.      Plaintiffs' Experience**

4          42.     On December 8, 2008, Plaintiff Kyle Dei Rossi purchased a KitchenAid refrigerator

5  model KSRG25FVMT at 7:21 p.m. from a Best Buy retail store in Stockton, California.  He paid

6  $1,439.99 plus tax, which included a substantial price premium due to its supposed energy

7  efficiency and ENERGY STAR® qualification.  Mr. Dei Rossi is an energy conscious person and

8  goes out of his way to avoid wasting energy.  He is very familiar with the ENERGY STAR®

9  program and learned about it from numerous news reports that explained the program and from

10 talking to his wife, parents and in-laws.  At the time he purchased the KitchenAid KSRG25FVMT,

11 he understood that the ENERGY STAR® program is a government program that promotes energy

12 efficiency and that the ENERGY STAR® logo indicates that the appliance is more energy efficient

13 than an appliance that does not have the ENERGY STAR® label.  While shopping for a new

14 refrigerator, Mr. Dei Rossi decided to look only at ENERGY STAR® models because he wanted to

15 do the right thing for the environment, meaning that he specifically wanted a model that met

16 rigorous standards for energy efficiency.  He would not have purchased the KitchenAid

17 KSRG25FVMT if he had known that it was not, in fact, ENERGY STAR® compliant.  The

18 refrigerator he purchased was marked with the ENERGY STAR® logo on the yellow Energy Guide

19 label affixed to the refrigerator.  The refrigerator he purchased also included the ENERGY STAR®

20 logo on the inside of the refrigerator next to the temperature gauge.  The logo is visible whenever

21 the door is opened.  A picture of the ENERGY STAR® logo inside Mr. Dei Rossi's refrigerator is

22 included below.  He saw the ENERGY STAR® logos prior to and at the time of purchase, and

23 understood the logos were a representation and warranty that the refrigerator met the standards of

24 energy efficiency established by the ENERGY STAR® program, and that the refrigerator would

25 help him maximize his energy savings while helping to protect the environment.  He relied on these

26 representations and warranties in deciding to purchase the refrigerator, and these representations

27 and warranties were part of the basis of the bargain, in that he would not have purchased the

28

KitchenAid KSRG25FVMT if he had known that it was not, in fact, ENERGY STAR® compliant.
He also understood that the purchase involved a direct transaction between himself and Whirlpool
because the refrigerator came with packaging and other materials prepared by Whirlpool, including
warranty materials referencing a manufacturer's warranty provided directly to the consumer,
indicating that he was purchasing warranty protection directly from Whirlpool as part of the
transaction.



43.     On December 31, 2008, Plaintiff Mark Linthicum purchased a KitchenAid
refrigerator model KSRS25RVHR at a Pacific Sales retail store in Los Angeles, California.  He paid
$1,997.00 plus tax, which included a substantial price premium due to its supposed energy
efficiency and ENERGY STAR® qualification.  He would not have purchased the KitchenAid
KSRS25RVHR if he had known that it was not, in fact, ENERGY STAR® compliant.  Like Mr.

Dei Rossi, Mr. Linthicum is a very energy conscious person.  He wants all of the appliances in his

home to be as energy efficient as possible.  He is very familiar with the ENERGY STAR® program

and looks for the ENERGY STAR® logo on all appliances he purchases.  He learned about the

ENERGY STAR® program from hearing about it on the news and from speaking to salespeople at

stores.  At the time he purchased the KitchenAid KSRS25RVHR, he understood that the ENERGY

STAR® program is a government program that promotes energy efficiency and that the ENERGY

STAR® logo indicates that the appliance is more energy efficient than an appliance that does not

have the ENERGY STAR® label.  Prior to purchasing the KitchenAid KSRS25RVHR, he looked at

advertisements for the refrigerator on the internet.  He saw the ENERGY STAR® logo in the

internet advertisements.  Prior to purchasing the KitchenAid KSRS25RVHR, he went to the store a

couple of times to look at the refrigerators sold by Pacific Sales.  He did not consider purchasing

any refrigerator that did not include the ENERGY STAR® logo and only looked at the

approximately 20 refrigerators that included the ENERGY STAR® logo.  The KitchenAid

KSRS25RVHR he purchased was prominently marked with the ENERGY STAR® logo on the

door.  He also saw the ENERGY STAR® logo on the yellow Energy Guide tag on the refrigerator.

