Galen D. Bellamy (*pro hac vice*)
Sean G. Saxon (SBN 230054)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone:     (303) 244-1800
Facsimile:     (303) 244-1879
Email:          bellamy@wtotrial.com
                    saxon@wtotrial.com

Bradley A. Benbrook (SBN 177786)
Benbrook Law Group, PC
400 Capitol Mall, Suite 1610
Sacramento, California 95814
Telephone:     (916) 447-4900
Facsimile:     (916) 447-4904
Email:          brad@benbrooklawgroup.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE DEI ROSSI and MARK LINTHICUM, on behalf of themselves and those similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>WHIRLPOOL CORPORATION<br><br>                    Defendants. | CASE NO. 2:12-cv-00125-TLN-JFM<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        July 25, 2013<br>Time:        2:00 p.m.<br>Courtroom:   2, 15th Floor<br>Judge:       Honorable Troy L. Nunley |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

FACTUAL ALLEGATIONS AND BACKGROUND OF LITIGATION ...................... 4

ARGUMENT ................................................................................................................ 8

I.      LEGAL STANDARD ....................................................................................... 8

II.     PLAINTIFFS AGAIN FAIL TO PLEAD BREACH OF ANY EXPRESS
        WARRANTY ..................................................................................................... 9

III.    PLAINTIFFS FAIL TO PLEAD A BREACH OF IMPLIED WARRANTY ..... 11

        A.      The Refrigerators are Merchantable ..................................................... 12

        B.      Any Alleged Breach Would Fall Outside the One-Year Implied
                Warranty Period ................................................................................... 13

IV.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MAGNUSON-MOSS
        WARRANTY ACT ........................................................................................... 16

V.      PLAINTIFFS DO NOT PLEAD ANY CALIFORNIA STATUTORY CLAIMS .......... 16

        A.      The ENERGY STAR Sticker is Not a Misrepresentation of Any
                Fact and Did Not Create a Likelihood of Deception ............................. 17

        B.      Plaintiffs Fail to State a CLRA Claim ................................................. 19

                1.      Plaintiffs have not alleged any misrepresentation of fact ........... 19

                2.      Plaintiffs have not adequately alleged any knowing
                        misrepresentation ....................................................................... 20

                3.      Plaintiffs have not alleged a "transaction" with Whirlpool ........ 21

        C.      Plaintiffs Fail to State a UCL Claim .................................................... 22

                1.      Plaintiffs fail to plead an "unlawful" UCL claim ..................... 22

                2.      Plaintiffs fail to plead an "unfair" UCL claim ......................... 22

                3.      Plaintiffs fail to plead a "fraudulent" UCL claim .................... 23

        D.      Plaintiffs Fail to State a FAL Claim .................................................... 23

VI.     FURTHER LEAVE TO AMEND WOULD BE FUTILE ................................. 24

CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

Page

**Cases**

*Am. Suzuki Motor Corp. v. Super. Ct.*,
37 Cal. App. 4th 1291 (1995) ................................................................................................ 11

*Ascon Props., Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir.1989) ................................................................................................ 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 3, 8, 21

*Avago Techs. U.S., Inc. v. Venture Corp.*,
No. C 08-03248 JW, 2008 WL 5383367 (N.D. Cal. Dec. 22, 2008) ................................... 11

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .................................................................................................. 8

*Baltazar v. Apple, Inc.*,
No. CV-10-3231-JF, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) .................................... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 3, 8, 21

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) .............................................................................................. 23

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ................................................................................................. 13

*Blennis v. Hewlett-Packard Co.*,
No. C 07-00333 JF, 2008 WL 818526 (N.D. Cal. Mar. 25, 2008) .................................... 9, 11

*Castagnola v. Hewlett-Packard Co.*,
No. C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012) ................................... 18

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ................................................................................... 20

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ................................................................................. 20

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ............................................................................................... 16

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1998) ............................................................................................. 9, 20

*Dei Rossi v. Whirlpool Corp.*,
No. 12-CV-125-JAM-JFM, 2013 WL 1312105 (E.D. Cal. Mar. 28, 2013) ...................... passim

*East v. San Bernardino Cnty. Sheriff's Dep't*,
No. ED CV 09-655-GW(E), 2011 WL 6000847 (C.D. Cal. Nov. 28, 2011) ........................ 25

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ................................................................................................... 18

*Hauter v. Zogarts*,
14 Cal. 3d 104 (1975) ............................................................................................................ 11

*Hovsepian v. Apple, Inc.*,
Nos. 08-5788 JF (PVT), 09-1064 JF (PVT),
2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) .................................................................. 11, 12, 15

*In re Sony Grand Wega KDF-E A10/A20 Series Rear*
*Projection HDTV Television Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................................... 21, 24

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
*Sales Practices, & Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................................. 8, 11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..................................................................................................... 8

*Kelley v. Microsoft Corp.*,
No. C07-0475MJP, 2007 WL 2600841 (W.D. Wash. Sept. 10, 2007) ....................................... 16

*Kent v. Hewlett-Packard Co.*,
No. 09-5341 JF (PVT), 2010 WL 2681767 (N.D. Cal. July 6, 2010) .................................... 12, 13

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ..................................................................................................... 24

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ..................................................................................................... 14

*Marchante v. Sony Corp. of Am.*,
801 F. Supp. 2d 1013 (S.D. Cal. 2011) ..................................................................................... 15

*McKinniss v. Gen. Mills, Inc.*,
No. CV 07-2521 GAF (FMOx), 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ................... 18, 19

*Metzler Inv. GmBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ........................................................................................... 3, 9, 25

*Osborne v. Subaru of Am., Inc.*,
198 Cal. App. 3d 646 (1988) ................................................................................................. 15-16

*Reid v. Johnson & Johnson*,
Civil No. 11cv1310 L(BLM), 2012 WL 4108114 (S.D. Cal. Sept. 18, 2012) ....................... 18, 19

*Savett v. Whirlpool Corp.*,
No. 12 CV 310, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) ...................................... 3, 10, 13

*Skelton v. Gen. Motors Corp.*,
500 F. Supp. 1181 (N.D. Ill. 1980) ........................................................................................... 11

*Stearns v. Select Comfort Retail Corp.*,
No. 08-2746 JF, 2008 WL 4542967 (N.D. Cal. Oct. 1, 2008) ................................................... 11

*Tietsworth v. Sears, Roebuck & Co.*,
No. C 09-00288 JF (HRL), 2009 WL 1363548 (N.D. Cal. May 14, 2009) ................................ 15

*Tietsworth v. Sears Roebuck & Co.*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................................... 15

*Tomek v. Apple, Inc.*,
No. 2:11-cv-02700-MCE-DAD, 2012 WL 2857035 (E.D. Cal. July 11, 2012) .......................... 12

*U.S. Roofing, Inc. v. Credit Alliance Corp.*,
228 Cal. App. 3d 1431 (1991) ................................................................................................... 15

DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS 2ND AMENDED COMPLAINT
CASE NO. 2:12-cv-00125-TLN-JFM

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ................................................................................. 8

*Williams v. Beechnut Nutrition Corp.*,
185 Cal. App. 3d 135 (1986) ................................................................................... 9

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ............................................................................... 20

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ................................................................................. 24

## Statutes, Rules and Regulations

15 U.S.C. § 2301 ................................................................................................... 16

15 U.S.C. § 2301(6) .............................................................................................. 16

Cal. Bus. & Prof. Code § 17200 ....................................................................*passim*

Cal. Bus. & Prof. Code § 17500 ....................................................................*passim*

Cal. Civ. Code § 1750 ....................................................................................*passim*

Cal. Civ. Code § 1761(e) ...................................................................................... 21

Cal. Civ. Code § 1770 .......................................................................................... 21

Cal. Civ. Code § 1770(a) ...................................................................................... 20

Cal. Civ. Code § 1770(a)(5) ................................................................................. 19

