UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE DEI ROSSI and MARK LINTHICUM, on behalf of themselves and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WHIRLPOOL CORPORATION,<br><br>Defendant. | No. 2:12-cv-00125<br><br><br><br>**ORDER** |

This matter is before the Court pursuant to Defendant Whirlpool Corporation's ("Defendant") Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF No. 72.) Plaintiffs Kyle Dei Rossi and Mark Linthicum ("Plaintiffs") have filed an opposition to Defendant's motion. (ECF No. 77.) The Court has carefully considered the arguments raised in Defendant's motion to dismiss and their subsequent reply, as well as Plaintiffs' opposition. For the reasons set for the below, Defendant's motion to dismiss (ECF No. 72) is GRANTED IN PART AND DENIED IN PART.

**I.    FACTUAL BACKGROUND**

Plaintiffs have brought this claim on behalf of themselves and 100 other similarly situated individuals. (Second Amended Complaint ("SAC"), ECF No. 71 at ¶ 2.) Plaintiffs

1

purchased refrigerators manufactured by Defendant that bear the Energy Star logo.[1] The model numbers for the purchased refrigerators were subsequently determined not to comply with Energy Star requirements and were disqualified from the Energy Star program. Plaintiffs allege that they would not have purchased the refrigerators had they known that the refrigerators did not meet the Energy Star requirements. They have brought this action alleging that Defendant's misrepresentation that the refrigerators met the Energy Star guidelines is a breach of the products' express warranty and implied warranty of merchantability. (ECF No. 71 at ¶¶ 115−122, 123−132.) In addition, Plaintiffs allege that Defendant violated the following: the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; California Consumer Legal Remedies Act, Civil Code §§ 1750, et seq.; California Unfair Competition Law, Business and Profession Code §§ 17200, et seq.; and California False Advertising Law, Business and Professions Code §§ 17500 et seq. (ECF No. 71 at ¶¶ 106−114, 133−142, 143−153, 154−161.)

Defendant contends that Plaintiffs' Second Amended Complaint is both factually and legally deficient and thus moves this Court to dismiss Plaintiffs' Second Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 72.)

**II.    STANDARD OF LAW**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted

---

[1] The Energy Star program is a government-backed program intended to identify and promote energy efficient products. The program is jointly administered by the Department of Energy ("DOE") and the Environmental Protection Agency ("EPA"). *See* http://www.energystar.gov/ (last visited Oct. 11, 2013).

as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any

exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

Plaintiffs have alleged state claims governed by California law as well as federal law. Since some of Plaintiffs' claims are dependent on Plaintiffs' breach of warranty claims, the Court will address the warranty claims first.

#### a. Breach of Express Warranty (Count II)

Plaintiffs allege in their complaint that Defendant expressly warranted that the refrigerators in question met the specifications required to be Energy Star certified by adhering the Energy Star logo to the refrigerator. (ECF No. 71 at ¶ 117.) Defendant argues that Plaintiffs' claim fails because the adhesion of the Energy Star logo does not create an affirmation of fact or promise, and further that Plaintiffs have not pled the exact terms of the alleged warranty. (ECF No. 72-1 at 14−16.) For the reasons set forth below, the Court agrees with Plaintiffs.

An express warranty is a contractual term relating to the title, character, quality, identity or condition of the sold goods. *Blennis v. Hewlett-Packard Co.*, No. C 07-00333 JF, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008) (citing *Fogo v. Cutter Labs., Inc.*, 68 Cal. App.

4

3d 744 (1977)).  California Commercial Code § 2313 states that an express warranty is created as follows:

> (1) (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Thus, to prove a claim based on breach of an express warranty, a plaintiff must show that the seller: "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Blennis*, 2008 WL 818526, at *2 (quoting *Rodarte v. Philip Morris Inc.*, No. 03-0353FMC, 2003 WL 23341208, at *7 (C.D. Cal. June 23, 2003)).  In addition, to plead a claim for breach of express warranty, "'one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury.'" *Blennis*, 2008 WL 818526, at *2 (quoting *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).  The Court shall address each of the aforementioned prongs separately.

