Galen D. Bellamy (*pro hac vice*)
Cedric D. Logan (*pro hac vice*)
Kenneth E. Stalzer (*pro hac vice*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: (303) 244-1800
Facsimile: (303) 244-1879
Email: bellamy@wtotrial.com
logan@wtotrial.com
stalzer@wtotrial.com

Bradley A. Benbrook (SBN 177786)
Benbrook Law Group, PC
400 Capitol Mall, Suite 1610
Sacramento, California 95814
Telephone: (916) 447-4900
Facsimile: (916) 447-4904
Email: brad@benbrooklawgroup.com

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

KYLE DEI ROSSI and MARK LINTHICUM, on behalf of themselves and those similarly situated,

Plaintiffs,

vs.

WHIRLPOOL CORPORATION,

Defendant.

CASE NO. 2:12-cv-00125-TLN-CKD

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date: November 6, 2014
Time: 2:00 p.m.
Courtroom: 2, 15th Floor
Judge: Honorable Troy L. Nunley

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....... iv

INTRODUCTION ....... 1

STATEMENT OF FACTS ....... 2

I. THE ENERGY STAR PROGRAM ....... 2

A. Program Background ....... 2

B. Energy Star Is Not A "Promise" of a Refrigerator's Actual Energy Use ....... 3

C. Plaintiffs Had Only A Vague and Inaccurate Understanding of the "Message" the Energy Star Logo Conveys ....... 4

II. THE KITCHENAID REFRIGERATORS ....... 4

A. The Refrigerators Originally Tested Energy Star-Compliant ....... 4

B. Whirlpool Did Not Specifically Market the Refrigerators as Energy Star ....... 5

C. A Handful of Refrigerator Units Tested Non-Compliant Towards the End of Their Respective Production Periods in 2010 and 2011 ....... 5

1. The KSRG model failed verification testing for technical reasons, but did not use additional energy under real-world conditions ....... 5

2. After the KSRS model failed verification testing, Whirlpool voluntarily reimbursed affected consumers ....... 6

D. The EPA Has Stated That Disqualification from Energy Star Does Not Automatically Extend to All Units of a Disqualified Model ....... 6

E. There Is No Evidence to Show Which Refrigerator Units Were Non-Compliant with Energy Star ....... 6

ARGUMENT ....... 7

I. STANDARDS FOR RULE 23 CERTIFICATION ....... 7

II. PLAINTIFFS LACK STANDING ....... 7

III. PLAINTIFFS' PROPOSED CLASSES ARE UNASCERTAINABLE ....... 9

IV. PLAINTIFFS CANNOT SATISFY RULE 23(a)(2) ....... 10

V. PLAINTIFFS CANNOT SATISFY RULE 23(b)(3) ....... 11

A. Plaintiffs' Express Warranty Claim Will Involve Highly Individualized Questions of Fact and Law That Will Predominate at Trial ..... 11

1. There is no common evidence of reliance, nor that Energy Star formed the basis of the bargain ..... 11

2. There is no common evidence of breach ..... 12

3. Plaintiffs' proposed 33-jurisdiction express warranty class ignores key differences in the warranty laws of the various states ..... 13

a. Plaintiffs misapply *Mazza* and California's choice-of-law rules ..... 13

b. Plaintiffs' 33-jurisdiction warranty class would require the application of the laws of numerous states ..... 15

B. Because the Materiality of Energy Star Varies Between Reasonable Consumers, Materiality and Reliance Must be Proven Individually for the CLRA Claims ..... 15

C. With Respect to the KSRG Model, Individualized Inquiries Regarding the Existence of Any Injury Would Predominate at Trial ..... 17

D. Plaintiffs Have Failed to Demonstrate That Classwide Damages Could Be Proven With Common Evidence At Trial ..... 18

1. Weir has not, and cannot, conduct a hedonic regression analysis to calculate supposed "price premium" damages in this case ..... 19

2. Individual damages calculations overwhelm common questions in Weir's so-called "Energy Expense" damages model ..... 20

3. Plaintiffs' attempt to recover both "Energy Expense" damages and "Price Premium" damages constitutes impermissible double-counting ..... 20

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Page

## Cases


*Accord Astiana v. Ben & Jerry's Homemade, Inc.*,
C 10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .......... 18

*Algarin v. Maybelline, LLC*,
Civil No. 12cv3000 AJB (DHB), _F.R.D._, 2014 WL 1883772 (S.D. Cal. May 12, 2014) .... 16

*Alligood v. Taurus Int'l Mfg., Inc.*,
No. CV 306–003, 2009 WL 8387645 (S.D. Ga. Mar. 4, 2009) .......... 15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 11

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) .......... 16

*Blackie v. Barrack*, "
524 F.2d 891 (9th Cir. 1975) .......... 18

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005) .......... 11

*Blennis v. Hewlett-Packard Co.*,
C 07-00333 JF, 2008 WL 818526 (N.D. Cal. Mar. 25, 2008) .......... 12

*Castro Valley Union 76, Inc. v. Vapor Sys. Techns, Inc.*,
No. C 11-0299 PJH, 2012 WL 5199458 (N.D. Cal. Oct. 22, 2012) .......... 13

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998) .......... 15

*Cole v. Gen. Motors Corp.*,
484 F.3d 717 (5th Cir. 2007) .......... 14

*Coleman v. Boston Scientific Corp.*,
No. 1:10-cv-01968-OWW-SKO, 2011 WL 3813173 (E.D. Cal. Aug. 29, 2011) .......... 12

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) .......... 2, 17, 18, 19, 20

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 18

*Easter v. Am. W. Fin.*,
381 F.3d 948 (9th Cir. 2004) .......... 8

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970, 980 (9th Cir. 2011) .......... 7

*Falcon for Imp. & Trade Co. v. N. Cent. Commodities, Inc.*, Civil No. A2-01-138, 2004 WL 224676 (D.N.D. Jan. 30, 2004) .... 14

*Fine v. ConAgra Foods, Inc.*, No. CV 10-01848 SJO (CFOx), 2010 WL 3632469 (C.D. Cal. Aug. 26, 2010) .... 16

*Fink, v. Ricoh Corp.*, 839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) .... 14

*Forrand v. Federal Exp. Corp.*, 2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) .... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .... 11

*In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531 (N.D. Cal. 2009) .... 14

*In re ConAgra Foods, Inc.*, CV 11-05379 MMM AGRX, 2014 WL 4104405 (C.D. Cal. Aug. 1, 2014) .... 12, 19

*In re Flash Memory Antitrust Litig.*, C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) .... 18

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 319-24 (S.D. Ill. 2007) .... 15

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009) .... 7

*In re POM Wonderful LLC Mktg. and Sales Practices Litig.*, No. ML 10–02199 DDP (RZx), 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .... 18

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (Cal. Ct. App. 2009) .... 16

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012) .... 11

*Johnson v. Harley-Davidson Motor Co.*, 285 F.R.D. 573 (E.D. Cal. 2012) .... 16

*Karim v. Hewlett-Packard Co.*, C 12-5240 PJH, 2014 WL 555934 (N.D. Cal. Feb. 10, 2014) .... 15

*Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. 2012) .... 12

*Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 502 (N.H. 2002) .... 14

*Lewis v. Casey*, 518 U.S. 343 (1996) .... 7, 8, 9

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) .... 18

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) .......... 8

*Lindell v. Synthes USA*,
11-CV-02053-LJO-BAM, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014) .......... 18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 7

*Lutz Farms v. Asgrow Seed Co.*,
948 F.2d 638 (10th Cir. 1991) .......... 14

*Mazur v. eBay Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009) .......... 9

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 11, 13, 14, 15

*McKenzie v. Fed. Express Corp.*,
275 F.R.D. 290 (C.D. Cal. 2011) .......... 7

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .......... 7

*Oliveira v. Amoco Oil Co.*,
776 N.E.2d 151 (Ill. 2002) .......... 14

*O'Shea v. Epson Am., Inc.*,
No. CV 09-8063 PSG CWx, 2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) .......... 9

*Pagan v. Abbott Labs., Inc.*,
287 F.R.D. 139 (E.D.N.Y. 2012) .......... 9, 11

*Payne v. FujiFilm U.S.A., Inc.*,
Civil Action No. 07-385 (GEB), 2010 WL 2342388 (D.N.J. May 28, 2010) .......... 15

*Red v. Kraft Foods, Inc.*,
No. CV 10-1028-GW (AGRx), 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012). .......... 20

*Romberio v. Unumprovident Corp.*,
385 F. App’x 423 (6th Cir. 2009) .......... 10

*Sanchez v. Wal Mart Stores, Inc.*,
No. Civ. 2:06-CV-02573-JAM-KJM, 2009 WL 1514435 (E.D. Cal. May 28, 2009) .......... 16

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 15

*Savett v. Whirlpool*,
No. 12 CV 310, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) .......... 14

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) .......... 13

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .......... 16

*Stewart v. Gainesville Glass Co.*,
212 S.E.2d 377 (Ga. 1975)....................14

*Stiller v. Costco Wholesale Corp.*,
298 F.R.D. 611 (S.D. Cal. 2014)....................18

*Stone v. Advance Am.*,
278 F.R.D. 562 (S.D. Cal. 2011)....................10

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012)....................18

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541, 2550 (2011)....................1

*Webb v. Carter's Inc.*,
272 F.R.D. 489 (C.D. Cal. 2011)....................9, 16

*Weinberg v. Sun Co.*,
777 A.2d 442 (Pa. 2001)....................14

*Weinstat v. Dentsply Intl'l*,
180 Cal. App. 4th 1213 (2010)....................12

*Xavier v. Philip Morris USA Inc.*,
787 F. Supp. 2d 1075 (N.D. Cal. 2011)....................9

*Zinser* v. *Accufix Research Inst., Inc.*,
253 F.3d 1180( 9th Cir. 2001)....................15

**Rules**

42 U.S.C. § 6294a(a)....................3

42 U.S.C. § 6295(b)....................3

42 U.S.C. § 6297(g)....................3

## INTRODUCTION

Plaintiffs allege that the KitchenAid® KSRS25RV** ("KSRS") and KSRG25FV** ("KSRG") refrigerators that Whirlpool Corporation ("Whirlpool") manufactured between approximately 2008 and 2011 ("Refrigerators") were "mislabeled" with the federal government's Energy Star logo. Plaintiffs seek to certify a 33-jurisdiction warranty class of all purchasers of "mislabeled" Refrigerators, as well as a California subclass alleging express warranty claims and violations of California's consumer protection statutes.[1] Plaintiffs have failed to carry their burden to prove that each Rule 23 factor has been met, and their motion should be denied.

Plaintiffs claim that their Refrigerators were not Energy Star-compliant when they bought them in 2008, but they have adduced no evidence of that. The Refrigerators were certified as Energy Star-compliant in 2007, and the U.S. Environmental Protection Agency ("EPA") did not disqualify them until more than 3 years later, in September 2011. Plaintiffs' claim, without support, that such disqualifications are "retroactive," but the EPA disagrees. Further, Energy Star compliance can only be measured with respect to new refrigerators, and the Refrigerators went out of production years ago. Thus, Plaintiffs have no evidence that their six-year-old Refrigerators, or those owned by other putative class members, were not compliant when new.

This failure of proof is fatal to all of Plaintiffs' putative class claims. First, without evidence that their Refrigerators were "mislabeled," Plaintiffs have suffered no injury and lack standing to serve as class representatives. Second, because there is no way to determine which Refrigerators sold during the class period were allegedly "mislabeled," the putative classes are unascertainable. Third, without evidence that any Refrigerator was "mislabeled," Plaintiffs cannot show a common injury or even answer the core question "Were the Refrigerators mislabeled?" with common evidence, as required by Rule 23(a)(2) and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). Finally, determining whether any Refrigerator was non-compliant would require individualized inquiries, defeating predominance under Rule 23(b)(3).

[1] Specifically, Plaintiffs assert violations of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 ("CLRA"), and False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL").

Moreover, even if the Court assumed that all KSRG units would have failed Energy Star verification testing for the same reason that led the EPA to disqualify that model in 2011, the evidence shows that KSRG purchasers suffered no cognizable injury because their Refrigerators consumed no additional energy under real-world conditions. That is because the KSRG Refrigerators failed DOE verification testing only on their warmest temperature setting, which the evidence shows Plaintiff Dei Rossi and other KSRG owners never use.

Plaintiffs' claim that California warranty law can apply to their putative 33-jurisdiction warranty class is also wrong. When the differing warranty laws of those states are considered in light of California's choice-of-law rules, it is clear that many different states' laws apply to the non-residents' warranty claims, and questions of law would thus predominate at any class trial.

Plaintiffs' claims also rest on a fundamental misunderstanding of the Energy Star program. The Energy Star logo is merely a short-hand reference for consumers to compare the relative efficiency of comparable products; it is not a "promise" of any particular level of energy use over time. Further, consumers' understandings of what the Energy Star logo means are widely disparate. Proof of Plaintiffs' express warranty and CLRA claims will therefore require highly individualized issues of proof and cannot satisfy Rule 23(b)(3).

Finally, Plaintiffs' purported expert's damages theories do not measure damages that are linked to their theory of liability, as required by *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Instead, they are merely "arbitrary" and "speculative" methods of converting individualized inquiries into common ones that *Comcast* prohibits. *Id.* at 1433.

## <u>STATEMENT OF FACTS</u>

## I. THE ENERGY STAR PROGRAM

### A. Program Background

The EPA created the Energy Star program in 1992 as a voluntary labeling program designed to promote energy-efficient products. (*See* Expert Report of James McMahon, Ph.D.