He also saw the ENERGY STAR® logo on the inside of the refrigerator to the right of the

temperature panel.  Mr. Linthicum sees the ENERGY STAR® logo every time he opens his

refrigerator.  A picture of the ENERGY STAR® logo inside Mr. Linthicum's refrigerator is

included below.  He saw the ENERGY STAR® labels prior to and at the time of purchase, and

understood them as a representation and warranty by Whirlpool that the KitchenAid KSRS25RVHR

met the standards of energy efficiency established by the ENERGY STAR® program, and that the

refrigerator would help him maximize his energy savings while helping to protect the environment.

He relied on these representations and warranties in deciding to purchase the KitchenAid

KSRS25RVHR, and these representations and warranties were part of the basis of the bargain, in

that he would not have purchased the KitchenAid KSRS25RVHR if he had known that it was not,

in fact, ENERGY STAR® compliant.  He also understood that the purchase involved a direct

transaction with Whirlpool because the refrigerator came with packaging and other materials

prepared by Whirlpool, including warranty materials referencing a manufacturer's warranty provided directly to the consumer, indicating that he was purchasing warranty protection directly from Whirlpool as part of the transaction.



**D.     The DOE Determines that the Mislabeled Refrigerators Are Non-Compliant**

44.     The success of the ENERGY STAR® program depends on the accuracy and reliability of the ENERGY STAR® logo as an indicator of highly energy efficient products.  To protect the integrity of the ENERGY STAR® label and certification mark, the DOE has evaluated, and verified performance test results to assure the energy performance test results correspond to actual energy savings for consumers.

45.     On or about November 23, 2011, the DOE tested the energy efficiency of Whirlpool's KitchenAid models KSRG25FV** and KSR25RV** and determined those models to

be non-compliant with the requirements of the ENERGY STAR® program.  The DOE disqualified those models from the ENERGY STAR® program on November 23, 2011 because they did not comply with the requirements of the ENERGY STAR® program.  Specifically, the Mislabeled Refrigerators "did not meet the ENERGY STAR energy efficiency requirement for maximum permitted annual energy use"   The Mislabeled Refrigerators, which include all models sold between 2008 and 2011, were then removed from the ENERGY STAR® Qualified Products List.

46.     Moreover, when an appliance is disqualified by the DOE, the manufacturer must immediately cease labeling and shipping the appliance with the ENERGY STAR® logo, remove ENERGY STAR® references from related marketing materials, spec sheets and websites, and cover or remove labels on units within the manufacturer's control.

47.     The KitchenAid models disqualified by the DOE include the models purchased by Plaintiffs Dei Rossi and Linthicum.  Defendant Whirlpool did not modify the design or manufacture of the Mislabeled Refrigerators between 2008 and 2011.  The Energy Guide and ENERGY STAR® labels affixed to these models were unchanged from 2008 through 2011.

48.     When a basic model is disqualified by the DOE, the disqualification order includes "all units of a given type of covered product (or class thereof) manufactured by one manufacturer and … have the same primary energy source, which have electrical characteristics that are essentially identical, and which do not have any differing physical or functional characteristics that affect energy consumption."  10 C.F.R. § 430.  All units of KitchenAid models KSRG25FV** and KSR25RV** were manufactured by one manufacturer and have the same primary energy source, and have electrical characteristics that are essentially identical, and which do not have any differing physical or functional characteristics that affect energy consumption.   Thus, the refrigerators purchased by Plaintiffs Dei Rossi and Linthicum in 2008 were identical to those disqualified by DOE in 2011, and were among the units that were disqualified.

49.     Whirlpool either (a) tested the Mislabeled Refrigerators before marketing them and, at all times relevant hereto, knew that the models were non-compliant with the requirements of the ENERGY STAR® program or, in the alternative (b) affixed ENERGY STAR® labels to the

1   Mislabeled Refrigerators without testing them, and thus knew the representation concerning their

2   energy efficiency was baseless.

3          50.    The Mislabeled Refrigerators are not *and never were* ENERGY STAR® compliant.