Cal. Civ. Code § 1770(a)(7) ................................................................................. 19

Cal. Civ. Code § 1770(a)(9) ................................................................................. 19

Cal. Civ. Code § 1780(a) ...................................................................................... 21

Cal. Comm. Code § 2314 ..................................................................................... 13

Cal. Comm. Code § 2316 ..................................................................................... 15

Fed. R. Civ. P. 8(a) ................................................................................................. 8

Fed. R. Civ. P. 9(b) ................................................................................................. 8

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 8

## Other Authorities

Energy Policy and Conservation Act, Pub. L. No. 94-163, 89 Stat. 871 (1975)........................... 22

National Appliance Energy Conservation Act of 1987,
Pub. L. No. 100-12, 101 Stat. 103 (1987) .............................................................. 22

National Energy Conservation Policy Act, Pub. L. No. 95-619, 92 Stat. 3206 (1978)................ 22

1

**<u>INTRODUCTION</u>**

2   This is the third attempt by Plaintiffs Kyle Dei Rossi ("Dei Rossi") and Mark

3 Linthicum ("Linthicum") to plead a putative nationwide class action complaint against

4 Whirlpool Corporation ("Whirlpool") based on their claim that the KitchenAid®

5 KSRG25FVMT and KSRS25RVHR model refrigerators they bought in 2008 were

6 "mislabeled" with the ENERGY STAR sticker. The Court has twice dismissed Plaintiffs'

7 warranty and consumer fraud claims because "the Energy Star sticker itself . . . contains no

8 affirmation of any specific fact" that could form the basis of any warranty (*see* Dkt. # 53

9 (Sept. 5, 2011 Hr'g. Tr.) at 12:9-12), and "conveys no specific information" (*id.* at 26:2)

10 upon which a consumer could reasonably rely and be misled.[1] *See also Dei Rossi v.*

11 *Whirlpool Corp.*, No. 12-CV-125-JAM-JFM, 2013 WL 1312105, at *3-4 (E.D. Cal. Mar.

12 28, 2013) (Plaintiffs fail to "explain how their allegation regarding the express warranty—

13 'that [the refrigerators at issue] would function properly as energy efficient refrigerators

14 within the parameters established by federal law and the ENERGY STAR® program'—

15 satisfies California's requirement that a plaintiff plead the 'exact terms' of the warranty")

16 (alteration in original). There is nothing in the Second Amended Class Action Complaint

17 ("SAC") that cures these deficiencies.

18   The first two complaints were deficient because they did not plead what allegedly

19 false or misleading information Plaintiffs personally understood the ENERGY STAR sticker

20 to convey prior to purchasing their KitchenAid refrigerators. Consistent with Judge Mendez'

21 prior observation that the ENERGY STAR sticker, by itself, conveys no specific

22 information, neither Plaintiff claims to have understood the sticker to constitute a promise or

23 guarantee that their refrigerators would achieve any particular level of energy consumption

24 or efficiency, either relative to other appliances or in absolute terms. They simply reiterate

25

26

27

[1] For the Court's convenience, a true and correct copy of the September 5, 2012 hearing transcript is attached hereto as Exhibit A.

28

1    that they believed when they bought their refrigerators in 2008 that they would be "more

2    energy efficient than an appliance that [did] not have" the sticker. (*Compare* First Amend

3    Complaint ("FAC") ¶ 42, *with* SAC ¶ 71.) As before, these allegations are too general to

4    support either a warranty or consumer fraud claim.

5          Plaintiffs' attempt to plead around this problem amounts to "dressing up" the same

6    allegations that were insufficient to state a claim in the FAC:  they continue to allege that the

7    ENERGY STAR logo is intended to convey a generic message of "efficiency." (*Compare

8    e.g.*, FAC ¶ 13 ("The message conveyed by the ENERGY STAR® logo is that the consumer

9    can maximize his or her energy savings while helping to protect the environment."), *with*

10   SAC ¶ 18 ("The message and promise conveyed by the ENERGY STAR® logo is that the

11   appliance is ENERGY STAR®-qualified and thus complies with the strict energy efficiency

12   level required by the ENERGY STAR® program. Because the product is ENERGY STAR®

13   qualified, it will enable consumers to maximize their energy savings while helping to protect

14   the environment.").) Plaintiffs' "new" allegations add no <u>facts</u> to portray the ENERGY

15   STAR logo as a particular representation or warranty by Whirlpool (and, after three tries, it

16   is apparent they cannot do so). Further, Plaintiffs <u>still</u> do not allege that either of them ever

17   saw, read, heard or were otherwise exposed to any of these generic "efficiency" messages

18   prior to purchase. (*Id.* ¶¶ 71-72.) To the contrary, both Plaintiffs admit, as they did

19   previously, that their pre-purchase understanding of the ENERGY STAR sticker was based

20   solely on alleged personal conversations and unidentified "news reports." (*Compare* FAC

21   ¶¶ 42-43, *with* SAC ¶¶ 71-72.)

22         Further still, the SAC expressly incorporates images of Energy Guide labels—as

23   opposed to ENERGY STAR stickers—that were affixed to Plaintiffs' refrigerators, and

24   which they admit they saw prior to purchase. (SAC ¶¶ 67, 71-72.) Quite unlike the

25   ENERGY STAR sticker, the Energy Guide label conveyed specific information about the

26   estimated annual energy consumption and resulting annual operating cost of each

27   refrigerator, as well as how that operating cost compared to similar refrigerator models. (*See*

28

1   *id.* ¶ 67) As before, Plaintiffs do not allege that any of these specific representations were

2   false or inaccurate. Instead, they claim that the ENERGY STAR sticker created a general

3   "warranty" of "efficiency" that is independent of, and purportedly trumps, the very specific

4   representations of the refrigerators' relative and absolute annual energy consumption

5   contained on the Energy Guide labels. However, courts have rejected similar attempts to

6   claim reliance on information purportedly implied by product logos and images while

7   ignoring specific representations on the same topic.

8       With respect to the balance of the pleading failures identified by the Court, Plaintiffs

9   again attempt to fill those gaps with bald, conclusory allegations that are unsupported by any

10  well-pled facts. Under the governing pleading standards, however, "naked assertion[s]

11  devoid of further factual enhancement" are plainly insufficient to survive a motion to

12  dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must set forth

13  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

14  face") (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

15  570 (2007) (internal quotation marks omitted) (alternation in original).

16      In short, Plaintiffs' claims cannot survive dismissal unless the Court accepts their

17  premise that the ENERGY STAR sticker, by itself, conveys specific factual representations

18  sufficient to create a warranty or that can support a consumer fraud claim; propositions that

19  have been squarely rejected by this Court and by the only other court to have considered the

20  issue. *See Dei Rossi*, 2013 WL 1312105, at *2-8; *Savett v. Whirlpool Corp.*, No. 12 CV 310,

21  2012 WL 3780451, at *9 (N.D. Ohio Aug. 31, 2012) ("Upon review, the Court finds that …

22  use of the ENERGY STAR logo is not an 'affirmation of fact or promise' as alleged in this

23  case.").

24      After three failed attempts to plead their claims, Plaintiffs have demonstrated that

25  any further leave to amend would be futile. *See Metzler Inv. GmBH v. Corinthian Colleges,*

26  *Inc.*, 540 F.3d 1049, 1060 n.4 (9th Cir. 2008) (dismissal with prejudice is appropriate when

27

28

1  a party has "multiple opportunities to amend and [is] unable to cure the defects that required

2  dismissal of … previous complaints.")