As to the first prong, Plaintiffs have pled that the Energy Star logo was in fact affixed to the refrigerators through an energy guide sticker, indicating that the products met the Energy Star requirements.  (ECF No. 71 at ¶¶ 67−68, 71.)  Although Defendant alleges that this logo does not confer a specific and express warranty, Defendant does not provide any reason for affixing this logo to the product other than to signify that the product meets the Energy Star

specifications. Simply put, the Court cannot fathom any other reason for affixing the logo in such a manner. In fact, if Defendant's intention was simply to signify that the product was energy efficient, it could have done so without affixing the Energy Star certification logo. Thus, the Court finds that affixing this logo to the product satisfies the definition of an express warranty under California Commercial Code § 2313(1)(a) and (1)(b). Specifically pursuant to (1)(a) it is an affirmation of fact that the product adheres to the Energy Star product, and pursuant to (1)(b) it sufficiently describes the product as meeting the Energy Star requirements. *Accord Avram v. Samsung Elecs. Am., Inc.*, No. 2:11-6973 KM, 2013 U.S. Dist. LEXIS 97341, at *20 (D.N.J. July 11, 2013).

Defendant contends that Plaintiffs fail to plead the exact terms of the alleged warranty. (ECF No. 72-1 at 16 (citing *Avago Techs. U.S., Inc. v. Venture Corp.*, No. C 08-03248 JW, 2008 WL 5383367, at *4−5 (N.D. Cal. Dec. 22, 2008).) However, the Court finds that Plaintiffs have satisfied this requirement. Plaintiffs allege that the Energy Star logo expressed that the product meets the Energy Star requirement which is "that the Mislabeled Refrigerators were at least 20% more efficient than models that simply meet the federal minimum standard for energy efficiency." (ECF No. 71 at ¶ 111.) The Energy Star policy illustrates that this is the exact specification requirement for such certification. As Plaintiffs have alleged in their complaint, the energystar.gov website highlights that the mandatory 20% improvement in energy efficiency is the key product criterion for refrigerators. *See* ENERGY STAR, Refrigerators & Freezers Key Product Criteria, http://www.energystar.gov/index.cfm?c=refrig.pr_crit_refrigerators (last visited Oct. 2, 2013) (providing that the "key product criteria" for full size and compact refrigerators is "[a]t least 20% more energy efficient than the minimum federal government standard"). Notably, the program does not require that the product meet certain hyper-technical requirements−only that the finished product yields a product that is at least 20% more energy efficient than the minimum federal government standard under the National Appliance Energy Conservation Act ("NAECA"). It would be nonsensical for this Court to impose stricter pleading requirements on Plaintiffs than is required and articulated by the Energy Star program itself.

Thus, this Court finds that Defendant's adhesion of the Energy Star certification to its products falls within the statutory definition of an express warranty pursuant to California Law, and that Plaintiffs have alleged an express warranty with appropriate specificity and have met the first prong.

The Court is cognizant that its opinion conflicts with that expressed in the Northern District of Ohio. *See Savett v. Whirlpool*, No. 12-cv-310, WL 3780451, at *9 (N.D. Ohio Aug. 31, 2012). In *Savett*, the court held that the

> ENERGY STAR logo is not an "affirmation of fact or promise" as alleged in this case. As an initial matter neither the parties nor the Court uncovered any case in which a logo has ever been held to constitute an express warranty. Moreover, the logo itself contains no assertion of fact or promise. Unlike traditional express warranties where unambiguous promises or factual assertions are made, which are clearly understood on their own footing, any meaning conveyed by the logo requires independent knowledge.