("McMahon Report") at 7-8, Def.'s Subm. Ex. 1.)[2] Congress codified the program and affirmed its status as "a voluntary program to identify and promote energy-efficient products." 42 U.S.C. § 6294a(a). To qualify for Energy Star, a product's measured energy consumption must exceed the applicable federal minimum efficiency standards by a certain amount when tested under specific laboratory conditions. (*See* McMahon Report at 8-10.)[3] Prior to April 27, 2008, Energy Star refrigerators had to consume at least 15% less energy than allowed by federal minimum standards; after that date, refrigerators had to consume at least 20% less energy. (*Id.*)

**B. Energy Star Is Not A "Promise" of a Refrigerator's Actual Energy Use**

The same DOE tests used to determine the estimated energy use on EnergyGuide labels are used to determine Energy Star compliance. (*See* McMahon Report at 2-3.) But the estimated annual energy use on the EnergyGuide label does not reflect what most users would actually experience.[4] This is because the DOE tests do not simulate typical usage conditions, and actual energy use varies considerably among consumers.[5] Because Energy Star-compliance is determined using the same DOE tests, that logo also is not a promise of actual energy use. (*Id.* at 6-7)[6]

Moreover, all refrigerators, of any make or model, become less energy efficient over time, and do so unpredictably. (*See* Gopalakrishnan Report at 10-14; Fessler Report ¶¶ 67-68; McMahon Report at 22-24; Marais Report ¶ 36-44.) Degradation of the insulation, loss of

[2] "Def.'s Subm." refers to the Declaration of Galen Bellamy Submitting Defendant's Evidence in Opposition to Class Certification, filed contemporaneously herewith.

[3] Pursuant to 42 U.S.C. § 6295(b), the U.S. Department of Energy ("DOE") establishes minimum efficiency standards for refrigerators and also develops the relevant test procedures to evaluate compliance with these standards. (*See* McMahon Report at 2-3.)

[4] Notably, Congress precluded warranty actions premised on EnergyGuide label representations about estimated energy use. *See* 42 U.S.C. § 6297(g). (*See also* McMahon Report at 5-7.)

[5] (*See* Expert Report of Priya Gopalakrishnan, Ph.D. ("Gopalakrishnan Report") at ¶¶ 10-14, Def.'s Subm. Ex. 2; Expert Report of John R. Fessler, Ph.D., P.E. ("Fessler Report") ¶¶ 21, 71-79, Def.'s Subm. Ex. 3; Expert Report of Laurentius Marais, Ph.D. ("Marais Report") at ¶¶ 34-45, Def.'s Subm. Ex 4; Expert Report of Carol Scott, Ph.D. ("Scott Report" at ¶ 28.), Def.'s Subm. Ex. 5; McMahon Report at 3, 5-7, 18-23.)

[6] Indeed, The DOE recently revised its energy testing procedures to make them more representative of real-world use. (*See* Fessler Report ¶¶ 51-55; McMahon Report at 11-13.)

refrigerant, maintenance issues, and component wear are all contributing factors. (*Id.*) That is why Energy Star tests are applied only to <u>new</u> refrigerators. (McMahon Report ¶ 20.)

Thus, Energy Star is only intended to be used by consumers as a short-hand reference to compare the relative energy efficiency of comparable products with and without the logo. (*See* McMahon Report at 2, 9-10.) Energy Star is not and cannot be a "promise" that any particular level of energy performance will be delivered over time under conditions of actual use.

### C. Plaintiffs Had Only A Vague and Inaccurate Understanding of the "Message" the Energy Star Logo Conveys

Plaintiff Dei Rossi understood that Energy Star meant his Refrigerator was "energy-efficient" and that he would save money "in the long run," but he acknowledged that he would have had to check the EnergyGuide label for information about its estimated energy use. (Dei Rossi Dep. 73:11-74:14, 105:14-15, June 10, 2014; Def.'s Subm. Ex. 6.) Plaintiff Linthicum's understanding was that Energy Star meant that his Refrigerator "was the most efficient appliance as possible," although he later acknowledged that he "did not know how to read the label, obviously." (Linthicum Dep. 103:10-12, 128:18-129:5, June 9, 2014; Def.'s Subm. Ex. 7.)

## II. THE KITCHENAID REFRIGERATORS

### A. The Refrigerators Originally Tested Energy Star-Compliant

Whirlpool properly tested the energy consumption of the Refrigerators in its independently-certified testing facilities in 2007. (Decl. of Vincent Anderson ("Anderson Decl.") ¶ 11, Def.'s Subm. Ex. 8; Fessler Report ¶¶ 23-27.) Those tests showed that the KSRS model consumed an average of 575.3 kWh/yr, meaning the tested units were more than 20% more efficient than the federal minimum standard. KSRS were therefore rated at 581 kWh/yr and properly certified as Energy Star. (Anderson Decl. ¶ 11.) The KSRG model consumed an average of 577.73 kWh/yr., meaning the test units were more than 20% more efficient than the federal minimum standard. KSRS were therefore rated at 580 kWh/Yr and certified as Energy Star. (*Id.*) Those results were certified by Canadian Standards Association International, which also certified Whirlpool's testing facilities. (*Id.* ¶¶ 7-8, 12.) Moreover, Whirlpool had no obligation to "retest" the Refrigerators, and there were no design, manufacturing or supplier changes that

should have impacted the Refrigerators' rated energy consumption. (Anderson Decl. ¶ 26; McMahon Report at 15-16.) These facts are not disputed.

**B.** [redacted] (Decl. of Cynthia Soledad ("Soledad Decl.") ¶ 3, Def.'s Evid. Subm. Ex. 9.) [redacted] (*Id.*) [redacted] (*Id.* ¶¶ 4, 6.)

**C. A Handful of Refrigerator Units Tested Non-Compliant Towards the End of Their Respective Production Periods in 2010 and 2011**

**1. The KSRG model failed verification testing for technical reasons, but did not use additional energy under real-world conditions**

KSRG was manufactured between approximately 2008 and July, 2011 and subsequently disqualified from Energy Star on September 13, 2011. (*See* Anderson Decl. ¶¶ 4, 33.) Whirlpool's engineering investigation did not reveal why KSRG failed verification testing or what volume of production may have been impacted. (*Id.* ¶ 27.) However, its investigation did reveal that the disqualification was based on the technical failure of a handful of newer units to satisfy an outdated aspect of the DOE's tests that measures the energy consumed on the "warm-warm," or highest temperature setting. (*Id.* ¶¶ 28-30; Fessler Report ¶¶ 31, 33, 51.) Virtually no consumers use the "warm-warm" setting because it leads to rapid food spoilage. (Anderson Decl. ¶ 31; Decl. of James Todd ("Todd Decl.") ¶¶ 3-7, Def.'s Subm. Ex. 10; Scott Report ¶ 29.) Plaintiff Dei Rossi, like most consumers, testified that he did not recall ever changing the factory pre-set "mid-mid" setting on his KSRG Refrigerator. (*Id.*; Dei Rossi Dep. at 63:15-19. Under real-world conditions, which means temperature settings at the preset "mid-mid" level, the KSRG model consumed an amount of energy consistent with DOE testing requirements for Energy Star at that setting. (Anderson Decl. ¶¶ 29-31; Fessler Report ¶¶ 16, 40-50; Scott Report ¶ 29; Marais Report ¶¶ 28-31.)