4   They fail to meet ENERGY STAR® standards today.  They failed to meet the same standards in

5   2011.  And they failed to meet the same standards in 2008, when Plaintiffs purchased their

6   refrigerators.  Stated otherwise, the Mislabeled Refrigerators have never, at any point, been properly

7   labeled with the ENERGY STAR® logo.  This is analogous to the unauthorized practice of

8   medicine.  Suppose a fraudster misrepresents himself as a board-certified physician and opens a

9   medical clinic, only to be exposed years later.  This does not mean that the fraudster was properly

10  licensed to practice medicine prior to his exposure.  To the contrary, the fraudster was never

11  licensed, and any statements to the contrary were false.  Here, Whirlpool made similar

12  misrepresentations about the ENERGY STAR® status of the Mislabeled Refrigerators.  Just

13  because the DOE disqualified the units in 2011 does not mean they were compliant in 2008.  To the

14  contrary, the DOE's determination means the Mislabeled Refrigerators were *never* properly labeled.

15  Any representation to the contrary was false when it was made.

16         51.    Plaintiffs Kyle Dei Rossi and Mark Linthicum and each purchaser of the Mislabeled

17  Refrigerators paid a price premium due to their Mislabeled Refrigerator's supposed energy

18  efficiency and ENERGY STAR® qualification, and paid more money in additional energy costs to

19  operate the Mislabeled Refrigerator than each would have paid if the refrigerator had actually met

20  the ENERGY STAR® qualification as promised.  The additional energy costs can be reasonably

21  quantified by an appropriate study, and through objective mathematical processes, based on the data

22  from the DOE-initiated testing described herein.

23         52.    Plaintiffs and the Class members could not have discovered that their refrigerators

24  were not ENERGY STAR® compliant until the DOE's disqualification order was issued on

25  November 21, 2011.  No reasonable consumer has the knowledge or equipment to test appliances

26  for ENERGY STAR® compliance.

27

28

**CLASS ACTION ALLEGATIONS**

53.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased a Mislabeled Refrigerator, excluding those who purchased a Mislabeled Refrigerator for resale (hereafter, the "Class").

54.     Plaintiffs also seek to represent a subclass of all Class members who purchased a Mislabeled Refrigerator in the State of California for personal, family or household purposes (hereafter, the "California Subclass").

55.     Members of the Class and the California Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and California Subclass number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third party retailers and vendors.

56.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

      (a)     whether the Mislabeled Refrigerators were sold bearing false labels misrepresenting them as ENERGY STAR® compliant;

      (b)     whether Defendant violated the Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.*;

      (c)     whether Defendant breached an express warranty made to Plaintiffs and the Class;

      (d)     whether Defendant breached the implied warranty of merchantability made to Plaintiffs and the Class;

      (e)     whether Defendant was unjustly enriched by its conduct;

      (f)     whether Defendant violated the Consumer Legal Remedies Act;

      (g)     whether Defendant violated the Unfair Competition Law;

      (h)     whether Defendant violated the False Advertising Law; and

(i)     whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

57.     Plaintiffs' claims are typical of the claims of Class members because Plaintiffs and Class members purchased Mislabeled Refrigerators bearing false labels stating they were ENERGY STAR® compliant when in fact they were not.

58.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seeks to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

59.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### (Violation Of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)

60.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

61.     Plaintiffs bring this Count I individually and on behalf of the members of the Class against Defendant.

---

62.     The Mislabeled Refrigerators are consumer products as defined in 15 U.S.C. § 2301(1).

63.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

64.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

65.     In connection with the sale of the Mislabeled Refrigerators, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the products met the energy efficiency requirements of the ENERGY STAR® program and use less energy than a comparable appliance that does not have the ENERGY STAR® label.

66.     In fact, the Mislabeled Refrigerators did not meet the energy efficiency requirements of the ENERGY STAR® program.

67.     By reason of Defendant's breach of warranties stating that the Mislabeled Refrigerators met the energy efficiency requirements of the ENERGY STAR® program, Defendant violated the statutory rights due Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiffs and Class members.

68.     Plaintiffs and Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Mislabeled Refrigerators on the same terms if the true facts concerning their energy consumption had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the Mislabeled Refrigerators did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Refrigerators.