3              **FACTUAL ALLEGATIONS AND BACKGROUND OF LITIGATION**

4              Plaintiffs filed this breach of warranty and consumer fraud case in January 2012,

5  claiming that the two KitchenAide refrigerators they purchased in 2008 were "mislabeled"

6  with the ENERGY STAR logo because, three years later in 2011, refrigerators sharing the

7  same model numbers were found to be non-compliant with ENERGY STAR program

8  requirements. Plaintiffs' core allegation is that the ENERGY STAR logo—which contains

9  only those two words and an image of star on a blue background (*see* SAC ¶ 18)—created

10 express and implied warranties and constituted a misleading representation of fact.

11             On September 14, 2012, Judge Mendez granted Whirlpool's motion and dismissed

12 the original complaint in its entirety. (Dkt. # 55.) During oral argument on Whirlpool's

13 motion, Judge Mendez observed that Plaintiffs' breach of warranty claim was fundamentally

14 flawed because the ENERGY STAR stick "itself contains no affirmation of any specific

15 fact" that could form the basis of any warranty (Ex. A at 12:9-12), and "conveys no specific

16 information" (*id.* at 26:2) upon which a reasonable consumer could rely and be misled.

17 Plaintiffs filed the FAC, dropping certain retailer defendants from the case, but otherwise

18 asserting the same core allegations.

19             Plaintiffs failed for a second time to state claims in the FAC. Judge Mendez stressed

20 in his opinion dismissing the FAC that plaintiffs had failed to "connect" their central

21 allegation—that the KitchenAid refrigerators here allegedly failed to satisfy each portion of

22 the federal government's EnergyStar® program—to their "understanding of the

23 EnergyStar® logo or anything Defendant expressed." *Dei Rossi*, 2013 WL 1312105, at *3.

24             Despite this, and despite swelling the number of paragraphs from 110 to 162, the

25 SAC <u>still</u> dedicates only two paragraphs to describing the alleged experiences of the named

26 Plaintiffs, including what they understood the ENERGY STAR logo to convey. These two

27

28

1  paragraphs remain largely unchanged from the dismissed FAC. (*Compare* SAC ¶¶ 71-72,

2  *with* FAC ¶¶ 42-43.)

3      Plaintiff Kyle Dei Rossi alleges that he purchased a KitchenAid KSRG25FVMT

4  refrigerator from a Best Buy store in Stockton, California, on December 8, 2008. (SAC ¶

5  71.) Dei Rossi repeats his prior allegation that he "is very familiar with the ENERGY

6  STAR® program and learned about it from numerous news reports that explained the

7  program and from talking to his wife, parents and in-laws." (*Id.*) He again alleges that he

8  "decided to look only at ENERGY STAR® models because he wanted to do the right thing

9  for the environment … ." (*Id.*) He again alleges that he would not have bought his

10  KitchenAid refrigerator "if he had known that it was not, in fact, ENERGY STAR®-

11  qualified." (*Id.*) He again alleges that he understood that "the ENERGY STAR® logo

12  indicates that the appliance is more energy efficient than an appliance that does not have the

13  ENERGY STAR® label." (*Id.*) However, Dei Rossi still does not allege how much "more

14  energy efficient" he understood his refrigerator was supposed to be, or how much more

15  energy he understood a refrigerator without the label was expected to use. He also does not

16  allege that he understood the ENERGY STAR logo to promise any specific level of energy

17  consumption. (*Id.*)

18      Plaintiff Mark Linthicum alleges that he purchased a KitchenAid KSRS25RVHR

19  model refrigerator from a retail store in Los Angeles, California, on December 31, 2008. (*Id.*

20  ¶ 72.) Linthicum again alleges that the refrigerator he purchased was labeled with the

21  ENERGY STAR logo on the door, on the Energy Guide label, and inside the refrigerator

22  next to the temperature panel. (*Id.*) He also alleges that the ENERGY STAR label appeared

23  on "internet advertisements" he looked at. (*Id.*) He also repeats his prior allegation that he

24  would not have bought his KitchenAid refrigerator "if he had known that it was not, in fact,

25  ENERGY STAR®-qualified." (*Id.*) Linthicum again alleges that he "is very familiar with

26  the ENERGY STAR® program" via "hearing about it on the news and from speaking to

27  salespeople at stores." (*Id.*) Linthicum again alleges that he understood that "the ENERGY

28

1    STAR® logo indicates that the appliance is more energy efficient than an appliance that

2    does not have the ENERGY STAR® label." (*Id.*) Like Dei Rossi, Linthicum still does not

3    allege how much "more energy efficient" he understood his refrigerator was supposed to be,

4    or how much more energy he understood a refrigerator without the label was expected to

5    use, nor does he allege that he understood the ENERGY STAR logo to promise any specific

6    level of energy consumption. (*Id.*)

7         Both Plaintiffs also again acknowledge that they saw the Energy Guide labels that

8    were affixed to the refrigerators prior to making their purchases. (*Id.* ¶¶ 71-72.) These labels

9    contain information concerning: (1) the brand, model and significant features of the

10   refrigerator; (2) an estimate of the annual operating cost of the refrigerator (here, $62); (3) a

11   range of the annual operating cost of "similar models" of refrigerator (here, between $60

12   and $78); and (4) an estimate of the yearly electrical use of the refrigerator (here, 580

13   kilowatt-hours (kWh) for Dei Rossi's model and 581 kWh for Linthicum's model). (*Id.* ¶

14   67.) The Energy Guide labels also informed Plaintiffs that the estimated annual operating

15   cost was "based on a 2007 national average electricity cost of 10.65 cents per kWh," and

16   makes clear that their actual operating cost will depend on their local utility rates and use.

17   (*Id.*)

18        As they did in prior complaints, Plaintiffs claim that, in 2011, refrigerators sharing

19   the same model numbers as the KitchenAid refrigerators they bought in 2008 were

20   determined by the U.S. Department of Energy ("DOE") to be non-compliant with the

21   requirements of the ENERGY STAR program, and were subsequently disqualified. (SAC ¶¶

22   74-86). Based on this disqualification, Plaintiffs allege that Whirlpool "misrepresent[ed] the

23   energy efficiency" of Plaintiffs' 2008 model-year refrigerators when they were sold three

24   years earlier, by "promoting them as ENERGY STAR®-qualified and labeling them with

25   the ENERGY STAR® logo." (*Id.* ¶ 4.) The SAC repeatedly claims that "ENERGY STAR®-

26   qualified refrigerators are required … to use 20% less energy than standard models" (*Id.* ¶ 5;

27   *see also* ¶¶ 16, 17, 56, 111, 117, 119, 125), and that the refrigerators at issue allegedly "do

28

1    not meet the ENERGY STAR® standards" because they "consume significantly more

2    energy than their labels state." (*E.g., id.* ¶ 4.) Plaintiffs do not allege that they were

3    personally aware of those alleged ENERGY STAR program requirements at the time of

4    their purchases, nor do they specifically allege how much more energy their 2008

5    KitchenAid refrigerators supposedly used than they now claim the logo implied.

6          Plaintiffs also again allege they paid a "higher" purchase price for their refrigerators

7    as a result of the ENERGY STAR designation, and they claim to have incurred "higher

8    energy bills" because the "actual energy consumption" of their refrigerators is allegedly

9    "substantially higher than what was promised." (*Id.* ¶ 9.) Again, Plaintiffs allege no facts in

10   support of those conclusory assertions, such as how much higher their energy bills are than

11   supposedly promised or how much more energy was consumed than supposedly promised.

12   (*Id.* ¶¶ 1-162.)

13         Many of the new allegations in the SAC concern general statements regarding the

14   ENERGY STAR program that Plaintiffs attribute either to Whirlpool or to third parties. By

15   way of example, Plaintiffs allege that:  (1) Whirlpool described the ENERGY STAR

16   program on its website (*id.* ¶ 5); (2) Whirlpool engaged in an unidentified "long-term

17   advertising campaign" for its refrigerators involving the ENERGY STAR program (*id.* ¶ 8;

18   *see also* ¶¶ 43, 51); (3) Whirlpool received various awards related to the ENERGY STAR

19   program (*id.* ¶¶ 45-49); and (4) Whirlpool expressed its commitment to the ENERGY STAR

20   program (*id.* ¶ 50, 70). Plaintiffs do not allege that they ever saw, heard, or relied upon any

21   of these descriptions, advertisements, or statements in connection with their purchases. (*Id.*

22   ¶¶ 1-162.)