2012 WL 3780451, at *9. In making this determination, the Ohio court noted that the plaintiff failed to assert that "he saw or understood any purported meaning of the logo." *Id.* at n.8. This Court declines to follow the reasoning in *Savett*. As the Court has previously alluded, Defendant does not provide, and the Court cannot fathom any other reason to affix an Energy Star logo to a product other than for the purpose of expressing that the product meets the Energy Star requirements. Furthermore, unlike the plaintiff in *Savett*, in the instant case Plaintiffs have alleged that they independently understood the meaning of the logo and relied on it in deciding to purchase the products. (*See* ECF No. 71 at ¶¶ 71−73 ("Mr. Dei Rossi is an energy conscious person and goes out of his way to avoid wasting energy. Like most consumers, he is very familiar with the ENERGY STAR® program and learned about it from numerous news reports that explained the program and from talking to his wife, parents and in-laws. At the time he purchased the KitchenAid KSRG25FVMT, he understood that the Energy Star® program is a government program that promotes energy efficiency and that the ENERGY STAR® logo indicates that the appliance is more energy efficient than an appliance that does not have the ENERGY STAR® label. . . [Mr. Linthicum] saw the ENERGY STAR® labels prior to and at the time of purchase, and understood them as a representation and warranty by Whirlpool that the

1  KitchenAid KSRS25RVHR met the standards of energy efficiency established by the ENERGY
2  STAR® program, and that the refrigerator would help him maximize his energy savings while
3  helping to protect the environment.").)

4  In addition, the Court finds that Plaintiffs have met the second prong since the
5  promise or description formed part of the basis of the bargain. (*See* ECF No. 71 at ¶¶ 71−73
6  ("While shopping for a new refrigerator, Mr. Dei Rossi decided to look only at Energy Star®
7  models. . . [Mr. Linthicum] relied on these [Energy Star] representations and warranties in
8  deciding to purchase the refrigerator, and these representations and warranties were part of the
9  basis of the bargain, in that he would not have purchased the KitchenAid KSRS25RVHR if he
10 had known that it was not in fact, Energy Star qualified.").)  As the foregoing illustrates, the
11 Plaintiffs specifically allege in the complaint that the promise or description formed the basis of
12 the bargain.

13 The second amended complaint complies with the requisites necessary to prove the
14 third prong.  The complaint alleges that the products breached the exact terms of the warranty by
15 not meeting the 20% Energy Star requirement and by failing to yield the energy saving
16 advantages that an Energy Star appliance bestows upon its users, (ECF No. 71 at ¶¶ 74−93, 114).
17 Also, the complaint specifically alleges that Plaintiffs relied on the [Energy Star] representations
18 made by Defendant in deciding whether or not to purchase the refrigerators.

19 Further, Plaintiffs also meet the fourth prong in that they allege in the complaint
20 that they suffered damages from the breach, i.e. paid a higher amount for the product, (ECF No.
21 71 at ¶ 114).

22 Finally, Defendant also contends that Plaintiffs failed to plead that the breach of
23 warranty occurred within the one-year warranty term. (ECF No. 72-1 at 16 n.3.)  However,
24 Plaintiffs allege that the product never conformed and thus violated the warranty upon sale which
25 is necessarily within the one-year warranty term.  This factual allegation sufficiently pleads that
26 the violation occurred within the one-year warranty term. (*See* ECF No. 71 at ¶¶ 88−89, 95.)
27 Hence, the Court finds that Plaintiffs have sufficiently pled their breach of express warranty
28 claim.

### b. Breach of Implied Warranty of Merchantability (Count III)

Plaintiffs contend that the refrigerators violate the implied warranty of merchantability because they do not conform to the promise or affirmation that they abide by the Energy Star requirements. (ECF No. 77 at 21.) Defendant argues that Plaintiffs define merchantability too narrowly and that the proper test is whether the refrigerator can serve its ordinary purpose, i.e. the product's ability to keep food cold rather than the ability to keep food cold while using 20% less energy than the national minimum. (ECF No. 72-1 at 17.) Thus, Defendant contends that this claim must be dismissed because Plaintiffs cannot claim that the product failed to properly refrigerate. (ECF No. 72-1 at 17.)

"A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1) (West). For goods to be merchantable they must:

> (a) Pass without objection in the trade under the contract description; and
>
> (b) In the case of fungible goods, are of fair average quality within the description; and
>
> (c) Are fit for the ordinary purposes for which such goods are used; and
>
> (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) Are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) Conform to the promises or affirmations of fact made on the container or label if any.