### 2. After the KSRS model failed verification testing, Whirlpool voluntarily reimbursed affected consumers

The KSRS was sold between 2008 and September, 2010. (*See* Anderson Decl. ¶ 3.) The KSRS model was disqualified from Energy Star on September 6, 2011. (*Id.* ¶ 33.) Whirlpool's engineering investigation did not determine why KSRS failed verification testing or what volume of production may have been impacted. (*Id.* ¶ 37.) Nevertheless, Whirlpool voluntarily agreed, as a customer satisfaction measure, to compensate consumers for any theoretical additional energy costs they might incur—assuming their units were non-compliant. (*Id.*)

## D. The EPA Has Stated That Disqualification from Energy Star Does Not Automatically Extend to All Units of a Disqualified Model

EPA recognizes that properly-certified Energy Star products, like the Refrigerators, can later fail verification testing for various reasons, including "changes in the supply chain, production malfunction, inconsistent quality with raw materials and components, and product performance designed too close to performance requirements." (McMahon Report at 16-17 & Ex. 4 at 2; Marais Report ¶ 28.) In recognition of this fact, EPA has stated that its decision to disqualify a model does not mean that all units of that model fail to meet Energy Star requirements. (McMahon Report at 16-17; Marais Report ¶ 28.) Even if only a minority of units are noncompliant, the EPA still requires manufacturers to stop labeling products as Energy Star, including products "that may perform fully and consistently in many or even most settings." (McMahon Report at 16-17.)

## E. There Is No Evidence to Show Which Refrigerator Units Were Non-Compliant with Energy Star

The Refrigerators went out of production in September 2010 and July 2011, respectively. As noted above, there is no evidence of why these models failed verification testing or what production volume may have been impacted in the years following their 2007 certification. (Anderson Decl. ¶ 37.) Further, all refrigerators become less efficient over time, which is why the Energy Star verification test procedures are applied to only new refrigerators. (McMahon Report at 20, 22-24.) Further still, because they lose efficiency in an unpredictable fashion, it is not possible to reliably estimate whether any Refrigerator was Energy Star-compliant when it

was new. (*Id.*; Fessler Report ¶¶ 56-70; Marais Report ¶ 36, 44; Gopalakrishnan Report ¶¶ 10-14.)

## ARGUMENT

### I. STANDARDS FOR RULE 23 CERTIFICATION

It is Plaintiffs' burden to "affirmatively demonstrate" their compliance with each Rule 23 prerequisite and do so with "evidentiary proof." *Dukes*, 131 S. Ct. at 2551. District courts "must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Dukes*, 131 S. Ct. at 2551) (alteration in original). This "rigorous analysis" requires a district court to resolve disputed facts relevant to Rule 23's criteria, including conflicting expert testimony, by "judging the persuasiveness of the evidence presented," not just its admissibility. *Id.* at 982.[7]

### II. PLAINTIFFS LACK STANDING

Plaintiffs' proposed classes comprise consumers who purchased Refrigerators "that were mislabeled" as Energy Star.[8] However, there is no evidence that Plaintiffs' Refrigerators were in fact "mislabeled," and so Plaintiffs lack standing to serve as class representatives. Further, Plaintiff Dei Rossi and KSRG owners lack standing for the additional reason that they have not suffered any injury-in-fact, even assuming their Refrigerators were "mislabeled."

The named plaintiff in a class action must have standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).[9] As with other elements of class certification, it is Plaintiffs' burden to establish standing. *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 295 (C.D. Cal. 2011). To do so, "'named plaintiffs who represent a class must allege <u>and show</u> that they personally have been

---

[7]The Ninth Circuit has not decided what burden of proof applies to Rule 23, but district courts within this Circuit have adopted the preponderance of the evidence standard, *see, e.g.*, *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *3 (N.D. Cal. June 13, 2014), as have several other circuits, *see e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012), *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320-22 (3d Cir. 2009).

[8] (Pls.' Mem. of P. & A. in Supp. of Mot. for Class Certification ("Pls.' Mem.") at 1.)

[9] To demonstrate standing, Plaintiffs must show that they suffered an injury in fact that is "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

injured, not that injury has been suffered by other, unidentified members of the class . . . which they purport to represent.'" *Jones*, 2014 WL 2702726, at *3 (emphasis added) (quoting *Lewis*, 518 U.S. at 357).[10]

Here, there is no evidence that Plaintiffs bought a "mislabeled" Refrigerator. Plaintiffs base their mislabeling claims on the EPA's decision to disqualify the KSRS and KSRG models from Energy Star. (Pls.' Mem. at 6.) Critically, Plaintiffs do not identify any evidence that the Refrigerators were improperly certified in 2007, nor do they claim to know why the Refrigerator failed verification testing or what volume of production may have been impacted. Instead, Plaintiffs argument appears to be that the EPA's September 2011 disqualification extends retroactively to the earliest-built machines, and therefore includes their and all absent class members' Refrigerators. (*Id.*) The Plaintiffs' entire motion turns on that argument, and it is incorrect for at least four reasons.

First, both models were properly tested and certified as Energy Star-compliant. (*See* Statement of Facts ("SOF") § II.A.) Second, Whirlpool could not determine why or when the Refrigerators drifted out of compliance, and the EPA has recently published guidance clarifying that disqualification does not mean that all, or even most, units of a given model were not compliant. (*Id.* § II.B, C.) Third, under applicable federal testing standards, Energy Star compliance can only be determined when refrigerators are new, yet production of these models ceased years ago. (*Id.* § II.B, D.) Fourth, the energy efficiency of all refrigerators deteriorates over time, and does so in an unpredictable manner, such that it is impossible now to determine whether any Refrigerator was Energy Star compliant when sold. (*Id.* § II.D.)

Thus, the EPA's September 2011 disqualification of the Refrigerators does not establish that Plaintiffs or any class member bought a "mislabeled" Refrigerator. Indeed, given the qualifying certification results in 2007, it is in fact more likely than not that Plaintiffs' own Refrigerators purchased in 2008, as well as those of the majority of the putative class members,

---

[10] Courts should address standing before class certification. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

were Energy Star-compliant. (*See* Fessler Report ¶¶ 23-27, 58-63.) Thus, Plaintiffs fail to show that they or any absent class member have suffered any injury at all, and they lack standing to bring their "mislabeling" claims individually, or as class representatives. *See Lewis*, 518 U.S. at 357.

Furthermore, Plaintiff Dei Rossi and other KRSG owners lack standing for the additional reason that they suffered no injury in fact, <u>even assuming</u> that they purchased Refrigerators that would not have met Energy Star requirements when new. That is because the KSRG was disqualified for mere technical non-compliance. (*See* SOF § II.B.1.) KSRG owners who used their Refrigerator at the factory preset "mid-mid" temperature received exactly what they bargained for—a refrigerator that consumed energy consistent with DOE testing requirements for Energy Star at that setting.[11] Thus, because Plaintiff Dei Rossi and the putative class members who purchased KSRG Refrigerators received what they bargained for, they have not suffered any injury. *See, e.g., Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011).[12]

## III. PLAINTIFFS' PROPOSED CLASSES ARE UNASCERTAINABLE

Plaintiffs' proposed classes must be sufficiently definite so the Court can ascertain membership. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567-68 (N.D. Cal. 2009). Certification should be denied when "ascertaining class membership would require unmanageable individualized inquiry." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).