## COUNT II
### (Breach of Express Warranty)

69.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     Plaintiffs bring this Count II individually and on behalf of the members of the Class against Defendant.

71.     By including the ENERGY STAR® logo on all of the Mislabeled Refrigerators and in advertisements and marketing materials for the Mislabeled Refrigerators, Defendant expressly warranted that the Mislabeled Refrigerators were fit for their intended purpose in that they would function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program.

72.     Plaintiffs and the Class Members reasonably relied upon the ENERGY STAR® logo on the Mislabeled Refrigerators and in the advertisements and marketing materials for the Mislabeled Refrigerators and believed that the Mislabeled Refrigerators would function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program and use less energy than a comparable appliance that does not have the ENERGY STAR® label.

73.     In fact, the Mislabeled Refrigerators were not fit for such purposes because they do not function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program.

74.     Plaintiffs and Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Mislabeled Refrigerators on the same terms if the true facts concerning their energy consumption had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the Mislabeled Refrigerators did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Refrigerators.

75.     The Mislabeled Refrigerators are packaged with a separate Limited Warranty, which is inoperative to the extent that it attempts to disclaim the express warranty that Whirlpool created by affixing the ENERGY STAR® logo to the Mislabeled Refrigerators.  First, Plaintiffs did not read, understand, or rely upon the Limited Warranty in deciding whether to purchase their Mislabeled Refrigerators.  In fact, they only learned of its terms *after* the sale, in which they *did* rely upon the express warranty created by affixing the ENERGY STAR® logo.  Second, like most

consumers, Plaintiffs are not sophisticated in the field of contracts and warranties.  Third, Plaintiffs had no knowledge of the terms of the Limited Warranty, before or after the time of sale.  But they fully expected that ENERGY STAR® compliance was part of the basis of the bargain, in that they would not have purchased their Mislabeled Refrigerators if they had known they were not, in fact, ENERGY STAR® compliant.  Fourth, any disclaimers in Whirlpool's Limited Warranty are inconspicuous because they are hidden at the end of the Refrigerator User Instructions.  No reasonable consumer (including Plaintiffs) would have expected to find warranty disclaimers in their refrigerator's User Instructions, and no reasonable consumer (including Plaintiffs) would have read the User Instructions *before* purchasing his refrigerator.  Fifth, Plaintiffs did not consider the Limited Warranty to constitute a final, integrated contract.  They *first* understood and relied upon the ENERGY STAR® sticker as an express warranty that the Mislabeled Refrigerators met rigorous standards for energy efficiency.  They did not expect or believe that a separate "warranty" hidden at the end of their Refrigerator User Instructions would disclaim the express warranty that Whirlpool created by affixing the ENERGY STAR® logo to the Mislabeled Refrigerators.

## COUNT III
### (Breach of Implied Warranty of Merchantability)

76.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

77.     Plaintiffs bring this Count III individually and on behalf of the members of the Class against Defendant.

78.     By including the ENERGY STAR® logo on the Mislabeled Refrigerators and in advertisements and marketing materials for the Mislabeled Refrigerators, Defendant impliedly warranted that the Mislabeled Refrigerators were fit for their intended purpose in that they would function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program.

79.     Defendant breached the warranty implied in the contract for the sale of the Mislabeled Refrigerators in that the Mislabeled Refrigerators could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the

description, and the goods were unfit for their intended and ordinary purpose in that they did not function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

80.     The Mislabeled Refrigerators were marketed and sold as ENERGY STAR®-compliant appliances.  But they failed to meet the rigorous standards for energy efficiency mandated by the ENERGY STAR® program.  They are defective and unfit for ordinary use.  They fail to perform at the minimum level of quality for ENERGY STAR® appliances.

81.     In reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased the Mislabeled Refrigerators for use as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program.

82.     The Mislabeled Refrigerators were not altered by Plaintiffs and Class members.  The Mislabeled Refrigerators were defective when they left the exclusive control of Defendant.

83.     Defendant knew the Mislabeled Refrigerators would be purchased and used without additional testing for energy efficiency by Plaintiffs and Class members.  The Mislabeled Refrigerators were defectively designed and were unfit for their intended purpose and Plaintiffs and Class members did not receive the goods as warranted.