23         Plaintiffs also plead various statements allegedly made by third parties, including the

24   National Association of Home Builders (*id.* ¶¶ 7, 33), www.energystar.gov (*id.* ¶¶ 16, 20), a

25   former Environmental Protection Agency official (*id.* ¶ 23), a representative of the U.S.

26   Department of Energy's Office of Energy Efficiency and Renewable Energy (*id.* ¶ 25), and

27   the Consortium for Energy Efficiency (*id.* ¶ 32). None of these statements are alleged to

28

---

1  have been made by Whirlpool, and Plaintiffs do not claim that they saw, heard, or relied

2  upon any of them in connection with their purchases. (*Id.* ¶¶ 1-162.)

3  **ARGUMENT**

4  **I.    LEGAL STANDARD**

5          Dismissal of a complaint pursuant to Rule 12(b)(6) is proper where there is a "lack

6  of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

7  legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Under

8  Rule 8(a), a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

9  requires more than labels and conclusions, and a formulaic recitation of the elements of a

10  cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original). A complaint

11  must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is

12  plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal

13  quotation marks omitted). That standard "asks for more than a sheer possibility that a

14  defendant has acted unlawfully" and requires more than facts that are "merely consistent"

15  with a defendant's liability. *Id.* A pleading that contains "[t]hreadbare recitals of the

16  elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement"

17  will not survive a motion to dismiss. *Id.* (alteration in original) (internal quotation marks

18  omitted).

19          In addition, claims sounding in fraud are subject to Rule 9(b)'s heightened pleading

20  standard. *See* Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122

21  (9th Cir. 2009) (applying Rule 9(b) to UCL and CLRA claims); *In re Toyota Motor Corp.*

22  *Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d

23  1145, 1172 (C.D. Cal. 2010) ("[I]t is clear that Rule 9(b)  applies to the allegations under the

24  CLRA, the fraud prong of the UCL, and the FAL"). Fraud claims must be accompanied by

25  the "who, what, when, where, and how" of the fraudulent conduct charged. *Vess v. Ciba-*

26  *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Additionally, to satisfy Rule 9(b),

27

28

1    a plaintiff must set forth *more* than the neutral facts necessary to identify the
2    transaction. The plaintiff must set forth what is false or misleading about a
     statement, and why it is false. In other words, the plaintiff must set forth an
3    explanation as to why the statement or omission complained of was false or
     misleading.

4    *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1998) (emphasis in original) (citation

5    omitted). Plaintiffs' continuing failure to meet this heightened pleading standard after three

6    attempts weighs heavily in favor of dismissal with prejudice. *Metzler*, 540 F.3d at 1060.

7    **II.    PLAINTIFFS AGAIN FAIL TO PLEAD BREACH OF ANY EXPRESS**

8    **WARRANTY**

9            "An express warranty [relates] to the title, character, quality, identity or condition of

10   the sold goods." *Blennis v. Hewlett-Packard Co.*, No. C 07-00333 JF, 2008 WL 818526, at

11   *2 (N.D. Cal. Mar. 25, 2008). To state a claim for breach of express warranty, Plaintiffs

12   must allege "the exact terms of the warranty, [Plaintiffs'] reasonable reliance thereon, and a

13   breach of that warranty which proximately causes [Plaintiffs] injury." *Williams v. Beechnut*

14   *Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).

15           Count II of the SAC alleges a breach of express warranty that is substantially

16   identical to the warranty claim that the Court dismissed in the FAC. Plaintiffs allege that

17   Whirlpool, "[b]y including the ENERGY STAR® logo" on the refrigerators, "expressly

18   warranted" that the refrigerators "were ENERGY STAR®-qualified and had greater

19   efficiency than conventional refrigerators or standard models that did not display the

20   ENERGY STAR® logo." (SAC ¶ 117.) Thus, as in the prior complaints, Plaintiffs claim

21   that this alleged "warranty" arose from their observation of the ENERGY STAR sticker

22   prior to purchase. Plaintiffs also claim that Whirlpool, in a separate unidentified

23   representation, "defined" the ENERGY STAR logo to mean that the refrigerators "were at

24   least 20% more efficient than models that simply meet the federal minimum standard for

25   energy efficiency." (*Id.*) However, Plaintiffs do not allege that they ever saw or were

26   exposed to this supposed separate definition, and they conspicuously do <u>not</u> claim that this

27   separate definition constituted a warranty independent of the logo. (*Id.* at ¶¶ 1-161.) Thus,

28

the only allegations that are tied to Plaintiffs' alleged experiences demonstrate that the "content" of the alleged warranty derives not from any separate definition supposedly provided by Whirlpool, but from their vague understanding of the ENERGY STAR program based on unidentified "news reports" and conversations with retail salespersons and family members. (*Id.* ¶¶ 71-72.)

However, as this Court held when it dismissed the breach of warranty claim in the FAC, Plaintiffs cannot premise a breach of express warranty claim on a logo that itself conveys no specific factual information, particularly when Plaintiffs themselves admit that they had only a vague understanding of the ENERGY STAR program. *Dei Rossi*, 2013 WL 1312105, at *3. Specifically, in dismissing this claim from the FAC, the Court reasoned:

> Plaintiffs allege the refrigerators at issue 'were not, are not, and never have been at least 20% more efficient than the minimum energy standards mandated by federal law.' However, Plaintiffs do not connect this allegation to the named Plaintiffs' understanding of the ENERGY STAR® logo or anything Defendant expressed, nor do they attempt to explain how their allegation regarding the express warranty – 'that [the refrigerators at issue] would function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program' – satisfies California's requirement that a plaintiff plead the 'exact terms' of the warranty.

*Id.* (alteration in original).[2] *See also Savett*, 2012 WL 3780451, at *9 ("[T]he [ENERGY STAR] logo itself contains no assertion of fact or promise. Unlike traditional express warranties where unambiguous promises or factual assertions are made, which are clearly understood on their own footing, any meaning conveyed by the logo requires independent

---

[2] Judge Mendez commented on the same fundamental problem with Plaintiffs' breach of warranty claim during oral argument on the motion to dismiss the original complaint:

> If you are relying on the Energy Star sticker itself, as a matter of law you're going to have problems with that. The sticker itself contains no affirmation of any specific fact.

(Ex. A at 12:9-12.)