Cal. Com. Code § 2314(2). "Unlike express warranties, which are basically contractual in nature [ ], the implied warranty of merchantability arises by operation of law." *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (1975). "The implied warranty 'provides for a minimum level of quality.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)). "A breach of the warranty of

1  merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary
2  use.'" *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)).  In order to
3  state a claim, "a defect must be sufficiently serious so as to render the product unfit for its
4  ordinary purpose." *Hovsepian v. Apple, Inc.*, 08-5788 JF (PVT), 2009 WL 2591445, at *6 (N.D.
5  Cal. Aug. 21, 2009); *see also Am. Suzuki Motor Corp.*, 37 Cal. App. 4th at 1295.  That being said
6  a product must reasonably perform its purpose. *See Isip v. Mercedes–Benz USA, LLC*, 155 Cal.
7  App. 4th 19, 26 (2007) ("We reject the notion that merely because a vehicle provides
8  transportation from point A to point B, it necessarily does not violate the implied warranty of
9  merchantability.  A vehicle that smells, lurches, clanks, and emits smoke over an extended period
10 of time is not fit for its intended purpose.").

11       The Court agrees with Defendant and finds that that even though a product may be
12 labeled with specific adjectives, that description does not change the ordinary purpose that it is
13 used for. *See Am. Suzuki Motor Corp.*, 37 Cal. App. 4th at 1295 (stating that an implied warranty
14 does not "impose a general requirement that goods precisely fulfill the expectation of the buyer.
15 Instead, it provides for a minimum level of quality."); *Tomek v. Apple, Inc.*, No. 2:11-cv-02700-
16 MCE-DAD, 2012 WL 2857035, at *7 (E.D. Cal. July 11, 2012) (dismissing implied warranty
17 claim where the plaintiff alleged that his computer's battery and charger failed to adequately
18 power his computer because the plaintiff's allegations of inconvenience were insufficient to show
19 computer is not fit for ordinary use); *Kent v. Hewlett–Packard Co.*, No. 09-5341JF PVT, 2010
20 WL 2681767, at *4 (N.D. Cal. July 6, 2010) (finding that plaintiffs had to show that the defect
21 renders the defendant's computers unfit for their ordinary purpose, not just that the alleged defect
22 was "inconvenient.")  Plaintiffs have had numerous opportunities to allege that the products failed
23 to refrigerate and have not done so.  As such, the Court finds that Plaintiffs cannot state a claim
24 for breach of implied warranty.

25            **c.   Magnuson-Moss Warranty Act (Count I)**

26       Defendant alleges that because Plaintiffs' warranty claims fail, the Court must
27 dismiss Plaintiffs' claim that Defendant's alleged warranty breach violates the Magnum-Moss
28 Warranty Act ("MMWA").  (ECF No. 72-1 at 21.)  In addition, Defendant contends that

1  Plaintiffs' MMWA claim also fails because the Energy Star sticker does not qualify as a "written
2  warranty" as defined in the MMWA. (ECF No. 72-1 at 21 n.8.) The Court has already
3  determined that Plaintiffs' express warranty claim survives Defendant's motion, thus the Court
4  need only address Defendant's argument that the Energy Star logo does not meet the MMWA
5  definition of a "written warranty."

The MMWA creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty: "[A] consumer who is damaged by the failure of a . . . . warrantor . . . to comply with any obligation . . . under a written warranty . . . may bring suit for damages and other legal and equitable relief . . . in an appropriate district court of the United States." 15 U.S.C. § 2310(d)(1)(B). The MMWA defines the term "written warranty" as

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product") (emphasis added);

15 U.S.C. § 2301(6). Thus, in contrast to the California Civil Code's definition of an express warranty, the MMWA requires (1) a "written affirmation" or "written promise," (2) that the written affirmation promises a defect free product or guarantees a level of performance, and (3) a specific time period over which the performance is guaranteed.