Here, it is impossible to determine whether any Refrigerator was Energy Star-compliant when sold (and thus, whether it was "mislabeled"). (*See* SOF § II.D.)[13] However, even if the Court assumes that Plaintiffs could make that showing, proof of Energy Star-compliance would,

---

[11] *C.f. Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 149 (E.D.N.Y. 2012) ("[I]t appears that the majority of the putative class members received exactly what they paid to receive and, thus, cannot now claim injury.").

[12] Further, even assuming that some putative class members set their Refrigerators to the "warm-warm" temperature setting, having to make that individualized determination is itself a reason to deny class certification. *See, e.g., O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWx), 2011 WL 4352458, at *10-11 (C.D. Cal. Sept. 19, 2011) (denying motion for class certification because standing determination raised individualized issues).

[13] Plaintiffs' lone expert, Mr. Weir, admitted that owners of Energy Star-compliant Refrigerators should not be included in the class. (Weir Dep. 214:8-215:2, Aug. 20, 2014, Def.'s Subm. Ex. 11.)

at a minimum, require laboratory testing of each Refrigerator. Because determining class membership would require such detailed offers of proof by absent class members—if such proof is even possible—the class definition is fatally unascertainable. *See, e.g.*, *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) ("[T]he need for such individualized fact-finding makes [a] district court's class definition unsatisfactory.").

## IV. PLAINTIFFS CANNOT SATISFY RULE 23(a)(2)

Rule 23(a)(2) requires a common question that is "capable of classwide resolution," meaning "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that a class action proceeding is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Id.* at 2551 (citations and internal quotation marks omitted). "[C]ourts have been unwilling to find commonality where the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff." *Stone v. Advance Am.*, 278 F.R.D. 562, 569 (S.D. Cal. 2011) (citation omitted).

Here, Plaintiffs' supposedly common questions include "whether the Refrigerators met the standards of energy efficiency established by the Energy Star program," "whether the Energy Star mark [was] material to class members' decision to purchase the Refrigerators," and "whether class members were damaged." (Pls.' Mem. at 12.)[14] Those questions do not involve a common injury and are not "capable of classwide resolution." The answers will vary widely depending on whether any Refrigerator met the Energy Star standards when new (*see* SOF § II.D), whether the Energy Star mark was material to a given class member's buying decision (*id.* at § I.C; Argument § IV.B, *infra*), and whether KSRG consumers used their Refrigerators at factory settings (and thus whether they were damaged) (SOF at § II.B.1). Thus, the "truth or falsity" of Plaintiffs' common questions is not "capable of classwide resolution," *Dukes*, 131 S.

[14] Plaintiffs also contend that whether the Refrigerators were labeled as Energy Star is also a common question. (*Id.*) However, resolution of that undisputed fact plainly would not "resolve an issue that is central to the validity of" any of their claims. *Dukes*, 131 S. Ct. at 2551.

Ct. at 2551, precluding a finding of commonality. *See*, *e.g.*, *Pagan*, 287 F.R.D. at 149 (denying certification because Plaintiffs had not shown a common injury that satisfied Rule 23(a)(2)).[15]

## V. PLAINTIFFS CANNOT SATISFY RULE 23(b)(3)

To satisfy Rule 23(b)(3)'s "far more demanding" predominance requirement, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997), Plaintiffs must show that any common issues "predominate over any questions affecting only individual members" Fed. R. Civ. P. 23(b)(3). Such issues must "present a significant aspect of the case" that can be resolved "for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Common issues do not predominate "[i]f, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).

### A. Plaintiffs' Express Warranty Claim Will Involve Highly Individualized Questions of Fact and Law That Will Predominate at Trial

Plaintiffs' warranty claims are not suitable for class treatment because individual questions of fact will predominate as to whether any Refrigerator was "mislabeled," reliance and damages. In addition, Plaintiffs did not meet their burden under *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), of demonstrating that California has sufficient contacts with the claims of absent class members to justify applying California's warranty law to residents in 32 states and the District of Columbia. Thus, individual questions of law will predominate.

#### 1. There is no common evidence of reliance, nor that Energy Star formed the basis of the bargain

Under California law, an express warranty claim requires plaintiffs to prove "'the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty

---

[15] The mislabeling cases Plaintiffs cite (Pls.' Mem. at 12 n.14) are distinguishable because they involved statements that were either true or false. *See, e.g.*, *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("[T]hese predominant questions are binary—advertisements were either misleading or not, and Bayer's prostate health claim is either true or false."). Here, however, the EPA's decision to disqualify the Refrigerators from the Energy Star program in 2011 does not mean that all Refrigerators were not Energy Star compliant when new. (*See* SOF § II & Argument § II, *nfra*.) Thus, whether the Energy Star "representation" was "false" is not binary and requires individual assessment of whether a Refrigerator was compliant when new.

which proximately causes plaintiff injury.'" (Order at 5, ECF No. 81 (quoting *Blennis v. Hewlett-Packard Co.*, C 07-00333 JF, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008)). Plaintiffs must prove that the "promise or description formed part of the basis of the bargain." *Id.* Plaintiffs argue that such reliance can be presumed across the entire class, but fail to cite any controlling authority that supports their position.[16] "[I]n the absence of privity, California law requires a showing that a plaintiff relied on an alleged omission or misrepresentation." *Keegan*, 284 F.R.D. at 546. Plaintiffs' failure to demonstrate "that the reasonable consumer standard applies to their California express warranty claim" is fatal to their argument that there is common evidence that class members relied upon the Energy Star logo. *In re ConAgra*, 2014 WL 4104405, at *26. Thus, individual questions of reliance would predominate in any trial of Plaintiffs' California warranty claims, and Rule 23(b)(3) is not satisfied.

**2. There is no common evidence of breach**

Even assuming the existence of an Energy Star "warranty," Plaintiffs do not, and cannot, put forth common evidence that any such warranty was breached. Breach of warranty claims are "not suitable for class treatment [where] it depends on the particular circumstances of individual class members. . . . When the court must determine the merits of an individual claim to determine who is a member of the class, then class treatment is not appropriate." *Castro Valley Union 76, Inc. v. Vapor Sys. Techns, Inc.*, No. C 11-0299 PJH, 2012 WL 5199458, at *14 (N.D. Cal. Oct.