84.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the Mislabeled Refrigerators on the same terms if the true facts concerning their energy consumption had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the Mislabeled Refrigerators did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Refrigerators.

85.     The Mislabeled Refrigerators are packaged with a separate Limited Warranty, which is inoperative to the extent that it attempts to disclaim the implied warranty that Whirlpool created

by affixing the ENERGY STAR® logo to the Mislabeled Refrigerators.  First, Plaintiffs did not read, understand, or rely upon the Limited Warranty in deciding whether to purchase their Mislabeled Refrigerators.  In fact, they only learned of its terms *after* the sale, in which they *did* rely upon the implied warranty created by affixing the ENERGY STAR® logo.  Second, like most consumers, Plaintiffs are not sophisticated in the field of contracts and warranties.  Third, Plaintiffs had no knowledge of the terms of the Limited Warranty, before or after the time of sale.  But they fully expected that ENERGY STAR® compliance was part of the basis of the bargain, in that they would not have purchased their Mislabeled Refrigerators if they had known they were not, in fact, ENERGY STAR® compliant.  Fourth, any disclaimers in Whirlpool's Limited Warranty are inconspicuous because they are hidden at the end of the Refrigerator User Instructions.  No reasonable consumer (including Plaintiffs) would have expected to find warranty disclaimers in their refrigerator's User Instructions, and no reasonable consumer (including Plaintiffs) would have read the User Instructions *before* purchasing his refrigerator.  Fifth, Plaintiffs did not consider the Limited Warranty to constitute a final, integrated contract.  They *first* understood and relied upon the ENERGY STAR® sticker as an implied warranty that the Mislabeled Refrigerators met rigorous standards for energy efficiency.  They did not expect or believe that a separate "warranty" hidden at the end of their Refrigerator User Instructions would disclaim the implied warranty created by affixing the ENERGY STAR® logo to the Mislabeled Refrigerators.

## **COUNT IV**

### **(Violation of the Consumers Legal Remedies Act, Civil Code §§ 1750, *et. seq.*)**

86.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

87.   Plaintiffs bring this Count IV on behalf of the California Subclass under California law.

88.   CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Whirlpool violated this provision by representing the Mislabeled Refrigerators as

1  ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the Mislabeled

2  Refrigerators.

3        89.    CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a

4  particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

5  another."  Defendant violated this provision by representing the Mislabeled Refrigerators as

6  ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the Mislabeled

7  Refrigerators.

8        90.    CLRA § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell

9  them as advertised."  Defendant violated this provision by representing the Mislabeled Refrigerators

10  as ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the Mislabeled

11  Refrigerators.

12        91.    Plaintiffs and California Subclass members suffered injuries caused by Defendant's

13  misrepresentations because: (a) they would not have purchased the Mislabeled Refrigerators on the

14  same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price

15  premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the

16  Mislabeled Refrigerators did not perform as promised; and (d) Plaintiffs and the California Subclass

17  members have paid and will continue to pay higher energy costs for as long as they continue to use

18  the Mislabeled Refrigerators.

19        92.    On November 29, 2011 and December 8, 2011, prior to the filing of this Complaint,

20  CLRA notice letters were served on Defendant Whirlpool that comply in all respects with

21  California Civil Code § 1782(a).  Plaintiffs Linthicum and Dei Rossi sent letters to Whirlpool via

22  certified mail, return receipt requested, advising Whirlpool that it is in violation of the CLRA and

23  must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

24  Whirlpool was further advised that in the event that the relief requested has not been provided

25  within thirty (30) days, Linthicum and Dei Rossi would file this Complaint.  True and correct copies

26  of the CLRA letters sent by Plaintiff Linthicum and Plaintiff Dei Rossi are attached hereto as

27  Exhibits A and B.

28

93.     On December 8, 2011, prior to the filing of this Complaint, a CLRA notice letter was served on Defendant Whirlpool which complies in all respects with California Civil Code § 1782(a).  Plaintiff Linthicum sent Whirlpool a letter via certified mail, return receipt requested, advising Whirlpool that it is in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.  Whirlpool was further advised that in the event that the relief requested has not been provided within thirty (30) days, Linthicum would file this Complaint.  A true and correct copy of Plaintiff Linthicum's CLRA letter is attached hereto as Exhibit A.