1  knowledge"). Thus, because the ENERGY STAR logo conveys no specific information,

2  Plaintiffs have not and cannot plead the "exact terms" of any warranty they claim that logo

3  created. *See, e.g.*, *Avago Techs. U.S., Inc. v. Venture Corp.*, No. C 08-03248 JW, 2008 WL

4  5383367, at *4-5 (N.D. Cal. Dec. 22, 2008) (dismissing warranty claim where the plaintiffs

5  failed to allege what specific provisions were not met and instead made only the "conclusory

6  allegation" that the express warranty was breached because the goods did not meet the

7  contract's specifications and quality requirements); *Blennis*, 2008 WL 818526, at *2

8  (dismissing express warranty claim where the plaintiffs failed to identify any specific

9  warranty provision upon which they allegedly relied).[3]

10  **III.      PLAINTIFFS FAIL TO PLEAD A BREACH OF IMPLIED WARRANTY**

11           The implied warranty of merchantability arises by operation of law, *Hauter v.*

12  *Zogarts*, 14 Cal. 3d 104, 117 (1975), and provides for "a minimum level of quality," *Am.*

13  *Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995) (quoting *Skelton v.*

14  *Gen. Motors Corp.*, 500 F. Supp. 1181, 1191 (N.D. Ill. 1980)). To state a claim for breach of

15  an implied warranty, "a defect must be sufficiently serious so as to render the product unfit

16  for its ordinary purpose." *Hovsepian v. Apple, Inc.*, Nos. 08-5788 JF (PVT), 09-1064 JF

17  (PVT), 2009 WL 2591445, at *6 (N.D. Cal. Aug. 21, 2009). Additionally, manufacturers

18  may impose limitations on implied warranties by restricting the duration of any implied

19

20

---

21  [3] The SAC also fails to cure two additional fundamental flaws. First, as Judge Mendez
22  previously observed (Ex. A at 12:19-25), Plaintiffs do not plead any breach of warranty that
    allegedly occurred during the one-year warranty term. *See In re Toyota*, 754 F. Supp. 2d at
23  1179 (granting motion to dismiss express warranty claims where plaintiffs did not seek
    remedies within warranty period); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF,
24  2008 WL 4542967, at *5 (N.D. Cal. Oct. 1, 2008) (same). Second, Plaintiffs still allege no
    facts to support their claims that their 2008 KitchenAid refrigerators consume more energy
25  than "promised," including what specific level of energy consumption they were promised,
    and by whom, or what their actual level of energy consumption has been. Thus, they have no
26  alleged facts identifying any of the specific warranty terms allegedly created by the logo, or
    that any such terms were breached here.
27

28

1    warranty of merchantability to one year after the sale. *Id.* Here, not only do Plaintiffs fail to

2    plead an alleged breach that would render the product "unfit for its ordinary purpose,"

3    Plaintiffs also fail to plead that any such breach occurred within the one-year warranty

4    period.

5           **A.    The Refrigerators are Merchantable**

6           The SAC alleges, in relevant part, that Whirlpool "impliedly warranted that the

7    Mislabeled Refrigerators were fit for their intended purpose in that they were ENERGY

8    STAR®-qualified and had greater energy efficiency than conventional refrigerators or

9    standard models that did not display the ENERGY STAR® logo." (SAC ¶ 125.) Plaintiffs

10   do not allege anywhere that the refrigerators failed to perform the ordinary function of a

11   refrigerator; namely, keeping food cold. Instead, Plaintiffs claim the refrigerators were

12   unmerchantable because they allegedly consumed more energy than the ENERGY STAR

13   logo implied. However, the law is clear that product performance of this nature is not what

14   the implied warranty of merchantability is intended to cover. *See Baltazar v. Apple, Inc*., No.

15   CV-10-3231-JF, 2011 WL 3795013, at *3 (N.D. Cal. Aug. 26, 2011) (to state a claim for

16   breach of the implied warranty of merchantability, plaintiff must show more than that the

17   alleged defect was "inconvenient") (citing *Kent v. Hewlett-Packard Co*., No. 09-5341 JF

18   (PVT), 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010)).[4] Indeed, Judge Mendez

19

20   ─────────────────

     [4] *See also, e.g.*, *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (affirming

21   dismissal of implied warranty of merchantability claim where plaintiffs alleged that the iPod
     could cause hearing loss because it fulfilled the "ordinary purpose of listening to music");

22   *Tomek v. Apple, Inc.*, No. 2:11-cv-02700-MCE-DAD, 2012 WL 2857035, at *7 (E.D. Cal.
     July 11, 2012) (dismissing implied warranty claim where the plaintiff alleged that his

23   computer's battery and charger failed to adequately power his computer because the
     plaintiff's allegations of inconvenience were insufficient to show computer is not fit for

24   ordinary use); *Kent*, 2010 WL 2681767, at *4 (dismissing implied warranty claim where
     plaintiffs alleged that their computers were "rendered 'unusable' by []lock-up, freeze, and

25   blue screen errors" on the grounds that "[c]omputers that routinely lock-up may be
     inconvenient . . but the question is whether the computers are unfit for their ordinary

26   purpose").

27

28

─────────────────

1  dismissed Plaintiffs' implied warranty claim from the FAC for precisely this reason. *Dei*

2  *Rossi*, 2013 WL 1312105, at *4 (dismissing implied warranty claim because Plaintiffs

3  presented no "allegations substantiating a claim that the refrigerators at issue did not meet a

4  minimum level of quality"). *See also Savett*, 2012 WL 3780451, at *11 (dismissing implied

5  warranty claim where the plaintiff alleged that clothes washer successfully washes clothes,

6  but requires more energy to do so).

7        Plaintiffs also attempt to shoehorn their implied warranty claim into California

8  Commercial Code § 2314, baldly alleging that the refrigerators at issue

9        could not pass without objection in the trade under the contract description,
      the goods were not of fair average quality within the description, and the

10       goods were unfit for their intended and ordinary purpose in that they did not
      function properly as energy efficient refrigerators within the parameters

11       established by federal law and the ENERGY STAR® program, and they are
      not adequately labeled and do not conform to the promises and affirmations

12       of fact made on their labels.

13  (SAC ¶ 126.) This paragraph is a rote recitation of subsections of California Commercial

14  Code § 2314, unsupported by any <u>facts</u> suggesting how any of these subsections would

15  apply here. Plaintiffs do not, for example, identify the "contract description" under which

16  these refrigerators allegedly would not pass muster, do not state how their vague complaints

17  regarding "efficiency" equate to the refrigerators not being of "fair average quality," and do

18  not identify any alleged "promises and affirmations of fact" that their refrigerators allegedly

19  did not conform to. To the contrary, as the Court previously held, the ENERGY STAR

20  sticker contains no such promises or affirmations. (Ex. A at 12:9-12.)

21        Nor do Plaintiffs explain how Section 2314 purportedly elevates the implied

22  warranty of merchantability beyond guaranteeing a minimal level of quality. Indeed, it does

23  not; as courts routinely cite to Section 2314 while still applying the "minimal level of

24  quality" standard. *See, e.g., Birdsong*, 590 F.3d at 958; *Kent*, 2010 WL 2681767, at *4.

25        **B.    Any Alleged Breach Would Fall Outside the One-Year Implied**

26              **Warranty Period**

27        Even assuming greater-than-expected energy consumption could render an otherwise

28

1  functional refrigerator "unmerchantable," Plaintiffs nevertheless fail to show how this

2  alleged breach occurred within the one-year implied warranty term. The Limited Warranty

3  for Plaintiff Dei Rossi's refrigerator expressly states:

>  **DISCLAIMER OF IMPLIED WARRANTIES; LIMITATION OF REMEDIES**

>  CUSTOMER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN. IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW.

9  (Dkt. # 18-2, Ex. A at 14.) The Limited Warranty for Plaintiff Linthicum's refrigerator

10  provides:

>  **DISCLAIMER OF IMPLIED WARRANTIES**

>  IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW.