As previously discussed, a reasonable interpretation of the affixed Energy Star logo is that a product is Energy Star certified. Furthermore, the "Energy Star" certification promises that a refrigerator meets a certain "specified level of performance." *See Avram,* 2013 U.S. Dist. LEXIS 97341, at *41−42. Thus, assuming the Court found that the logo could satisfy the written fact or promise requirement and did specify a level of performance, Plaintiffs still must satisfy the specific time period requirement for the logo in question to fall within the regulation of the MMWA. *See Skelton v. GM Corp.*, 660 F.2d 311, 316 n. 7 (7th Cir. 1981) ("A

product information disclosure without a specified time period to which the disclosure relates is ... not a written warranty.").

Here, Plaintiffs cannot plead sufficient facts concerning the specified time element because the Energy Star logo does not in itself express or denote a time period. *See Kelley v. Microsoft Corp.*, 2007 WL 2600841, at *3−5 (W.D. Wash. Sept. 10, 2007) (dismissing MMWA claim because "Windows Vista Capable" stickers lacked a "temporal element" as to the specified period of time required to constitute a warranty). As such, Plaintiffs do not adequately plead a violation on the MMWA, and this claim must be dismissed. *Id.*; *see also Hairston v. S. Beach Beverage Co., Inc.*, CV 12-1429-JFW DTBX, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012), *appeal dismissed* (July 12, 2012) (dismissing plaintiff's MMWA claim because the Lifewater label fails to meet the definition of "written warranty" under Section 2301(6)(A) of the MMWA because the label neither promises a defect-free product, nor guarantees a level of performance over a specific time period); *States v. BFG Electroplating & Mfg. Co., Inc.*, Civ. A. No. 87-1421, 1989 WL 222722, at * 10 (W.D. Pa. Oct. 18, 1989) (holding that an advertisement stating "450 used 8-inch cement blocks" was not a written warranty because it specified no period of time); *Simmons v. Taylor Childre Chevrolet-Pontiac, Inc.*, 629 F. Supp. 1030, 1032 (M.D. Ga. 1986) (written invoice for purchase of used car does not specify level of performance or period of time); *Schreib v. Walt Disney Co.*, 2006 WL 573008 at *4 (Ill. App. 2006) (videos named "Gold Collection" and "Masterpiece Collection" were not written warranties that videos would last for generations).

### d.  California's Consumer Legal Remedies Act (Count IV)

Plaintiffs allege that Whirlpool violated CLRA §§ 1170(a)(5),(7) and (9). Defendant contends that Plaintiffs have not adequately pled a violation because they cannot allege facts that prove that Defendant was aware that the refrigerator models at issue did not comply with the Energy Star guidelines. (ECF No. 72-1 at 25.)

The Consumer Legal Remedies Act ("CLRA") "prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction <u>intended</u> to result or which results in the sale or lease of goods or services to any consumer.'"

12

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cal. Civ. Code § 1770(a)) (emphasis added). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Id.*; *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006); *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 54 (2003).

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The Court notes that Plaintiffs' CLRA claim as well as their Unfair Competition Law ("UCL") claim,[2] are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). "To satisfy the heightened standard under Rule 9(b), the allegations must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bruton v. Gerber Products Co.*, No. 12-CV-02412-LHK, 2013 WL 4833413, at *4 (N.D. Cal. Sept. 6, 2013) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985). However, "the heightened pleading requirements of Rule 9(b) do not apply to allegations of knowledge, intent, or 'other conditions of a person's mind.'" *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011) (quoting Fed. R. Civ. P. 9(b)). Rule 9(b) explicitly states that scienter may be alleged generally. *Id.* This does not mean, that conclusory allegations of knowledge or intent suffice. *Iqbal*, 556 U.S. at 686. Rather, Rule 9(b) merely excuses a party from pleading scienter under an elevated pleading standard; the "less rigid—though still operative—strictures of Rule 8" must be satisfied. *Id.*; *see also Swingless Golf Club v. Taylor*, 679 F. Supp. 2d 1060, 1067 (N.D. Cal. 2009) (concluding that the "non-heightened pleading standard" for knowledge is the "*Iqbal* standard");

Section 1770(a) of the CLRA states that the following unfair methods of

---

[2]   *See* Section III(e) below for more discussion of Plaintiffs' UCL claim.

competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (9) Advertising goods or services with intent not to sell them as advertised.