---

[16] Plaintiffs cite *Weinstat v. Dentsply International*, 180 Cal. App. 4th 1213, 1227 (2010), for the proposition that reliance can be presumed (Pls.' Mem. at 13), but even if that case is an accurate statement of California law, it is limited to situations in which the consumers are in privity with the manufacturer, which is not the case here. *See In re ConAgra Foods, Inc.*, No. CV 11-05379 MMM (AGRx), _F. Supp. 2d_, 2014 WL 4104405, at *26 & n.114 (C.D. Cal. Aug. 1, 2014) (distinguishing *Weinstat*). The better reasoned view, recognized in the Northern, Central, and Eastern Districts of California, is that reliance cannot be presumed classwide in the absence of privity. *Id.*; *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 546 (C.D. Cal. 2012); *Coleman v. Boston Scientific Corp.*, No. 1:10-cv-01968-OWW-SKO, 2011 WL 3813173, at *5 (E.D. Cal. Aug. 29, 2011). In addition, even assuming *Weinstat* were applicable, class certification would be inappropriate here, because (1) the presumption is rebuttable, and (2) the representation underlying the warranty must "clearly go to the essence, or the basic assumption, of the bargain," 180 Cal. App. 4th at 1229 . As explained *infra* in Section IV.B., there is evidence that the Energy Star logo was immaterial to the purchase decisions of many putative class members and so did not go to the "essence" of the bargain. Thus, individual inquiries will be required to resolve the issue of reliance (whether as an element of liability or affirmative defense), and will predominate.

22, 2012). *See also Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1153 (N.D. Cal. 2010) (granting motion to strike class allegations where "[t]he express warranty claims involve elements that are individual to each purported class member"). As argued above, there is no common evidence indicating that any class member purchased a Refrigerator that did not comply with Energy Star standards, nor is there any evidence that Plaintiffs' own Refrigerators were not Energy Star-compliant when sold. (*See* Argument § II, *supra*.) Moreover, there is no evidence that purchasers of the KSRG units experienced "breach" of any "warranty" that could have been implied by the Energy Star logo, since the real world performance of even the disqualified units was consistent with Energy Star requirements. (*Id.*)

**3. Plaintiffs' proposed 33-jurisdiction express warranty class ignores key differences in the warranty laws of the various states**

a. Plaintiffs misapply *Mazza* and California's choice-of-law rules

*Mazza* describes a two-step process for evaluating whether California law should apply to non-resident putative class members. First, "the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Mazza*, 666 F.3d at 589 (citation omitted). If the plaintiffs meet that burden, then "the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims.'" *Id.* at 590 (citation omitted). Here, Plaintiffs have made no attempt to meet their initial burden. (*See* Pls.' Mem. at 1-20.)[17] Because Plaintiffs have not met their initial burden, the burden does not shift to Whirlpool to demonstrate that foreign law should apply. *Mazza,* 666 F.3d at 589-90. California warranty law therefore cannot apply to non-resident putative class members.

Even if the burden shifted, Whirlpool could carry it. California's three-step government interest test begins by asking whether material differences exist between California law and the law of the absent class members' states. *Id.* at 590. Here, Plaintiffs' summary chart of the express

---

[17] Nor could Plaintiffs meet their burden. Whirlpool is a Delaware corporation headquartered in Michigan. The Refrigerators were developed and tested for Energy Star in Indiana, and manufactured in Arkansas. (Anderson Decl. ¶¶ 5.) The claims of non-resident class members thus have no connection to California.

warranty law of the 33 jurisdictions (*see* Fisher Decl., Ex. 27) is incomplete and misleading.[18] The express warranty law of the 33 jurisdictions differ materially from California on issues of reliance,[19] privity,[20] what representations may be considered an express warranty,[21] willingness to certify a class that includes consumers who own products that have been performed as expected,[22] and the types of damages recoverable.[23]. (*See* Def.'s App. A. of State Warranty-Law Variations).

The second and third steps of the government interest test require evaluating each jurisdiction's interest in applying its laws. *Mazza* 666 F.3d at 590. Here, as in *Mazza*, each state

---

[18] Plaintiffs' chart is littered with inaccuracies. For example, Plaintiffs argue that Georgia does not require privity, but the case they cite holds the opposite. *See Stewart v. Gainesville Glass Co.*, 212 S.E.2d 377, 377 (Ga. 1975). Plaintiffs state that New Hampshire does not require reliance, but the case cited by Plaintiffs holds that a manufacturer is not liable for breach of warranty if the representation at issue did not actually influence the plaintiffs' purchase decision. *See Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 502 (N.H. 2002). Plaintiffs state that North Dakota abolished the privity requirement, but the case they cite acknowledges the issue is not settled. *See Falcon for Imp. & Trade Co. v. N. Cent. Commodities, Inc.*, Civil No. A2-01-138, 2004 WL 224676, at *2 (D.N.D. Jan. 30, 2004). Thus, Plaintiffs' misleading chart cannot meet their burden to show that the 33 jurisdictions have no material differences in their warranty laws.

[19] *See e.g., Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 645 (10th Cir. 1991) ("[A]s a general rule no evidence of reliance by the buyer is necessary other than the seller's statements were of a kind which naturally would induce the buyer to purchase the goods and that he did purchase the goods") (citation omitted).

[20] While California requires privity for a breach of warranty claim absent reliance, *Coleman*, 2011 WL 3813173, at *5, the 33 jurisdictions vary in whether they require privity and whether the standard is affected by reliance and whether damages are based on economic loss or personal injury. Because the putative class members are not in privity with Whirlpool, do not allege personal injury, and did not all rely on the Energy Star logo, these differences are material.

[21] For example, Plaintiffs seek to include Ohio in the multi-state class, even though a court applying Ohio law has already ruled that the Energy Star logo is not a warranty. *Savett v. Whirlpool*, No. 12 CV 310, 2012 WL 3780451, at *9 (N.D. Ohio Aug. 31, 2012).

[22] *See e.g., Cole v. Gen. Motors Corp.*, 484 F.3d 717, 728-30 (5th Cir. 2007) (summarizing case law on both sides of split). Such case law is relevant because (1) Plaintiffs' claims are based on test results for a few Refrigerators produced years after their own and (2) most class members purchased Refrigerators that operated as efficiently as expected under real-world conditions.

[23] *See, e.g., Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160-64 (Ill. 2002) (rejecting plaintiffs' "market theory" that all putative class members suffered "actual injury" by paying higher price for premium gasoline regardless of whether they heard or were deceived by misleading advertisements); *Weinberg v. Sun Co.*, 777 A.2d 442, 445 (Pa. 2001) (same); *Fink, v. Ricoh Corp.*, 839 A.2d 942, 959-60 (N.J. Super. Ct. Law Div. 2003) (rejecting "price inflation theory" that all camera purchasers sustained loss regardless of whether they read or were deceived by allegedly fraudulent promotional claims.). The price-premium theory is relatively new and most states have not yet ruled on whether it can be used to establish class-wide damages in a mislabeling case, especially under warranty law. *See In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 537-38 (N.D. Cal. 2009) (finding it inappropriate to apply California law to non-resident consumers where a theory "has been permitted to proceed here under California law but it is yet unclear that every state would allow" the same).

in the putative class "has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." *Id.* at 592; *See also Karim v. Hewlett-Packard Co.,* C 12-5240 PJH, 2014 WL 555934, at *8 (N.D. Cal. Feb. 10, 2014) (finding that each state has an interest in seeing its express warranty laws applied.). Foreign states have a strong interest in applying their own laws that outweighs California's attenuated interest in applying its law to residents of other states. *Mazza*, 666 F.3d at 593-94. *Mazza*'s holding that "each class member's consumer protection claim should be governed by the . . . laws of the jurisdiction in which the transaction took place," 666 F.3d at 594, also applies to warranty claims. *See Karim,* 2014 WL 555934, at *8.

b. Plaintiffs' 33-jurisdiction warranty class would require the application of the laws of numerous states

Because of the various warranty laws of the many states at issue, individual issues of law overwhelm common issues and would make any class trial unmanageable. *Zinser* v. *Accufix Research Inst., Inc*., 253 F.3d 1180, 1189( 9th Cir. 2001). Further, courts have recognized that these manageability concerns are particularly pointed in the case of a multi-state warranty class due to variations in states' laws on issues of, *inter alia*, reliance, privity, and the ability to recover for uncertain product "defects."[24] Plaintiffs have not met their burden of "show[ing] convincingly that variations in state law do not defeat predominance and manageability." *Dex-Cool*, 241 F.R.D. at 319.