94.     Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT V
### (Violation of the Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*)

95.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

96.     Plaintiffs bring this Count V on behalf of the California Subclass under California law.

97.      Defendant is subject to the UCL, Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

98.     Defendant's conduct, described herein, violated the "unlawful" prong of the UCL by violating the EPCA, NECPA, NAECA.  These statutes give the DOE authority to establish energy efficiency standards for refrigerators, "promote Energy Star compliant technologies," and the power to "preserve the integrity of the Energy Star label."  42 U.S.C. § 6294a.  Under applicable regulations, the DOE set detailed testing standards for refrigerators to be ENERGY STAR® certified.  10 C.F.R. § 430; 10 C.F.R. § 430.23; 10 C.F.R. § 430 Appx. A to Subpart B; 10 C.F.R. § 430 Appx. A1 to Subpart B.  And as the administrator of the ENERGY STAR logo, the U.S. Environmental Protection Agency states that ENERGY STAR marks "may never be associated with products, homes, or buildings that do not qualify as ENERGY STAR."  ENERGY STAR Identity

1  Guidelines 4.0, ENERGYSTAR.GOV, available at http://www.energystar.gov

2  /ia/partners/logos/downloads/BrandBook508r.pdf.  Defendants violated these statutes and

3  regulations by improperly affixing an ENERGY STAR® logo to the Mislabeled Refrigerators.

4        99.     Defendant's conduct, described herein, violated the "unfair" prong of the UCL by

5  violating the policy or spirit of the EPCA, NECPA, NAECA, and regulations promulgated

6  thereunder, governing the energy efficiency of refrigerators.  Moreover, Defendant's conduct is

7  unethical, unscrupulous and causes injury to consumers that outweighs its benefits.

8        100.    Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL

9  by representing the Mislabeled Refrigerators as ENERGY STAR®-qualified and by

10  misrepresenting the energy efficiency of the Mislabeled Refrigerators.

11        101.    Defendant's conduct caused substantial consumer injury, by selling mislabeled

12  appliances that fail to meet the rigorous energy efficiency standards and guidelines mandated by the

13  DOE and EPA as conveyed by the ENERGY STAR® logo.  There is no countervailing benefit to

14  Defendant's conduct.  No reasonable consumer could have avoided the harm caused by Defendant's

15  conduct, because reasonable consumers lack the knowledge and equipment to test their own

16  appliances for ENERGY STAR®-compliance.  Members of the public are likely to be deceived

17  because they would have no reason to suspect their appliances fail to meet ENERGY STAR®

18  standards, and they would have no reason to test them for compliance.

19        102.    Plaintiffs and California Subclass members suffered lost money or property as a

20  result of Defendant's UCL violations because: (a) they would not have purchased the Mislabeled

21  Refrigerators on the same terms if the true facts concerning their energy efficiency had been known;

22  (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-

23  qualified; (c) the Mislabeled Refrigerators did not perform as promised; and (d) they have paid and

24  will continue to pay higher energy costs for as long as they continue to use the Mislabeled

25  Refrigerators.

26

27

28

## COUNT VI

### (False Advertising)

### (False Advertising Law, Business & Professions Code §§ 17500 *et seq.*)

103.    Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

104.    Plaintiffs bring this Count VI on behalf of the California Subclass under California law.

105.    California's FAL (*Bus. & Prof. Code* §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

106.    Defendant committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of Mislabeled Refrigerators, as described above.

107.    Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

108.    Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

109.    Plaintiffs and California Subclass members suffered lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Mislabeled Refrigerators on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the Mislabeled Refrigerators did not perform as promised; and (d) they have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Refrigerators.

**PRAYER FOR RELIEF**

110. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and California Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and California Subclass members;

b. For an order declaring that the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs, the nationwide Class, and the California Subclass on all counts asserted herein;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiffs and the Class and the California Subclass their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of all issues so triable.