15  (*Id.*, Ex. B at 15.)[5] As Judge Mendez observed, "absent from the [FAC] are allegations

16  regarding Plaintiffs' discovery of the alleged defect," *Dei Rossi*, 2013 WL 1312105, at *4,

17  and those allegations remain absent here. Indeed, Plaintiffs do not claim to have discovered

18  the alleged defect before November 23, 2011, when the DOE allegedly found refrigerators

19  sharing the same model number non-compliant with ENERGY STAR program

20  requirements. (SAC ¶ 85.) Plaintiffs admit that they bought their KitchenAid refrigerators in

---

[5] Plaintiffs acknowledge the existence of the Limited Warranty in the SAC. (SAC ¶ 132 ("The Mislabeled Refrigerators are packaged with a separate Limited Warranty").) Whirlpool previously submitted copies of the one-year Limited Warranty that accompanied each Plaintiff's KitchenAid refrigerator. (*See* Dkt. # 18-2, Exs. A-B.) The actual terms of the Limited Warranty are properly before the Court because Plaintiffs refer to it in their pleading, and because the exact terms of the warranty are central to the validity of Plaintiffs' implied warranty claims. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

1  December 2008, three years earlier. (*Id.* ¶¶ 71-72.) Thus, Plaintiffs still fail to plead any

2  facts showing either that a breach occurred or that they became aware of any such breach

3  during the one-year implied warranty period. This failure mandates dismissal of Plaintiffs'

4  implied warranty claims. *See, e.g.*, Cal. Comm. Code § 2316; *Hovsepian,* 2009 WL

5  2591445, at *8 (dismissing implied warranty claim brought outside one-year limitation

6  contained in the written express warranty).[6]

7         Further, Plaintiffs' attempt to invoke the so-called "delayed discovery rule" by

8  pleading that they "could not have discovered that their refrigerators were not ENERGY

9  STAR® compliant until the DOE's disqualification order was issued on November 21,

10  2011," is unavailing. (SAC ¶ 98.) The delayed discovery rule, which operates to toll the

11  statute of limitations, cannot extend the length of the warranty period itself. *See Marchante*

12  *v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011) ("There are two timing

13  issues when it comes to warranties: the duration of the warranty and the statute of

14  limitations. To properly assert a breach of warranty claim, a Plaintiff must allege a breach of

15  warranty—<u>occurring while the warranty is still valid</u>—and bring suit within the limitations

16  period." (emphasis added)); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123,

17  1143 (N.D. Cal. 2010) (granting motion to dismiss implied warranty claim where the

18  plaintiff "fails to plead facts demonstrating that the Machine failed to serve its ordinary

19  purpose <u>within one year of purchase</u>.") (emphasis added).[7]

20

21  _____

22  [6] Plaintiffs' "new" allegation that the "breach occurred at the time of sale" is merely a
repackaging of language they included in the FAC. (*Compare* FAC ¶82, *with* SAC ¶126.)

23  [7] Plaintiffs' implied warranty claim should be dismissed for the independent reason that they
admit they purchased their refrigerators from third-party retailers, not Whirlpool. (SAC ¶¶

24  71-72.) "Vertical privity is a prerequisite in California for recovery on a theory of breach of
the implied warranties of fitness and merchantability." *U.S. Roofing, Inc. v. Credit Alliance*

25  *Corp.*, 228 Cal. App. 3d 1431, 1441 (1991); *see also Tietsworth v. Sears, Roebuck & Co.*,
No. C 09-00288 JF (HRL), 2009 WL 1363548, at *3 (N.D. Cal. May 14, 2009) (dismissing

26  implied warranty claim against Whirlpool because the plaintiff "purchased her machine
from Sears, and thus she does not have vertical privity with Whirlpool."); *Osborne v. Subaru*

27

28                                                     *(Footnote cont'd on next page.)*

IV.   **PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT**

Count I of the SAC alleges breach of written warranties under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ("MMWA"). This claim must be dismissed because the underlying state warranty claims fail. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *see also Dei Rossi*, 2013 WL 1312105, at *5 ("[S]ince this Court dismissed Plaintiffs' Express and Implied Warranty claims, it must dismiss Plaintiffs' MMWA claim too").[8]

V.   **PLAINTIFFS DO NOT PLEAD ANY CALIFORNIA STATUTORY CLAIMS**

Counts IV, V and VI of the SAC allege violations of California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"), respectively. With the exception of a few definitional and conclusory allegations (*e.g.*, SAC ¶¶ 136, 140, 148, 151-52, 160), these three counts remain unchanged from how they were pled in the FAC, which this Court held insufficient to state a claim.

---

*(Footnote cont'd from previous page.)*

*of Am., Inc.*, 198 Cal. App. 3d 646, 656 n. 6 (1988) (noting that a retail buyer is not in vertical privity with manufacturer).

[8] Plaintiffs' MMWA claims also fail because the ENERGY STAR sticker does not qualify as a "written warranty" as that term is defined in the MMWA. *See* 15 U.S.C. § 2301(6) (The term "written warranty" means "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer <u>which relates to the nature of the material or workmanship</u> . . . or . . . any undertaking in writing in connection with the sale by a supplier of a consumer product <u>to refund, repair, replace, or take other remedial action with respect to such product</u>") (emphasis added); *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, at *5 (W.D. Wash. Sept. 10, 2007) ("[T]o be a 'written warranty', the warrantor's guarantee must contain language that specifically identifies the duration of the warranty. Because that type of language is absent here, the Court cannot conclude that the words 'Windows Vista Capable' are a written guarantee under the [MMWA]").

### A.    The ENERGY STAR Sticker is Not a Misrepresentation of Any Fact and Did Not Create a Likelihood of Deception

As before, Plaintiffs' CLRA, UCL and FAL claims are premised on the allegation that Plaintiffs were misled by a vague message of "efficiency" allegedly conveyed to them by the ENERGY STAR sticker. (*See, e.g.*, SAC ¶ 140.) However, as Judge Mendez noted during the hearing on Plaintiff's original complaint, the ENERGY STAR sticker itself conveys no specific factual information that could mislead a reasonable consumer. (Ex. A at 26:2.) Plaintiffs make no attempt to rectify this pleading deficiency in the SAC, still adhering to a "general discussion of Defendant's advertisements" as they did in the FAC. *Dei Rossi*, 2013 WL 1312105, at *6. Plaintiffs still fail to connect the supposed failure of the refrigerators to be "more efficient" to any standard they understood at the time of sale, including how much more energy efficient they believed their ENERGY STAR refrigerator would be, how much less energy they believed it would consume, how much less efficient it supposedly is, how much more energy it allegedly uses, or how much more they allegedly spend in energy costs than they expected to pay. Thus, Plaintiffs' allegations about what information the ENERGY STAR sticker supposedly conveyed to them—untethered to any standard by which to judge their truth or falsity—still lack the requisite definitiveness to support a claim under any of the statutes listed in the SAC.

Moreover, as noted above, both named Plaintiffs admit that they also saw the Energy Guide labels affixed to their respective refrigerators. Unlike the ENERGY STAR sticker, the Energy Guide label supplies specific factual information, including (i) the annual estimated operating cost of the refrigerator (here, $62); (ii) how that compares to a range of the annual estimated operating cost of "similar models" of refrigerator (here, between $60 and $78); and (ii) the estimated yearly electrical use of the refrigerator (here, 580 kWh and 581 kWh). (SAC ¶ 67.) Plaintiffs do not allege that any of these specific representations are inaccurate or misleading. (*Id.* ¶¶ 1-162.) They instead continue to insist that the ENERGY STAR logo's generic message of relative efficiency trumps the specific representations regarding

the refrigerators' absolute and relative energy use and efficiency on the Energy Guide label.

In similar situations alleging a misleading communication through an image, logo or other minimal-content communication—like the ENERGY STAR logo at issue here—courts have routinely held that a reasonable consumer would be expected, as a matter of law, to read the more specific, truthful disclosures, and cannot maintain a claim that is inconsistent with those specific representations:

> [T]he depiction of fruit on a product label is not an affirmation that the product contains a particular amount of fruit or any fruit whatsoever . . . [a] reasonable consumer would then be expected to peruse the product's contents simply by reading the side of the box containing the ingredient list . . . All of these actions, which a reasonable consumer would be expected to take, would insure that the consumer was not deceived. The FAC, which acknowledges that Defendant truthfully disclosed the ingredients for its product and that Plaintiffs did not inspect these specific ingredients, thus demonstrates that Plaintiffs have not and cannot state a claim under the UCL, FAL, or the CLRA.