California federal courts have held that under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss. *See Wilson*, 668 F.3d at 1145; *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ("Sony had no duty to disclose facts of which it was unaware."); *Kent v. Hewlett–Packard Co.*, No. 09-5341 JF (PVT), 2010 WL 2681767, at *10, 2010 U.S. Dist. LEXIS 76818, at *29 (N.D. Cal. July 6, 2010) ("Plaintiffs have not alleged with specificity any other facts that could support a claim that HP knew the computers in suit were defective at the time of sale or that HP actively concealed a defect at the time of sale.").

Plaintiffs' Second Amended Complaint alleges as follows:

> [Whirlpool] maintains rigorous testing procedures. Whirlpool's laboratories are certified annually by the Canadian Standards Association, and "work closely with them in rigorously demonstrating that the appropriate principles outlined by ISO/IEC 17025 are within [Whirlpool's] process for ENERGY STAR® product qualification. Moreover, Whirlpool touts that the technical sophistication of [its] laboratories and the highly advanced skill sets of [its] engineers [as] among the best in the world. [Whirlpool's] lab personnel also have expansive job scopes, which include more responsibility than just testing product for energy performance. According to Whirlpool, the Whirlpool process includes rigorous equipment maintenance and calibration, detailed lab procedures and comprehensive record keeping on both equipment and test results. **As such, Whirlpool either (a) tested the Mislabeled Refrigerators before marketing them and, at all times relevant hereto, knew that the models were non-compliant with the requirements of the ENERGY STAR® program or, in the**

> alternative (b) affixed ENERGY STAR® labels to the Mislabeled Refrigerators without testing them, and thus knew the representation concerning their energy efficiency was baseless. **This information is solely within Whirlpool's possession**.

(ECF No. 71 at ¶ 94 (quotations and citations omitted) (emphasis added).) The Court finds that Plaintiffs have set forth factual allegations that if proven true would support their contention that Defendant either intentionally misrepresented the energy efficiency of its product or intentionally labeled the products with information that it had not verified as accurate. In either instance, the Court finds that these allegations comport with the pleading standards required under the CLRA.

Finally, Defendant contends that Plaintiffs' CLRA claim fails because Plaintiffs bought their refrigerators from third-party vendors and not directly from Defendant. (ECF No. 72-1 at 26.) Defendant has not cited any cases in support of its contention. In contrast, Plaintiffs have provided the Court with numerous cases supporting their contention that a direct sale is not required to allege a CLRA claim. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010); *Keilholtz v. Superior Fireplace Co.*, No. C 08-00836 CW, 2009 WL 839076, at *3−4 (N.D. Cal. Mar. 30, 2009); *Chamberlan v. Ford*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005). These cases demonstrate that where a manufacturer had exclusive knowledge of a defect and the consumer relied upon that defect, the CLRA's protection extends to the manufacturer as well, regardless of whether the consumer dealt directly with the manufacturer. *See Tietsworth*, 720 F. Supp. 2d at 1140; *Keilholtz*, 2009 WL 839076, at *3−4; *Chamberlan*, 369 F. Supp. 2d at 1144. Accordingly, the Court finds that Plaintiffs have adequately pled their CLRA claim.

### e. California's Unfair Competition Law (Count V)

The scope of the UCL is broad and does not proscribe specific practices. Rather, it defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." *See* Cal. Bus. & Prof. Code § 17200; *Keilholtz*, 2009 WL 839076, at *5; 13 Witkin, Summary 10th (2005) Equity, § 107, p. 411. It governs anticompetitive business practices as well as injuries to consumers, with a primary purpose of preserving fair business competition. 13 Witkin, Summary 10th (2005) Equity, § 107, p. 411−12. The statutory language referring to "any

1   unlawful, unfair or fraudulent" practice makes clear that a practice may be deemed unfair even if
2   not specifically proscribed by some other law.  Thus, the UCL has established three types of
3   unfair competition: (1) unlawful acts or promises; (2) unfair acts or promises; and (3) fraudulent
4   acts or promises.  Cal. Bus. & Prof. Code § 17200.