**B. Because the Materiality of Energy Star Varies Between Reasonable Consumers, Materiality and Reliance Must be Proven Individually for the CLRA Claims**

Consumers will vary in whether the Energy Star logo was material to their purchasing decision. "Unlike the UCL, the CLRA demands that each potential class member have both an actual injury and show that the injury was caused by the challenged practice." *Berger v. Home*

[24] *See Cole*, 484 F.3d at 726; *Payne v. FujiFilm U.S.A., Inc.*, Civil Action No. 07-385 (GEB), 2010 WL 2342388, at *10 (D.N.J. May 28, 2010); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009); *Alligood v. Taurus Int'l Mfg., Inc.*, No. CV 306–003, 2009 WL 8387645, at *4-5 (S.D. Ga. Mar. 4, 2009); *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.* ("*Dex-Cool*"), 241 F.R.D. 305, 319-24 (S.D. Ill. 2007); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 459-61 (D.N.J. 1998).

*Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014). "If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (Cal. Ct. App. 2009)). "However, where individual issues as to materiality predominate, the record will not permit such an inference." *Webb*, 272 F.R.D. at 502. "[I]f the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified.'" *Stearns*, 655 F.3d at 1022-23 (quoting *Vioxx*, 180 Cal. App. 4th at 129).

Both the Ninth Circuit and California courts have denied class certification of CLRA claims where evidence showed reasonable consumers varied in whether the challenged representation was material to their purchase decision. *See, e.g.*, *id.*, 655 F.3d at 1024 (affirming denial of class certification where proposed CLRA class potentially included consumers who were not deceived by the defendant's website but had "myriad reasons" for signing up for an entertainment service they ultimately did not use).[25]

In this case, the evidence shows the materiality of the Energy Star logo varied from consumer to consumer. Consumers vary widely in their awareness and understanding of what the Energy Star logo means. (Scott Decl. ¶¶ 32-34, 36.) Plaintiffs attached an Energy Star publication to their memorandum that summarizes studies showing nearly 40% of Americans did

---

[25] *See also Algarin v. Maybelline, LLC*, Civil No. 12cv3000 AJB (DHB), _F.R.D._, 2014 WL 1883772, at *9-10 (S.D. Cal. May 12, 2014) (plaintiffs "failed to demonstrate that the elements of materiality and reliance are subject to common proof" where evidence showed varying factors influenced purchase decisions for cosmetics); *Webb*, 272 F.R.D. at 503 (finding "individual issues predominate with respect to the CLRA claims" where consumers varied in whether they would have purchased children's clothing if it had contained proposed warning); *Johnson v. Harley-Davidson Motor Co.*, 285 F.R.D. 573, 580-81 (E.D. Cal. 2012) (finding materiality of a motorcycle engine producing excessive heat " would vary from consumer to consumer, such that the reasonable consumer standard cannot be applied"); *Sanchez v. Wal Mart Stores, Inc.*, No. Civ. 2:06-CV-02573-JAM-KJM, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (declining to certify class of stroller purchasers where court found "innumerable variations . . . in the factors that influence consumers' purchasing decisions, and in the manner by which consumers react to product warnings" such that there was "no 'typical' claim or experience . . . that can be extrapolated classwide."); *Fine v. ConAgra Foods, Inc.*, No. CV 10-01848 SJO (CFOx), 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010) (court denied class certification without reaching predominance issue after finding named plaintiff was not a "typical" representative, because the proposed class of popcorn purchasers, "would likely include people with varying rationales behind their purchases . . . like flavor or brand"—not diacetyl).

not recognize the Energy Star logo and nearly 40% of those who purchased an Energy Star product said the logo did not influence their decision.[26] Plaintiffs' testimony establishes that they only had a vague understanding of Energy Star. (*See* SOF Section I.C.) [redacted].[27] Even consumers who recognized the logo likely would not have found the $5.55 of annual electricity savings that Plaintiffs claim (Pls.' Mem. at 7 n.4) material to their decision to buy a $2,849 refrigerator. (Whirlpool's Resp. to Pls.' First Set of Interrogatories; Soledad Decl. ¶¶ 4-6; Scott Decl. ¶¶ 8-9, 33-36.) Because the evidence shows the materiality of Energy Star varied between putative class members, an inference of reliance is inappropriate and individual factual inquiry would by necessary to resolve CRLA claims.

### C. With Respect to the KSRG Model, Individualized Inquiries Regarding the Existence of Any Injury Would Predominate at Trial

Rule 23(b)(3) is not satisfied without showing that injury from the alleged legal violation is "capable of proof at trial through evidence that [is] common to the class rather than individual to its members," *Comcast*, 133 S. Ct. at 1430 (citation omitted); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-53 (D.C. Cir. 2013). Plaintiffs must "show all class members suffered *some* injury." *Id.* at 252. As stated above, KSRG owners are unlikely to have been injured, even assuming that their Refrigerators were "mislabeled." KSRG owners who used their Refrigerators at the factory preset "mid-mid" temperature suffered no injury because their Refrigerators consumed an amount of energy consistent with Energy Star testing requirements.

---

[26] (*See* Fisher Decl. Ex. 3, §2.2 at 12 ("There is growing awareness of the Energy Star label, with more than 60% of the American public recognizing it."); *id*. ("Of those with a recent Energy Star purchase: - more than 60% say that the presence of the Energy Star mark influenced their purchase decision").

[27] (*See* Soledad Decl. ¶¶ 4-6, Def.'s Subm. Ex. 9.) [redacted] (*Id.*)

(*See* SOF § II.C.1 and Argument Section II.C.) Whether any given class member adjusted temperature settings means that individual questions of fact would predominate at trial.[28]

**D. Plaintiffs Have Failed to Demonstrate That Classwide Damages Could Be Proven With Common Evidence At Trial**

Plaintiffs must prove that a classwide method can be used for measuring damages that are linked to the theory of liability. *Comcast*, 133 S. Ct. at 1433.[29] "No damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d at 252-53. Plaintiffs' damages theories, set out in the Declaration of Colin B. Weir ("Weir Decl."), do not satisfy *Comcast* or otherwise show that predominance is met. Courts take a "hard look" at models purporting to show predominance, and a model is insufficient if it "detects injury where none could exist." *Id.* at 252.[30] As set forth below and in the Motion to Strike, Weir's

---

[28] Plaintiffs argue that individualized questions of fact relevant to establishing a consumer-misuse defense are not relevant to the Rule 23 inquiry. (Pls.' Mot. at 7 n.5.) But the analysis in *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012), upon which Plaintiffs solely rely, is readily distinguishable. That case centered on whether individualized questions of consumer misuse of a product, rather than an alleged design defect, caused the defective condition and thus the consumer's alleged injury. Here, however, there is no alleged design defect at issue—this is a pure misrepresentation claim—and the relevant question is not whether Refrigerator owners misused their machines and thus contributed to their own injury, but whether they suffered any injury-in-fact under normal use conditions.