Dated: September 25, 2012             Respectfully submitted,

                                      **BURSOR & FISHER, P.A.**

                                      By:___*/s/ L. Timothy Fisher*_____
                                             L. Timothy Fisher

                                      L. Timothy Fisher (State Bar No. 191626)
                                      Sarah N. Westcot (State Bar No. 264916)
                                      1990 North California Boulevard, Suite 940
                                      Walnut Creek, CA  94596
                                      Telephone: (925) 300-4455

---

Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
         swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, New York  10017
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

**FARUQI & FARUQI, LLP**
David Bower (State Bar No. 119546)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA  90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-Mail: dbower@faruqilaw.com

**FARUQI & FARUQI, LLP**
Anthony Vozzolo (*pro hac vice pending*)
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
E-Mail: avozzolo@faruqilaw.com

*Attorneys for Plaintiffs and Co-lead Interim Class Counsel*

1    I, Kyle Dei Rossi, declare as follows:

2        1.    I am a plaintiff in this action and a citizen of the State of California.  I have personal

3    knowledge of the facts herein and, if called as a witness, I could and would testify competently

4    thereto.

5        2.    The Complaint filed in this action is filed in the proper place for trial under Civil

6    Code Section 1780(d) in that defendant Whirlpool does business in San Joaquin County and a

7    substantial portion of the transaction complained of occurred in San Joaquin County within the

8    Eastern District of California.  I purchased a KitchenAid Model KSRG25FV French-door

9    refrigerator at a Best Buy store in Stockton, California in 2008.  This refrigerator was marked with

10   an ENERGY STAR® label.  The energy efficiency, as stated on the ENERGY STAR® label, was

11   a substantial factor influencing my decision to purchase this refrigerator.  I would not have

12   purchased the refrigerator if I had known that it was not, in fact, ENERGY STAR® compliant.  If I

13   had not been exposed to the false representations on the ENERGY STAR® label, I would not have

14   purchased this refrigerator.

15       I declare under the penalty of perjury under the laws of the State of California that the

16   foregoing is true and correct, executed on January 11, 2012 at Stockton, California.

17

18

19                                                    _____

                                                     Kyle Dei Rossi

20

21

22

23

24

25

26

27

28

1    I, Mark Linthicum, declare as follows:

2    1.    I am a plaintiff in this action and a citizen of the State of California.  I have personal

3    knowledge of the facts herein and, if called as a witness, I could and would testify competently

4    thereto.

5    2.    The Complaint filed in this action is filed in the proper place for trial under Civil

6    Code Section 1780(d) in that defendant Whirlpool does business in Sacramento County.  I

7    purchased a KitchenAid Model KSRS25RV French-door refrigerator at a Pacific Sales store in

8    California in 2008.  This refrigerator was marked with an ENERGY STAR® label.  The energy

9    efficiency, as stated on the ENERGY STAR® label, was a substantial factor influencing my

10   decision to purchase this refrigerator.  I would not have purchased the refrigerator if I had known

11   that it was not, in fact, ENERGY STAR® compliant because I did not want to incur higher energy

12   costs and I wanted to do the right thing for the environment.  If I had not been exposed to the false

13   representations on the ENERGY STAR® label, I would not have purchased this refrigerator.

14   I declare under the penalty of perjury under the laws of the State of California that the

15   foregoing is true and correct, executed on January 11 , 2012 at Los Angeles, California.

16

17

18   _____
     Mark Linthicum

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# BURSOR & FISHER

P.A.

1990 North California Blvd.
Suite 940
Walnut Creek, CA 94596
www.bursor.com

L. Timothy Fisher
Tel: 925.300.4455
Fax: 925.407.2700
ltfisher@bursor.com

November 29, 2011

*Via Certified Mail - Return Receipt Requested*

Whirlpool Corporation
2000 N. M-63
Benton Harbor, MI  49022-2692

Re:      *Demand Letter Pursuant to California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Whirlpool Corporation ("Whirlpool") pursuant to the provisions of California Civil Code § 1782, on behalf of our client, Mark Linthicum, and all other persons similarly situated.

This notice concerns KitchenAid brand refrigerator models KSRS25RV* and KSRG25FVMS* (collectively, the "Mislabeled Refrigerators"). Whirlpool affixes ENERGY STAR® labels to the Mislabeled Refrigerators, but the appliances do not meet the ENERGY STAR® standards. The United States Department of Energy disqualified these Mislabeled Refrigerators from the ENERGY STAR® program on September 27, 2011.