*McKinniss v. Gen. Mills, Inc.*, No. CV 07-2521 GAF (FMOx), 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007). The reasoning of these courts is that "[a]ny ambiguity that [plaintiff] would read into any particular statement is dispelled by the promotion as a whole." *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (affirming dismissal of CLRA claims where allegedly misleading statement that plaintiff won a sweepstakes appeared next to "qualifying language" that clarified the steps that plaintiff must take to be eligible for chance to win sweepstakes); *see also, e.g.*, *Reid v. Johnson & Johnson*, Civil No. 11cv1310 L(BLM), 2012 WL 4108114, at *4-5 (S.D. Cal. Sept. 18, 2012) (dismissing UCL, FAL, and CLRA claims regarding trans fat content of food product where phrase "No Trans Fat" appeared on same package with ingredient list that disclosed small amounts of trans fats); *Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 WL 2159385, at *9-10 (N.D. Cal. June 13, 2012) (dismissing UCL claim where allegedly misleading statements concerning the identity of the entity that ran an internet program occurred along with clarifying language that correctly identified the entity administering the program). Similarly, Plaintiffs cannot maintain an action based on the vague notion of "energy efficiency"

conveyed by the ENERGY STAR logo when they do not allege that the Energy Guide label—the more specific disclosure of the product's energy use and relative efficiency—is also misleading.

Thus, because the ENERGY STAR sticker does not constitute a representation of any fact, and, in light of the specific factual information included on the Energy Guide label that both Plaintiffs admit they saw prior to purchasing their refrigerator, Plaintiffs have pled no misrepresentation and no likelihood of deception arising from their exposure to the generic "efficiency" message they claim was implied by the ENERGY STAR sticker.[9]

**B.      Plaintiffs Fail to State a CLRA Claim**

Plaintiffs allege that Whirlpool violated Sections 1770(a)(5), (7) and (9) of the CLRA "by representing the [KitchenAid refrigerators] as ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the [refrigerators]." (SAC ¶¶ 136-38.) For several reasons, Plaintiffs still fail to plead a CLRA claim.

**1.      Plaintiffs have not alleged any misrepresentation of fact**

The Court dismissed Plaintiffs' first attempt to state a CLRA claim on the grounds that Plaintiffs made sweeping allegations of deceit, but failed to "tie that [misconduct] to any specific behavior by Whirlpool." (Ex. A at 25:14-16.) The Court dismissed Plaintiffs' second attempt to state a CLRA claim on the same grounds:

> Plaintiffs have failed to cure the defect by citing any misrepresentation that
> Defendant conveyed to them, and there are no specific facts in the [FAC]
> regarding a misrepresentation directly related to Plaintiffs' refrigerators. The
> allegations in Plaintiffs' [FAC] fall well below the pleading requirements of
> Rule 9.

---

[9] *McKinniss*, 2007 WL 4762172, at*2 ("As a threshold matter, to state a claim under the UCL or CLRA, a plaintiff must allege that the alleged false and misleading statements were 'likely to deceive a reasonable consumer.'") (citation omitted); *Reid*, 2012 WL 4108114, at *2 (to state a claim under the UCL, FAL, and CLRA, "a plaintiff must allege that the allegedly false and misleading statements were 'likely to deceive a reasonable consumer.'") (citation omitted).

1    *Dei Rossi*, 2013 WL 1312105, at *6. Plaintiffs have not cured this deficiency in the SAC.

2    Plaintiffs still have not explained what is false or misleading about any representations they

3    claim to have received concerning the 2008 model-year KitchenAid refrigerators they

4    bought, or why such representations are allegedly false. *See Cooper*, 137 F.3d at 625.[10]

**2.    Plaintiffs have not adequately alleged any knowing**

**misrepresentation**

7         Even assuming that Plaintiffs have pleaded a false or deceptive statement, because

8    the CLRA prohibits "unfair or deceptive acts … <u>intended</u> to result … in the sale or lease of

9    goods or services to any consumer," Cal. Civ. Code § 1770(a) (emphasis added), "plaintiffs

10   must sufficiently allege that a defendant was aware of a defect at the time of sale to survive

11   a motion to dismiss." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012).

12   The SAC still fails to allege any <u>facts</u> that, if true, would show that Whirlpool was aware, in

13   December 2008, that either of the subject KitchenAid refrigerator models allegedly did not

14   comply with the ENERGY STAR program requirements. Instead, the SAC contains a

15   lengthy narrative regarding the DOE testing allegedly performed <u>in 2011</u>, followed by a

16   conclusory allegation that Whirlpool knew or should have known that the 2008 models

17   could be disqualified in the future. (*See generally* SAC ¶¶ 74-85 and 95.) Plaintiffs cannot

18   simply point to the 2011 disqualification and their December 2008 purchases and expect the

19

20   ────────────────────

21   [10]Moreover, Plaintiffs must plead facts that, if true, showed that they relied on an alleged
     misrepresentation. *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1228
     (C.D. Cal. 2011) ("[A] plaintiff suing under the CLRA for misrepresentations in connection

22   with a sale [must] plead and prove she relied on a material misrepresentation." (citation
     omitted)). Although the SAC alleges that the Plaintiffs would not have bought their

23   KitchenAid refrigerators if they had known that the refrigerators were not ENERGY STAR
     qualified (SAC ¶¶ 71-72), this shows, at most, that ENERGY STAR compliance was

24   material; it does not show reliance. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939,
     946 (S.D. Cal. 2007) (distinguishing reliance and materiality under CLRA and defining the

25   latter as being of sufficient importance that the plaintiff would not have acted as she did but
     for alleged misrepresentation). Further, as noted above in Section V.A, the specific and

26   accurate disclosures contained in the Energy Guide label would render any reliance on the
     "representation" implied by the ENERGY STAR sticker inherently unreasonable.

27

28

20

DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS 2ND AMENDED COMPLAINT
CASE NO. 2:12-cv-00125-TLN-JFM

Court to fill in the material gaps between them (*e.g.*, whether the 2011 models and 2008 models were identical in relevant respects from an engineering standpoint). *See Iqbal*, 556 U.S. at 678 (complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 570).

Plaintiffs attempt unsuccessfully to bolster their prior allegation that the 2011 disqualification would retroactively apply to their 2008 model-year refrigerators, but Plaintiffs plead no separate findings or statements by the DOE about those earlier machines, nor do they identify any applicable rule or regulation that states that such disqualifications are "automatically" retroactive. (SAC ¶¶ 89-94.) In any event, Plaintiffs still fail to adequately plead their conclusory assertion that Whirlpool knew of the alleged "defect" in 2008, three years before the DOE made its determination. *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (dismissing UCL, CLRA, and FAL claims because the plaintiffs "have not sufficiently alleged that [any] representations were untrue or misleading at the time they were made").

### 3. Plaintiffs have not alleged a "transaction" with Whirlpool

Plaintiffs' CLRA claims against Whirlpool also fail because they have not alleged any facts to show that they entered into an agreement or transaction with Whirlpool. A "transaction" is "an agreement between a consumer and another person." Cal. Civ. Code § 1761(e). Plaintiffs admit that they bought their KitchenAid refrigerators from retail vendors. (SAC ¶¶ 71-72.) Whirlpool was not a party to those transactions. Consequently, Plaintiffs cannot sue Whirlpool under the CLRA. *See* Cal. Civ. Code § 1780(a) ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person . . ." (emphasis added)).

**C.      Plaintiffs Fail to State a UCL Claim**

As demonstrated below, Count V of the SAC, like its predecessors, still fails to state a claim under either the "unlawful," "unfair," or "fraudulent" prongs of California's UCL.

**1.      Plaintiffs fail to plead an "unlawful" UCL claim**

In his Order dismissing the FAC, Judge Mendez noted Plaintiffs' "unlawful" UCL claim was little more than a bald allegation that Whirlpool violated a panoply of other federal laws in unidentified ways:

> [T]o state a claim under the UCL, the plaintiff must not only cite violations of other laws, but plead facts to substantiate those violations. As discussed by Defendant, Plaintiffs allege Defendant violated the "EPCA, NECPA, NAEDA," but do not plead any facts in the [First Amended Complaint] to support their conclusory assertion that these laws were, in fact, violated by Defendant under the circumstances of this case.