Plaintiffs have alleged violations under all three prongs alleging that Defendant's conduct was unlawful, unfair and fraudulent.  (ECF No. 71 at ¶¶ 146, 148−49.)  Defendant argues that Plaintiffs fail to allege facts supporting any of the three prongs and thus move this Court to dismiss Plaintiffs' UCL claim.  As such, the Court shall address each prong separately.

### 1. Unlawful Acts or Promises

By proscribing "any unlawful" business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.  *Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); 13 Witkin, Summary 10th (2005) Equity, § 107, p. 412.  Plaintiffs contend that all manufacturers are required to confirm that a product meets the Energy Star requirements before using the logo.  Thus, Plaintiffs argue that because the Department of Energy ("DOE") found that the refrigerators did not comply with the Energy Star requirements and because there had been no modification to the specifications of these products, Defendant had either failed to test the product or knowingly misrepresented that these products were Energy Star certified in violation of "EPCA ("Energy Policy and Conservation Act), NECPA (National Energy Conservation Policy Act) [and] NAECA (National Appliance Energy Conservation Act)."  (ECF No. 71 at ¶ 146.)  Plaintiffs further allege that

> [t]hese statutes give the DOE authority to establish energy efficiency standards for refrigerators, promote Energy Star compliant technologies, and the power to preserve the integrity of the Energy Star label.  42 U.S.C. § 6294a.  Under applicable regulations, the DOE set detailed testing standards for refrigerators to be ENERGY STAR® certified. 10 C.F.R. § 430; 10 C.F.R. § 430.23; 10 C.F.R. § 430 Appx. A to Subpart B; 10 C.F.R. § 430 Appx. A1 to Subpart B. or knowingly made false representations that the product complied when they in fact knew that [the products] did not.

(ECF No. 71 at ¶ 146.)   The Court has looked at the cited regulations and guidelines for testing

the energy efficiency of appliances, but fails to find within them a law governing the use of the Energy Star logo.  As such, Plaintiffs cannot sustain a UCL claim under the unlawful prong of § 17200.

### 2. Unfair Acts or Promises

"Under the UCL, '[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided.'" *Berryman*, 152 Cal. App. 4th at 1555 (quoting *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006).  Defendant contends that Plaintiffs have not specified the unfair practice that Defendant has engaged in.  (ECF No 72-1 at 27−28.)  The Court disagrees and finds that Plaintiffs' statement that "Defendant's conduct caused substantial consumer injury, by selling mislabeled appliances that fail to meet the rigorous energy efficiency standards …as conveyed by the ENERGY STAR® logo" explicitly states the "unfair practice" that Plaintiffs are alleging. (ECF No. 71 at ¶ 152.)  Furthermore, Plaintiffs' allegations that "there is no countervailing benefit to Defendant's conduct," (ECF No. 71 at ¶ 152), and that Plaintiffs suffered injury, (ECF No. 71 at ¶ 153), comport with the UCL pleading requirements.  Thus, the Court finds that Plaintiffs have stated a UCL claim under the unfair practice prong.

### 3. Fraudulent Acts or Promises

In arguing that Plaintiffs' UCL claim for fraudulent acts or promises fails, Defendant again argues that Plaintiffs' Second Amended Complaint contains "no specific facts related to misrepresentation that can be imputed to Defendant."  (ECF No. 72-1 at 28.)  The Court has already discussed this argument as it pertains to Plaintiffs' CLRA claim.[3]  The Court determined that Plaintiffs' allegations−that "Defendant's laboratories are certified annually by the Canadian Standards Association," and "[Defendant] work[s] closely with them in rigorously demonstrating that the appropriate principles outlined by ISO/IEC 17025 are within [Defendant's] process for [its] Energy Star® product qualification"−if true, support Plaintiffs' claim that Defendant either intentionally misrepresented the energy efficiency of its product or intentionally

---
[3] *See* Section IV(d).

17

labeled the products with information that it had not verified as accurate. (*See* ECF No. 71 at ¶ 94.) Thus, the Court finds that Plaintiffs have stated a UCL claim under the fraudulent acts or promises prong.