[29] *Accord Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 WL 60097, at *13 (N.D. Cal. Jan. 7, 2014); *Forrand v. Fed. Express Corp.*, No. CV 08-1360 DSF (PJWx), 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013); ; *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 627 (S.D. Cal. 2014) ("*Comcast* makes clear that individualized damages determinations can defeat Rule 23(b)(3)'s predominance requirement."). Plaintiffs' cite cases that establish that individual damage calculations do not automatically defeat class certification, but such calculations are still relevant to the predominance inquiry. *See Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (individual damage calculations did not prevent certification where defendant's database would allow it "to accurately calculate damages . . . feasibly and efficiently"); *Lindell v. Synthes USA*, No. 11-cv-02053-LJO-BAM, 2014 WL 841738, at *15 (E.D. Cal. Mar. 4, 2014) ("class size [of 180] is sufficiently small such that individual damage calculations will not create any manageability problems"). Both cases rely on *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), which found certification appropriate because "computing individual damages will be virtually a mechanical task." *Id*. at 905.

[30] In putative class actions, the same critiques of an expert's proposed damages model under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) are applicable to a court's scrutiny of that model under Rule 23(b)(3). *See In re POM Wonderful LLC Mktg. and Sales Practices Litig.*, No. ML 10–02199 DDP (RZx), 2014 WL 1225184, at *5 & n.7 (C.D. Cal. Mar. 25, 2014). For this reason, all of Whirlpool's arguments in the Motion to Strike the Declaration of Colin B. Weir ("Motion to Strike"), filed contemporaneously herewith, apply with equal force here. Weir's arbitrary and speculative conclusions, his methodological flaws, and his flawed assumptions render his model both insufficient under *Comcast* and unreliable under *Daubert*.

damages theories find "injury where none could exist," *id.*, and are "arbitrary" and "speculative," resting on false assumptions. *Comcast*, 133 S. Ct. at 1433.

### 1. Weir has not, and cannot, conduct a hedonic regression analysis to calculate supposed "price premium" damages in this case

Weir's proposed regression analysis is void of substance; it amounts to an unsupported assertion that he could determine damages in the future, which is not sufficient under *Comcast*. *See In re ConAgra Foods*, 2014 WL 4104405, at *31 (denying motion for class certification because Weir "states that it is possible to determine damages on a classwide basis, [but] Weir has made no attempt to do so[.] This alone suffices to support a finding that plaintiffs have not shown that damages can be calculated on a classwide basis"); (Mot. to Strike at 1-2, 9-10.) Even if Weir develops a regression model, he cannot acquire the necessary data needed to populate such a model.[31] (Mot. to Strike at 11-12.)

Moreover, *Comcast* requires a methodology that measures damages corresponding to Plaintiffs' theory of liability. 133 S. Ct. at 1433. Here, Plaintiffs do not and cannot claim that they were deprived of all of the "value" associated with the Energy Star-status of the Refrigerators. Putative class members were eligible for substantial rebates and tax incentives provided to purchasers of Energy Star appliances, and they also received machines that used significantly less energy than federal standards would allow, even assuming they bought a unit that would not have passed Energy Star testing. (*See* Mot. to Strike at 8-10, 13-14.) Weir's damages model assumes, however, that Plaintiffs received no value in light of the Energy Star disqualification. His model therefore fails to calculate the portion of the alleged price premium that Plaintiffs allegedly were deprived as a result of the alleged "mislabeling." *See In re ConAgra*, 2014 WL 4104405, at *31. As Plaintiffs' do not have a workable damages model, common questions cannot predominate.

---

[31] *See Jones*, 2014 WL 2702726, at *20 (holding that plaintiffs' damages model was insufficient under *Comcast* where plaintiffs' damages expert "has not determined whether the data related to any or all of his proposed control variables exists").

### 2. **Individual damages calculations overwhelm common questions in Weir's so-called "Energy Expense" damages model**

Weir also opines that the putative class is entitled to "energy expense damages," which he purports to calculate in a four-step process. Each step of Weir's analysis is flawed. First, contrary to Weir's assumptions, the EnergyGuide label is not a "guaranty" of a particular level of energy use for any particular length of time. (Mot. to Strike at 1516.) Second, Weir's suggestion that the DOE audit results constitutes the "actual yearly electrical use" for each Refrigerator is demonstrably false. (Mot. to Strike at 16;) Third, Weir uses a national average electricity price, ignoring differences in prices from city-to-city and home-to-home. Fourth, he ignores differences in individual refrigerators' useful life, assuming a 12-year life based on a single survey. (Mot. to Strike at 18.) His decision to arbitrarily ignore material differences in individual class member damages is prohibited by *Comcast*. 133 S. Ct. at 1433.

Further, Weir's "energy expense damages" is not connected to the theory of liability in the case, as *Comcast* requires. These damages have nothing to do with Energy Star; instead he assumes the EnergyGuide label created a "warranty" of actual energy use.[32] Plaintiffs' failure to produce any model capable of reliably calculating damages is fatal to 23(b)(3) certification.

### 3. **Plaintiffs' attempt to recover both "Energy Expense" damages and "Price Premium" damages constitutes impermissible double-counting**

Under Weir's proposal, class members would be refunded their price premium, making it as if they had not bought an Energy Star refrigerator, and they would also be refunded their energy expenses, therefore making it as if they had bought an Energy Star refrigerator. *Comcast* does not allow such self-contradictory damages models. (Mot. to Strike at 19.)[33]

## CONCLUSION

Plaintiffs' motion for class certification should be denied in its entirety, with prejudice.

---

[32] Weir's calculations here are improper under federal law because Congress expressly preempted any claim that the EnergyGuide label warrants a particular level of energy use. 42 U.S.C. § 6297(g).

[33] It is unclear if Plaintiffs claim to be entitled to disgorgement of profits, as Weir mentions that theory only in passing. (Weir Decl. ¶ 53, n.33.) Disgorgement cannot be a proper remedy in this case because Plaintiffs received some benefit from their Refrigerators. *See Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx), 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012).

Dated: September 18, 2014

Respectfully submitted,
Wheeler Trigg O'Donnell LLP

By: *s/ Galen D. Bellamy*
Galen D. Bellamy (*pro hac vice*)
Attorneys for Defendant, Whirlpool Corporation

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on September 18, 2014, I electronically filed the foregoing **Defendant's Opposition to Plaintiffs' Motion for Class Certification** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses listed on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

*s/ Galen D. Bellamy*
Galen D. Bellamy