Mr. Linthicum purchased the KitchenAid KSRS25RVMK refrigerator on December 31, 2008. When Mr. Linthicum purchased this Mislabeled Refrigerator it bore the ENERGY STAR logo despite its noncompliance with the energy efficiency requirements established by that program.

By misrepresenting, mislabeling and selling the Mislabeled Refrigerators, Whirlpool has violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).

We hereby demand that Whirlpool immediately (1) cease and desist from further illegal sales of the Mislabeled Refrigerators, (2) issue an immediate recall of the Mislabeled Refrigerators; (3) make full restitution to all purchasers of the Mislabeled Refrigerators of all purchase money obtained from sales thereof; and (4) compensate all purchasers for the increased energy costs they have incurred as a result of the Mislabeled Refrigerator's failure to conform with the energy efficiency standards of the ENERGY STAR® program.

It is further demanded that Whirlpool preserves all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning tests of the energy efficiency of the Mislabeled Refrigerators;

2.      All communications with the DOE concerning the energy efficiency of this appliance;

3.      All documents concerning the advertisement, marketing and/or sale of the Mislabeled Refrigerators; and

4.      All communications with customers concerning complaints or comments concerning the Mislabeled Refrigerators.

Please comply with this demand within 30 days from receipt of this letter.

We are willing to negotiate with Whirlpool to attempt to resolve the demands asserted in this letter.  If Whirlpool wishes to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that Whirlpool is not interested in resolving this dispute short of litigation.

If Whirlpool contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter, but in no event later than 30 days from the date of receipt.

Very truly yours,

L. Timothy Fisher
ltfisher@bursor.com

# EXHIBIT B

# BURSOR & FISHER
P.A.

**1990 NORTH CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**L. TIMOTHY FISHER**
**Tel: 925.300.4455**
**Fax: 925.407.2700**
**ltfisher@bursor.com**

December 8, 2011

***Via Certified Mail - Return Receipt Requested***

Whirlpool Corporation
2000 N. M-63
Benton Harbor, MI 49022-2692

Re:     *Demand Letter Pursuant to California Civil Code § 1782*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Whirlpool Corporation ("Whirlpool") pursuant to the provisions of California Civil Code § 1782, on behalf of our client, Kyle Dei Rossi, and all other persons similarly situated.

This notice concerns KitchenAid brand refrigerator models KSRS25RV* and KSRG25FV* (collectively, the "Mislabeled Refrigerators"). Whirlpool affixes ENERGY STAR® labels to the Mislabeled Refrigerators, but the appliances do not meet the ENERGY STAR® standards. The United States Department of Energy disqualified these Mislabeled Refrigerators from the ENERGY STAR® program on September 27, 2011.

Mr. Dei Rossi purchased the KitchenAid KSRG25FVMT refrigerator on December 8, 2008. When Mr. Dei Rossi purchased this Mislabeled Refrigerator it bore the ENERGY STAR logo despite its noncompliance with the energy efficiency requirements established by that program.

By misrepresenting, mislabeling and selling the Mislabeled Refrigerators, Whirlpool has violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).

We hereby demand that Whirlpool immediately (1) cease and desist from further illegal sales of the Mislabeled Refrigerators, (2) issue an immediate recall of the Mislabeled Refrigerators; (3) make full restitution to all purchasers of the Mislabeled Refrigerators of all purchase money obtained from sales thereof; and (4) compensate all purchasers for the increased energy costs they have incurred as a result of the Mislabeled Refrigerator's failure to conform with the energy efficiency standards of the ENERGY STAR® program.

It is further demanded that Whirlpool preserves all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning tests of the energy efficiency of the Mislabeled Refrigerators;

2.      All communications with the DOE concerning the energy efficiency of this appliance;

3.      All documents concerning the advertisement, marketing and/or sale of the Mislabeled Refrigerators; and

4.      All communications with customers concerning complaints or comments concerning the Mislabeled Refrigerators.

Please comply with this demand within 30 days from receipt of this letter.

We are willing to negotiate with Whirlpool to attempt to resolve the demands asserted in this letter.  If Whirlpool wishes to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that Whirlpool is not interested in resolving this dispute short of litigation.

If Whirlpool contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter, but in no event later than 30 days from the date of receipt.

Very truly yours,

L. Timothy Fisher
ltfisher@bursor.com