*Dei Rossi*, 2013 WL 1312105, at *6. The SAC simply re-alleges Plaintiffs' prior bald allegation that Whirlpool violated "EPCA, NECPA, [and] NAECA"[11] in unspecified ways (SAC ¶ 148), and adds an equally conclusory allegation that Whirlpool also violated the MMWA (*id.* ¶ 147). As shown above, Plaintiffs have not pled an MMA claim, so their additional citation to that statute does not create a basis for UCL liability in this case. In short, there are no new facts alleged in the SAC that would support an "unlawful" UCL claim.

**2.      Plaintiffs fail to plead an "unfair" UCL claim**

The entirety of Plaintiffs' "unfair" UCL claim is set forth in a single paragraph alleging that Whirlpool somehow violated "the policy or spirit of the EPCA, NECPA, NAECA, and regulations promulgated thereunder, governing the energy efficiency of

---

[11] *See* Energy Policy and Conservation Act, Pub. L. No. 94-163, 89 Stat. 871 (1975); National Energy Conservation Policy Act, Pub. L. No. 95-619, 92 Stat. 3206 (1978); National Appliance Energy Conservation Act of 1987, Pub. L. No. 100-12, 101 Stat. 103 (1987).

1  refrigerators." (SAC ¶ 148.) Judge Mendez dismissed this exact allegation in the FAC,

2  holding that "Plaintiffs must clearly identify the unfair practice, as they bear the burden in

3  establishing why Defendant is not permitted to engage in the allegedly unfair practice." *Dei*

4  *Rossi*, 2013 WL 1312105, at *7. Plaintiffs did not heed Judge Mendez' direction; they still

5  do not identify any specific alleged "unfair" practice. Thus, they still have not stated an

6  "unfair" UCL claim. *See Berryman v. Merit Prop. Mgmt., Inc*., 152 Cal. App. 4th 1544,

7  1555 (2007).

8  ### 3.   Plaintiffs fail to plead a "fraudulent" UCL claim

9  As with Plaintiffs' "unfair" UCL claim, the "fraudulent" UCL claim comprises one

10  paragraph vaguely alleging that Whirlpool violated the "fraudulent" prong by "representing

11  the Mislabeled Refrigerators as ENERGY STAR®-qualified and by misrepresenting the

12  energy efficiency of the Mislabeled Refrigerators." (SAC ¶ 149.) In addressing this same

13  allegation in the FAC, Judge Mendez noted that "Plaintiffs have failed to plead facts clearly

14  identifying a misrepresentation by Defendant, and Plaintiffs have not identified knowledge

15  by Defendant, at the time any representation was conveyed to them, that the representation

16  was misleading or false." *Dei Rossi*, 2013 WL 1312105, at *7. As with the prior complaint,

17  the SAC contains no "specific facts related to a misrepresentation that can be imputed to

18  Defendant." *Id*. As this Court has repeatedly held, simply labeling the ENERGY STAR

19  sticker a "misrepresentation" is not sufficient to state a claim.

20  ### D.   Plaintiffs Fail to State a FAL Claim

21  Count VI of the SAC is not materially different from Count VI of the FAC; the only

22  apparent change is one new paragraph that states, in conclusory fashion, that "[t]he

23  misrepresentations and non-disclosures by Defendant of the material facts detailed above

24  constitutes false and misleading advertising and therefore constitutes a violation [of]

25  California's FAL." (SAC ¶ 159.) As Judge Mendez correctly pointed out in dismissing the

26  FAL claim, Plaintiffs failed to specify the "time, place, or medium in which any allegedly

27  false advertisement was communicated to them, nor do they offer any specific allegations

28

concerning the content of any allegedly false advertisement that they saw or were otherwise exposed to." *Dei Rossi*, 2013 WL 1312105, at *8. The SAC does nothing to address these deficiencies.

Further, although Plaintiffs repeatedly allege that Whirlpool engaged in an unidentified "long-term advertising campaign" (SAC ¶¶ 8; *see also* 43, 51), Plaintiffs do not specify what parts, if any, of this alleged "campaign" they actually saw or heard, when or where they saw or heard these alleged advertisements, or what any specific advertisement they may have seen or heard said. *See In re Sony*, 758 F. Supp. 2d at 1089 (dismissing FAL claim because the plaintiffs "have not sufficiently alleged that [any] representations were untrue or misleading at the time they were made"). Simply put, pointing to a general "advertising campaign" and claiming that something, somewhere within the alleged campaign was false, does not state a FAL claim.

## VI.     FURTHER LEAVE TO AMEND WOULD BE FUTILE

As noted above, the SAC represents Plaintiffs' third attempt to state a claim. Leave to amend may be properly denied where repeated amendments have failed to cure deficiencies, and further amendments would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). Discretion to deny leave to amend is "particularly broad" if the plaintiff previously has amended the complaint. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989).

Here, Judge Mendez was clear, both during oral argument on Whirlpool's motion to dismiss the original complaint and in his Order dismissing the FAC, as to what additional facts Plaintiffs would need to allege to state a claim. Judge Mendez also cautioned Plaintiffs that their SAC would likely be their last:

> The Court notes that this is the second chance it has given Plaintiffs to properly plead their claims in this action and it is unlikely that the Court will permit any further chances to amend in order to avoid a dismissal with prejudice of this case.

1   *Dei Rossi*, 2013 WL 1312105, at *8. As explained above, the deficiencies identified by the

2   Court remain unresolved in the SAC. Plaintiffs' inability to correct these deficiencies after

3   three attempts demonstrates the futility of permitting further amendment. *See, e.g., Metzler*,

4   540 F.3d at 1060 n.4 (dismissal without leave to amend is appropriate when a party has

5   "multiple opportunities to amend and [is] unable to cure the defects that required dismissal

6   of … previous complaints"); *East v. San Bernardino Cnty. Sheriff's Dep't*, No. ED CV 09-

7   655-GW(E), 2011 WL 6000847, at *4 (C.D. Cal. Nov. 28, 2011) (denying leave to amend

8   where the Court "previously advised Plaintiff, on multiple occasions, of the deficiencies of

9   his pleading" and the plaintiff "proved himself unwilling or unable to allege *facts* stating any

10  claim on which relief can be granted in this action") (emphasis in original).

11  **CONCLUSION**

12          For all of the foregoing reasons, the Second Amended Complaint should be

13  dismissed in its entirety with prejudice.

14  Dated: May 21, 2013                          Respectfully submitted,

15

16                                       By: *s/ Galen D. Bellamy*
                                             Galen D. Bellamy (*pro hac vice*)
17                                           Sean G. Saxon (SBN 230054)
                                             Wheeler Trigg O'Donnell LLP
18                                           370 Seventeenth Street, Suite 4500
                                             Denver, Colorado 80202
19                                           Telephone:  (303) 244-1800
                                             Facsimile:  (303) 244-1879
20                                           Email:       bellamy@wtotrial.com
                                                          saxon@wtotrial.com
21
                                             and
22
                                             Bradley A. Benbrook (SBN 177786)
23                                           Benbrook Law Group, PC
                                             400 Capitol Mall, Suite 1610
24                                           Sacramento, California 95814
                                             Telephone:  (916) 447-4900
25                                           Facsimile:  (916) 447-4904
                                             Email:       brad@benbrooklawgroup.com
26
                                             Attorneys for Defendants
27

28

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on May 21, 2013, I electronically filed the foregoing **Defendant's Memorandum in Support of Motion to Dismiss Second Amended Class Action Complaint** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the email addresses listed on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.


*s/ Galen D. Bellamy*
Galen D. Bellamy