### f. California's False Advertising Law (Count VI)

Finally, Plaintiffs have alleged that Defendant's misrepresentation about its products' Energy Star certification violates California's False Advertising Law, Business & Professions Code §§ 17500 et seq. ("FAL"). FAL provides that it is:

> unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device. . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

Cal. Bus. & Prof. Code § 17500 (West). Defendant contends that this claim should be dismissed because it does not adhere to the heightened pleading standards required under Federal Rule of Civil Procedure 9(b). Specifically, Defendant states: "Plaintiffs failed to specify the time, place, or medium in which any allegedly false advertisement was communicated to them, nor do they offer any specific allegations concerning the content of any allegedly false advertisement that they saw or were otherwise exposed to." (ECF No. 72-1 at 28−29.)

Plaintiffs' second amended complaint contains numerous pages of Energy Star advertisements utilized by Defendant. (ECF No 71 at 21−33.) In addition, Plaintiffs specifically allege the following:

> On December 8, 2008, Plaintiff Kyle Dei Rossi purchased a KitchenAid refrigerator model KSRG25FVMT at 7:21 p.m. from a Best Buy retail store in Stockton, California . . . The refrigerator he purchased was marked with the ENERGY STAR® logo on the yellow Energy Guide label affixed to the refrigerator. The refrigerator he purchased also included the ENERGY STAR® logo on the inside of the refrigerator next to the temperature gauge. The logo is visible whenever the door is opened. A picture of the ENERGY STAR® logo inside Mr. Dei Rossi's refrigerator is included below.
>
> On December 31, 2008, Plaintiff Mark Linthicum purchased a KitchenAid refrigerator model KSRS25RVHR at a Pacific Sales

>retail store in Los Angeles, California. . . Prior to purchasing the KitchenAid KSRS25RVHR, [Mr. Linthicum] looked at advertisements for the refrigerator on the internet. He saw the ENERGY STAR® logo in the internet advertisements. Prior to purchasing the KitchenAid KSRS25RVHR, he went to the store a couple of times to look at the refrigerators sold by Pacific Sales. He did not consider purchasing any refrigerator that did not include the ENERGY STAR® logo and only looked at the approximately 20 refrigerators that included the ENERGY STAR® logo, meaning that he specifically wanted a model that had greater energy efficiency than conventional refrigerators or standard models that did not display the ENERGY STAR® logo.  The KitchenAid KSRS25RVHR he purchased was prominently marked with the ENERGY STAR® logo on the door. He also saw the ENERGY STAR® logo on the yellow Energy Guide tag on the refrigerator. He also saw the ENERGY STAR® logo on the inside of the refrigerator to the right of the temperature panel. Mr. Linthicum sees the ENERGY STAR® logo every time he opens his refrigerator. A picture of the ENERGY STAR® logo inside Mr. Linthicum's refrigerator is included below.

(ECF No. 71 at ¶¶ 71−72.)  The Court finds the above allegations state the date, place, and medium in which Plaintiffs were exposed to Defendant's Energy Star advertisements.  As such, the Court finds that Plaintiffs have adequately stated a claim for FAL.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint  (ECF No. 72). The Court finds that Plaintiffs' Counts II, IV, V, and VI adequately state a claim upon which relief may be granted.  Thus, Defendant's Motion to Dismiss is DENIED as to COUNTS II, IV, V, and VI.  However, the Court finds that Plaintiffs' MMWA Claim (Count I) and Breach of Implied Warranty of Merchantability (Count III) fail to state a claim.  As such, the Court GRANTS Defendant's motion as to COUNTS I and III.  Furthermore, the Court finds that Plaintiffs have had multiple opportunities to amend their complaint and have not alleged facts supporting these claims.  Plaintiffs have been warned previously of such deficiency and the unlikelihood of further opportunities to cure these deficiencies.  (*See* ECF No. 67.)  Thus, the Court finds that Plaintiffs are unable to allege facts to support these claims and that to allow Plaintiffs another opportunity to amend would be futile.  Accordingly, the Court hereby DISMISSES COUNTS I and III WITHOUT LEAVE TO AMEND.

1  IT IS SO ORDERED.

3  Dated: October 24, 2013

Troy L. Nunley
United States District Judge