1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   KYLE DEI ROSSI and MARK              No.  2:12-cv-00125-TLN-CKD
     LINTHICUM, on behalf of themselves and
12   those similarly situated,

13              Plaintiff,                 **ORDER GRANTING IN PART AND
                                           DENYING IN PART PLAINTIFFS'
14        v.                               MOTION FOR CLASS CERTIFICATION**

15   WHIRLPOOL CORPORATION,

16              Defendant.

17

18        This matter is before the Court pursuant to Plaintiffs Kyle Dei Rossi and Mark

19   Linthicum's ("Plaintiffs") motion seeking class certification.  (ECF No. 105.)  Defendant

20   Whirlpool ("Defendant") opposes Plaintiffs' motion.  (ECF No. 111.)   Plaintiffs have filed a

21   reply.  (ECF No. 124.)  The Court has carefully considered the arguments raised by both parties

22   and for the reasons stated below hereby GRANTS IN PART and DENIES IN PART Plaintiffs'

23   motion.[1]

---

24   [1]       Defendant has moved to strike the Declaration of Plaintiffs' damages expert, Colin B. Weir ("Weir").  (Mot.
     to Strike, ECF No. 113.)   Defendant asserts that Weir does not have adequate credentials to act as an expert in this
25   case and that the damage calculations employed are flawed.  The Court has reviewed Weir's credentials and finds
     that he is qualified as an expert.  As to Defendant's arguments concerning his methodology, the Ninth Circuit has
26   held that at the class certification stage plaintiffs need only propose a valid method for calculating class wide
     damages, not an actual calculation of damages.  *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *In
27   re Cathode Ray Tube Antitrust Litig.*, No. 1917, 2013 WL 5429718, at *22 (N.D. Cal. June 20, 2013) ("Comcast did
     not articulate any requirement that a damage calculation be performed at the class certification stage."); *Brown v.
28   Hain Celestial Group*, No. C 11–03082 LB, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014) ("Nor does it

1

# I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have brought this claim on behalf of themselves and other similarly situated individuals.  (Second Amended Complaint ("SAC"), ECF No. 71 at ¶ 2.)  Plaintiffs purchased refrigerators manufactured by Defendant that bear the Energy Star logo.[2]  The model numbers for the purchased refrigerators were subsequently determined not to comply with Energy Star requirements and were disqualified from the Energy Star program.  Plaintiffs' SAC alleged six causes of action, including: (i) violation of the Magnuson-Moss Warranty Act ("MMWA"); (ii) breach of express warranty; (iii) breach of implied warranty of merchantability; (iv) violation of the Consumers Legal Remedies Act; (v) violations of the Unfair Competition Law; and (vi) violation of the False Advertising Law, Business & Professions Code.  (ECF No. 71 at ¶¶ 115−156.)  On May 21, 2013, Defendant moved to dismiss Plaintiffs' SAC in its entirety.  (ECF No. 72.)  The Court granted in part and denied in part Defendant's motion and dismissed

prevent certification that Hamilton has not actually performed the calculations that his damages models dictate …. The point for Rule 23 purposes is to determine whether there is an acceptable class-wide approach, not to actually calculate under that approach before liability is established.").  The Court has reviewed Weir's proposed methods and finds that they are sufficient at this juncture of the litigation.  Moreover, the Court is not impressed by Defendant's repeated attempt to argue the merits of this case at the class certification stage.  *See In re TFT-LCD (Flat Panel) Antitrust Litig*., 267 F.R.D. 583, 604 (N.D. Cal. 2010) ("Plaintiffs are not required to prove the merits of their case-in-chief at the class certification stage.") (internal citations omitted).  Defendant's continuous assertions that Plaintiffs have not proven that the refrigerator models at issue do not adhere to the energy star guidelines are not helpful to this Court in determining whether Plaintiffs' proposed damages expert has presented an adequate model for computing damages.  As such, Defendant's Motion to Strike (ECF No. 117) is DENIED.

Defendant also moved to strike the rebuttal expert report of Dr. Elizabeth Howlett ("Dr. Howlett").  (ECF No. 138.)  Defendant asserts that Dr. Howlett's report should be stricken because: (1) Plaintiffs disclosed Dr. Howlett, in support of their motion for class certification and purportedly "in rebuttal to the Expert Report of Dr. Carol Scott", four months after the disclosure deadline of July 24, 2014; (2) the Rebuttal Report is untimely under Federal Rule of Civil Procedure 26(a)(2)(D)(ii) because it contains no true "rebuttal" opinions; and (3) the Rebuttal Report is inadmissible under Federal Rule of Evidence 702 because Dr. Howlett merely recites evidence without applying any scientific, technical, or other specialized knowledge and will not "help the trier of fact understand the evidence."  (ECF No. 138 at 3.)  The first reason proffered by Defendants is unavailing.  Expert rebuttal witnesses are not required to be disclosed prior to Defendant filing its opposition.  To decide otherwise, would require a Plaintiff to look into the future and anticipate Defendant's arguments and appeal those arguments.  The Court declines to take such a stance.  As for Defendant's second contention—that Dr. Howlett's report is not a true rebuttal opinion—the Court disagrees.  Without going into detail about both experts' sealed reports, the Court notes that Dr. Howlett discusses matters addressed by Dr. Scott's report and specifically points to assertions within Dr. Scott's report when rebutting Dr. Scott's opinions.  Finally, the Court also disagrees with Defendant's contention that Dr. Howlett merely recites evidence without applying any scientific, technical, or other specialized knowledge and will not "help the trier of fact understand the evidence."  (ECF No. 138 at 3.)  Dr. Howlett discusses her specialized knowledge concerning public brand recognition and public understanding of the energy star brand.  As such, Defendant's motion to strike the rebuttal expert report of Dr. Elizabeth Howlett (ECF No. 138) is DENIED.

[2]     The Energy Star program is a government-backed program intended to identify and promote energy efficient products. The program is jointly administered by the Department of Energy ("DOE") and the Environmental Protection Agency ("EPA").  *See* http://www.energystar.gov/ (last visited Mar. 3, 2015).

1    Plaintiffs' MMWA claim as well as Plaintiffs' breach of implied warranty of merchantability

2    claim.  (Order, ECF No. 81.)  Thus, Plaintiffs' claims for the following violations remained:

3    Consumers Legal Remedies Act; Unfair Competition Law; False Advertising Law, Business &

4    Professions Code; and breach of express warranty.

5            Plaintiffs are seeking class certification of a 32-state and the District of Columbia ("D.C.")

6    class defined as all persons who purchased KitchenAid KSRG25FV** and KSRS25RV** model

7    refrigerators that were mislabeled as Energy Star qualified (collectively "Refrigerators").  (ECF

8    No. 105.)  Plaintiffs also seek certification of a subclass defined as all members of the class who

9    purchased the Refrigerators in California.  (ECF No. 105.)  Defendant opposes Plaintiffs' motion.

10   (ECF No. 111.)

11           **II.    LEGAL STANDARD**

12           Before certifying a class, the trial court must conduct a "rigorous analysis" to determine

13   whether the party seeking certification has met the prerequisites of Rule 23.  *Wal–Mart Stores,*

14   *Inc. v. Dukes*, __U.S.__, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Telephone Co. of Sw. v.*

15   *Falcon*, 457 U.S. 147, 161 (1982)).  "While the trial court has broad discretion to certify a class,

16   its discretion must be exercised within the framework of Rule 23."  *Zinser v. Accufix Research*

17   *Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001) (citing *Doninger v.*

18   *Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977)); *see also Wang v. Chinese Daily News,*

19   *Inc.*, 737 F.3d 538, 542–43 (9th Cir. 2013).  A court may certify a class if a plaintiff demonstrates

20   that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met and that at

21   least one of the requirements of Rule 23(b) have been met.  Fed. R. Civ. P. 23; *see also Wal–Mart*

22   *Stores, Inc. v. Dukes*, 131 S.Ct. at 2548–49.

23           Rule 23(a) states that one or more members of a class may sue or be sued as representative

24   parties on behalf of all only if:

25           (1) the class is so numerous that joinder of all members is
             impracticable [the "numerosity" requirement]; (2) there are
26           questions of law or fact common to the class [the "commonality"
             requirement]; (3) the claims or defenses of representative parties are
27           typical of the claims or defenses of the class [the "typicality"
             requirement]; and (4) the representative parties will fairly and
28           adequately protect the interests of the class [the "adequacy of

                                                    3

representation" requirement].

In addition, Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

**III.   ANALYSIS**

In Defendant's opposition, Defendant argues that aside from not meeting Rule 23's requirements, Plaintiffs also lack standing. (ECF No. 111 at 14.) Thus, before addressing Rule 23's requirements, the Court addresses Defendant's standing argument.

A.   <u>Standing</u>

Defendant asserts that named plaintiffs who represent a class must allege and show that they personally have been injured, and that in this case "there is no evidence that Plaintiffs bought a 'mislabeled' Refrigerator." (ECF No. 111 at 14–15.) The Court finds Defendant's statements disingenuous. Plaintiffs have provided proof that they purchased the Refrigerators and that the Refrigerators were labeled with the energy star logo. As admitted by Defendant, the Department of Energy ("DOE") tested the exact refrigerator models Plaintiffs purchased and found they did not comply with the Energy Star requirements. (*See* Fisher Decl., Exs. 22–23.) There is no evidence that the Refrigerators purchased by Plaintiffs vary from those tested by DOE. Defendant also offers a theory that the Refrigerators were compliant with the Energy Star program at the time that they were sold, but somehow fell out of compliance. However, Defendant fails to present any evidence in support of this assertion. Thus, the Court finds these arguments unavailing on the issue of Plaintiffs' standing. The Court also finds Defendant's argument—that the proposed classes are unascertainable—flawed. Defendant contends that "it is impossible to determine whether any Refrigerator was Energy Star-compliant when sold (and thus, whether it was 'mislabeled')." (ECF No. 111 at 16.) The proposed class members all purchased the same models of refrigerators that were built to the same specifications. To accept Defendant's assertion that this Court would need to test each refrigerator would be unreasonable

4

1  and would support a finding that class certification is not appropriate for litigation involving

2  consumer products.  The Court declines Defendant's invitation to do so.

3       Defendant also argues that "Plaintiff Dei Rossi and other KRSG owners lack standing for

4  the additional reason that they suffered no injury in fact, even assuming that they purchased

5  Refrigerators that would not have met Energy Star requirements when new."  (ECF No. 111 at

6  16.)  Defendants assert that this is because the KSRG was disqualified for mere technical non-

7  compliance and that KSRG owners who used their Refrigerator at the factory preset "mid-mid"

8  temperature received exactly what they bargained for—a refrigerator that consumed energy

9  consistent with DOE testing requirements for Energy Star at that setting.  (ECF No. 111 at 16.)

10  The Court is not convinced that a consumer who purchased a product, at a premium, based on

11  advertised specifications has not suffered an economic injury when that product fails to meet the

12  advertised specifications.  *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal.

13  2012) ("Overpaying for goods or purchasing goods a person otherwise would not have purchased

14  based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and

15  causation requirements for Article III standing.")  Defendant's argument is relevant to the amount

16  of damages suffered and thus is welcome at trial, but is irrelevant for the purpose it is offered for,

17  i.e. determining class certification.  The Court finds that Plaintiffs have alleged sufficient facts to

18  show they have personally been injured.  Having determined that the Plaintiffs do have standing,

19  the Court now turns to the Rule 23 factors.

20  B.    Rule 23(a)

21       *1.    Numerosity*

22       To meet the numerosity requirement of Rule 23(a), a class must be "so numerous that

23  joinder of all members is impracticable."  Rule 23(a)(1); *see also Consolidated Rail Corp. v.*

24  *Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40

25  members"); *Andrews Farms v. Calcot, Ltd.*, No. CV–F–07–0464 LJO DLB, 2009 WL 1211374,

26  at *3 (E.D. Cal. May 1, 2009); *see also* William B. Rubenstein, et al., Newberg on Class Actions,

27  § 3.12 at 198 (5th ed. 2011).   Plaintiffs have put forth evidence that thousands of people

28  purchased the two Refrigerators at issue.  (*See* ECF No. 105 at 17–18; Fisher Ex. 29

5

1    ("Approximately 12,000…refrigerators were produced" that were "not Energy Star qualified."),

2    Ex. 26 ("Right now, looks like the population is around 12K."), Ex. 24 ("2,000 units of

3    KSRG25[F]VMF were manufactured annually…"), Exh. 30 (showing that thousands of

4    KSRS25RV** models were produced).  Plaintiffs' proposed class dwarfs the minimally accepted

5    number for class numerosity and would make joinder of all the class members impracticable.

6    Therefore, the proposed classes meet the numerosity requirement.

7                       *2.    Commonality*

8        "Commonality requires the plaintiff to demonstrate that the class members have suffered

9    the same injury.  This does not mean merely that they have all suffered a violation of the same

10   provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The "claims

11   must depend on a common contention" that is "capable of classwide resolution – which means

12   that determination of its truth or falsity will resolve an issue that is central to the validity of each

13   one of the claims in one stroke."  *Id.*  All questions of fact and law need not be common to satisfy

14   the rule.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009).  Generally, courts have

15   approached the issue loosely, finding common questions of law to be at a high level of generality.

16   *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (noting that the commonality

17   requirement under Rule 23(a) is less stringent than the predominance requirement under Rule

18   23(b)(3)).

19       Plaintiffs assert that common questions of fact predominate this case and thus certification

20   under Rule 23(a)(2) is appropriate because Plaintiffs' and the class members' claims each arise

21   from the same misrepresentations made by Defendant that the products were Energy Star

22   certified.  (ECF No. 105 at 18.)  Specifically, Plaintiffs assert that the determination of the

23   following common questions of fact will resolve issues central to the validity of Plaintiffs' and

24   the class members' claims in a single stroke: "(1) whether Defendant labeled and advertised the

25   Refrigerators as Energy Star qualified; (2) whether the Refrigerators met the standards of energy

26   efficiency established by the Energy Star program; (3) whether the Energy Star mark and

27   advertising were material to class members' decision to purchase the Refrigerators; and (4)

28   whether class members were damaged by purchasing Refrigerators that were not Energy Star

                                        6

1    qualified." (ECF No. 105 at 18.)  In opposition, Defendant contends that different Refrigerators

2    may perform differently and thus Plaintiffs cannot demonstrate that the class members have

3    suffered the same injury.  (ECF No. 111 at 17.)  Defendant also asserts that there is not

4    commonality in the class because Plaintiffs cannot show "whether the Energy Star mark was

5    material to a given class member's buying decision."  (ECF No. 111 at 17.)

6            The Court is not convinced by Defendant's arguments.  First, if Defendant shows that the

7    Refrigerators (that were all made with the same parts and specifications) perform differently and

8    that such performance affects their energy efficiency, the Court would consider such in assessing

9    damages.  However, at this point, Defendants have not presented this Court with any evidence

10   that would lead this Court to believe that the DOE's finding—that the Refrigerators used more

11   energy than they would have had they met the Energy Star specifications—was incorrect or based

12   on a small portion of Refrigerators that are not a fair representation of those in the marketplace.

13   Second, as to Defendant's argument concerning whether the Energy Star mark was material to a

14   given class member's buying decision, Plaintiffs have presented sufficient evidence, including

15   consumer surveys and Defendant's own public statements, demonstrating that the Energy Star

16   mark is material.

17           The Court finds that the same questions of fact predominate the proposed class's claims,

18   i.e. (1) whether Defendant labeled and advertised the Refrigerators as Energy Star qualified; (2)

19   whether the Refrigerators met the standards of energy efficiency established by the Energy Star

20   program; (3) whether the Energy Star mark and advertising were material to class members'

21   decision to purchase the Refrigerators; and (4) whether class members were damaged by

22   purchasing Refrigerators that were not Energy Star qualified.[3]  Thus, the proposed classes are

23   sufficiently cohesive to warrant adjudication by class representation.

24           *3.     Typicality*

25           "The [Rule 23(a)(3)] test of typicality is whether other members have the same or similar

26   injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

27

28   [3]     *See infra* Section (III)(C)(1) for a discussion concerning common questions of law that predominate
        Plaintiffs' proposed class.

1   whether other class members have been injured by the same course of conduct." *Hanon v.*

2   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Under the rule's permissive standards,

3   representative claims are "typical" if they are reasonably co-extensive with those of absent class

4   members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

5   1020 (9th Cir. 1998).

6       Plaintiffs contend that typicality is met because their claims arise from the same material

7   facts—the sale of Refrigerators that were mislabeled as Energy Star qualified—and are identical

8   to those of the class members. (ECF No. 105 at 22.)  Defendant does not specifically address

9   typicality in its briefing.  However, the Court notes that the arguments Defendant presented

10  concerning commonality under Rule 23(a)(2) would equally apply to Rule 23(a)(3), mainly

11  Defendant's argument that some of the proposed class members may not have suffered any injury

12  if their Refrigerator did not contain certain technical flaws and was set to certain settings.  Again,

13  the Court is not swayed by this reasoning.  *See Hanlon*, 150 F.3d at 1020 (finding typicality in an

14  action against minivan manufacturer by minivan owners alleging defective rear liftgate latches,

15  where representative parties comprised persons from every state, representing all models of

16  manufacturer's minivans and included minivan owners whose latches remained operable).  Here,

17  the class definition includes consumers who purchased the same models, who were exposed to

18  identical labels, and who have the same interest in determining whether they were injured as a

19  result.  Because Plaintiffs' and the class members' claims arose from the same course of events,

20  share the same legal theory, and are "reasonably co-extensive," the typicality requirement is

21  satisfied.  *See id.*

22          *4.      Adequacy of Representation*

23      "The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and

24  adequately protect the interests of the class.'"  *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P.

25  23(a)(4)).  Constitutional due process concerns require that absent class members be afforded

26  adequate representation before entry of a judgment which binds them.  *Id.* (citing *Hansberry v.*

27  *Lee*, 311 U.S. 32, 42–43 (1940).  The resolution of the following two questions determines legal

28  adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

8

1   class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously

2   on behalf of the class? *See id.*; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th

3   Cir. 1978).

4         The Court finds that the resolution of both questions establishes that the representative

5   parties will fairly and adequately protect the interests of the class.  First, Plaintiffs have the same

6   interests as the class members who also purchased one of the Refrigerators and Plaintiffs have

7   sworn to fairly and adequately represent the interests of the classes.  Second, Defendant does not

8   challenge the competence of class counsel, and the record dispels any cause for concern.

9   Plaintiffs are represented in this case by prominent law firms with extensive experience in

10  complex and class action litigation.  In fact, Judge John A. Mendez already appointed the Bursor

11  and Faruqi firms as co-lead interim class counsel in this case.  (*See* Order, ECF No. 26.)  Since

12  that appointment they have continued to vigorously prosecute this action.  These facts

13  demonstrate that co-lead interim class counsel will fairly and adequately protect the interests of

14  the class.

15        Based on the foregoing, the Court finds that Plaintiffs have met their burden under Rule

16  23(a).  Thus, the Court turns to Rule 23(b).

17        C.    Rule 23(b)

18        Rule 23(b) provides that a class action may be maintained if Rule 23(a) is satisfied and if:

19
20        the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
21

22        (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
23

24        (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

25        (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
26

27        (D) the likely difficulties in managing a class action.

28  While Rule 23 states that these factors are pertinent to the assessment of predominance and

1   superiority, most courts analyze the Rule 23(b)(3)(A) - (D) factors solely in determining whether

2   a class suit will be a superior method of litigation.  *See Zinser v. Accufix Research Inst., Inc.*, 253

3   F.3d 1180, 1191 (9th Cir.) *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

4               *1.      Predominance*

5        "Implicit in the satisfaction of the predominance test is the notion that the adjudication of

6   common issues will help achieve judicial economy."  *Zinser*, 253 F.3d at 1189.  Class

7   certification under Rule 23(b)(3) is proper when common questions constitute a significant

8   portion of the case.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1022.  For establishing

9   predominance, the applicable inquiry is "whether proposed classes are sufficiently cohesive to

10  warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623

11  (1997).  "Predominance is a test readily met in certain cases alleging consumer or securities fraud

12  or violations of the antitrust laws." *Id.* at 625.

13       As previously discussed in this Court's examination of commonality, the same questions

14  of fact are at issue in the proposed class's claims.[4]  Thus, the Court first discusses whether

15  Plaintiff's proposed subclass meets the predominance requirement.  The Court then turns to

16  Plaintiffs' proposed class's breach of express warranty claims to determine whether common

17  issues of fact and law predominate in light of differences in the laws governing 33 jurisdictions.

18               a.      Plaintiffs' California Unfair Competition Law ("UCL"), False

19                       Advertising Law ("FAL"), and Consumers Legal Remedies Act

20                       ("CLRA") Claims

21       Plaintiffs assert causes of action under the UCL,[5] FAL, and CLRA on behalf of

22  themselves and the proposed California subclass.  Plaintiffs assert that each of their statutory

23  causes of action lends itself to proof by common inquiry and therefore satisfies the predominance

24  _____

25  [4]       *See supra*, Sec. III(B)(2) (finding that the following issues of fact predominate Plaintiffs' claims: (1)
    whether Defendant labeled and advertised the Refrigerators as Energy Star qualified; (2) whether the Refrigerators

26  met the standards of energy efficiency established by the Energy Star program; (3) whether the Energy Star mark and
    advertising were material to class members' decision to purchase the Refrigerators; and (4) whether class members
    were damaged by purchasing refrigerators that were not Energy Star qualified).

27  [5]       This Court sustained Plaintiffs' claims under the "unfair" and "fraudulent" prongs of the UCL. (*See* ECF
    No. 81.)  Each prong of the UCL is a separate theory of liability that offers an independent basis for relief.  *Rubio v.*

28  *Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010).

                                          10

1   requirement set forth in Fed. R. Civ. P. 23(b)(3).  (Pls' Brief in Supp of Class Cert, ECF No. 105-

2   1 at 13–14.)  Plaintiffs contend that none of these claims require a showing of individualized

3   reliance and that the predominating question is whether Defendant's labels and advertisements

4   bearing the Energy Star mark in connection with the Refrigerators are misleading to a reasonable

5   consumer.  (ECF No. 105-1 at 20.)  In opposition, Defendant asserts that common inquiry does

6   not predominate Plaintiffs' claims because consumers will vary in whether the Energy Star logo

7   was material to their purchasing decision.  (ECF No. 111 at 22.)  Further, Defendant argues that

8   "[u]nlike the UCL, the CLRA demands that each potential class member have both an actual

9   injury and show that the injury was caused by the challenged practice."  (ECF No. 111 at 22

10   (quoting *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014).)  For the

11   following reasons, the Court finds that common factual and legal issues predominate Plaintiffs'

12   California subclass's UCL, FAL, and CLRA claims.

13          Defendant's first argument is that consumers will vary in whether the Energy Star logo

14   was material to their purchasing decision and thus create individual issues of materiality.  (ECF

15   No. 111 at 21–22.)  "California has recognized that an injury exists under the UCL, FAL, and

16   CLRA where a consumer has purchased a product that is marketed with a material

17   misrepresentation, that is, in a manner such that 'members of the public are likely to be

18   deceived.'"  *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011) (quoting

19   *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)); *see also Yumul v. Smart Balance, Inc.*, 733

20   F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) ("California courts have held that reasonable reliance is

21   not an element of claims under the UCL, FAL, and CLRA.").  In determining what constitutes a

22   material misrepresentation, "courts in California routinely find that this inquiry focuses on the

23   Defendants' representations about the product and applies a single, objective 'reasonable

24   consumer' standard"—not, as Defendant urges, a subjective test that inquires into each class

25   members' experience with the product.  *Bruno*, LLC, 280 F.R.D. at 537; *see also Johnson v.

26   General Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011) ("Materiality is established if a

27   reasonable man would attach importance to its existence or nonexistence in determining his

28   choice of action in the transaction in question."); *Delarosa v. Boiron*, 275 F.R.D. 582, 586 (C.D.

1    Cal. 2011) ("a misrepresentation is considered material if a reasonable man would attach

2    importance to its existence or nonexistence in determining his choice of action in the transaction

3    in question"); *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005) (reversing

4    dismissal of UCL, FAL, and CLRA claims in class action).  "[T]he fact that some consumers

5    purchased the [product] for other reasons does not defeat a finding that the product was marketed

6    with a material misrepresentation, which per se establishes an injury." *Bruno*, LLC, 280 F.R.D.

7    at 535 (internal quotations omitted).

8            Plaintiffs have alleged that evidence of the materiality of the Energy Star logo, which

9    Defendant prominently displayed in advertising materials and on the Refrigerators themselves,

10   can be shown by common documents and data, including Defendant's own consumer studies and

11   corporate representative statements.  For purposes of class certification, it is sufficient that the

12   alleged material misrepresentation "was part of a common advertising scheme to which the entire

13   class was exposed." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012). Here,

14   Defendant engaged in a nationwide marketing campaign, displaying the Energy Star logo

15   uniformly in advertising and at the point of purchase on every Refrigerator.  Accordingly, a

16   presumption of reliance as to class members is appropriate in this case.

17           As to Defendant's second argument that Plaintiffs cannot "show all class members

18   suffered some injury," (ECF No. 111 at 24), the Court finds this argument is without merit.  The

19   DOE tested the exact refrigerator models Plaintiffs purchased and found they did not comply with

20   the Energy Star requirements.  (Fisher Exs. 20–23.)  Defendant fails to identify any differences

21   between the Refrigerators that the DOE tested and those purchased by Plaintiffs and the proposed

22   class members.  As such, the Court finds that Plaintiffs California subclass's UCL, FAL, and

23   CLRA claims lend themselves to proof by common inquiry and therefore satisfies the

24   predominance requirement set forth in Fed. R. Civ. P. 23(b)(3).

25                        b.      Plaintiffs' Breach of Express Warranty Claims

26           Plaintiffs seek to certify a class of 33 jurisdictions on their breach of express warranty

27   claim.  "A federal court sitting in diversity must look to the forum state's choice of law rules to

28   determine the controlling substantive law." *Zinser*, 253 F.3d at 1187.  "Under California's choice

1   of law rules, the class action proponent bears the initial burden to show that California has

2   'significant contact or significant aggregation of contacts' to the claims of each class member."

3   *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Wash. Mut.*

4   *Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001). Such a showing is necessary to ensure

5   that application of California law is constitutional." *Mazza*, 666 F.3d at 589-90 (internal citations

6   and quotations omitted).  If the plaintiff makes a showing, the burden is shifted to the defendant

7   to demonstrate "that foreign law, rather than California law, should apply to class claims."  *Wash.*

8   *Mut. Bank, FA*, 24 Cal. 4th at 921.  "California law may only be used on a classwide basis if 'the

9   interests of other states are not found to outweigh California's interest in having its law applied.'"

10  *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank, FA*, 24 Cal. 4th at 921).  California employs

11  the following three step governmental interest test in determining whether other state's interests

12  outweigh California's:

13      First, the court determines whether the relevant law of each of the
14      potentially affected jurisdictions with regard to the particular issue
        in question is the same or different.

15      Second, if there is a difference, the court examines each
16      jurisdiction's interest in the application of its own law under the
        circumstances of the particular case to determine whether a true
17      conflict exists.

18      Third, if the court finds that there is a true conflict, it carefully
        evaluates and compares the nature and strength of the interest of
19      each jurisdiction in the application of its own law to determine
        which state's interest would be more impaired if its policy were
20      subordinated to the policy of the other state, and then ultimately
        applies the law of the state whose interest would be more impaired
21      if its law were not applied.

22  *Id.* (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010).  Thus, the Court first

23  looks to California law then to the laws governing the foreign jurisdictions to determine whether

24  other state's interests outweigh California's interests.

25                    i.        *California Breach of Express Warranty*

26      California has adopted the Uniform Commercial Code.  Section 2313 states

27          (1) Express warranties by the seller are created as follows:

28          (a) Any affirmation of fact or promise made by the seller to the

13

buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Cal. Com. Code § 2313 (West).  Thus, to prevail on a claim for breach of express warranty under California law, the plaintiff must prove "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotations omitted).  "Pre-Uniform Commercial Code law governing express warranties required the purchaser to prove reliance on specific promises made by the seller."  *Id.* (citing *Hauter v. Zogarts*, 14 Cal. 3d 104, 115, (1975)).  However, the Uniform Commercial Code does not require such proof.  *Id.*   The official comment to section 2313 explains that "[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.  Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof."  Cal. U. Com. Code com., 23A pt. 1, West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 2313, com. 3, p. 296); *see also Weinstat*, 180 Cal. App. 4th at 1227 (quoting this section of the official comment to section 2313).

"As a general rule, privity of contract is a required element of an express breach of warranty cause of action.  However, privity is not an absolute requirement for express warranty claims under California law, because reliance on a seller's representations may provide the basis

1   for an express warranty claim even absent privity." *Coleman v. Boston Scientific Corp.*, No.

2   1:10-CV-01968-OWW, 2011 WL 3813173, at *4 (E.D. Cal. Aug. 29, 2011) (internal citations

3   and quotations omitted).  Thus, in California, a plaintiff must adequately plead reliance or privity

4   in order to succeed on a breach of express warranty claim.

5                          *ii.      Conflict of Laws*

6          Plaintiffs have provided the Court with a table that purports that there are no material

7   differences in the breach of express warranty laws governing the 33 jurisdictions included within

8   Plaintiffs' proposed class.  (*See* Fisher Ex. 27.)  Defendant asserts that Plaintiffs' table is

9   inaccurate and mischaracterizes the different state laws.  (ECF No. 111 at 20–21.)  This Court

10  agrees.

11         Upon review, the chart mischaracterizes many of the proposed jurisdictions' legal

12  requirements for a breach of express warranty.  For example, Plaintiffs' chart states that Arizona

13  does not require privity for a breach of express warranty claim and cites *In re Horizon Organic*

14  *Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1339 (S.D. Fla.

15  2013), in support of their contention.  In reviewing *In re Horizon*, the Court notes that the

16  opposite is true.  *See id.* (holding that a plaintiff may not proceed with "a breach of warranty

17  action under the [Uniform Commercial Code] against a manufacturer not in privity with the

18  plaintiff") (citing *Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 640

19  P.2d 851, 856 (1982)).  Similarly, the chart states that privity need not be shown on a breach of

20  express warranty claim under Florida law.  However, the Court finds that the privity requirement

21  in Florida is not quite as straight forward as Plaintiffs claim. "Florida law with regard to express

22  warranty claims and the requirement of privity is not as well-settled as the law that applies to

23  breach of implied warranty claims.  Although the Florida Supreme Court has never spoken on this

24  issue, the Court acknowledges that several courts have held that absent privity there can be no

25  claim for the breach of an express warranty." *Mardegan v. Mylan, Inc.*, No. 10-14285-CIV, 2011

26  WL 3583743, at *6 (S.D. Fla. Aug. 12, 2011).[6]  Similarly, the chart states that Georgia does not

27  ─────────────
    [6]     *Compare T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (stating that "[t]he law of
28  Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of
    contract with the defendant."); *Weiss v. Johansen*, 898 So.2d 1009, 1011 (2005) (stating that "in order to recover for

                                            15

1    require privity, when in fact the case cited by Plaintiffs, *Stewart v. Gainesville Glass Co.*, 131 Ga.

2    App. 747, 748 (1974) *aff'd*, 233 Ga. 578, 212 S.E.2d 377 (1975), states the opposite.  Plaintiffs

3    state that New Hampshire does not require reliance, but the case cited by Plaintiffs holds that a

4    manufacturer is not liable for breach of warranty if the representation at issue did not actually

5    influence the plaintiffs' purchase decision.  *See Kelleher v. Marvin Lumber & Cedar Co.*, 891

6    A.2d 477, 502 (2002) (utilizing an intermediate reliance requirement in which the jury is decide

7    whether representations in the catalog were part of the basis of the bargain).  As to North Dakota,

8    Plaintiffs state the privity requirement has been abolished, but the case they cite acknowledges the

9    issue is not settled.  *See Falcon for Imp. & Trade Co. v. N. Cent. Commodities, Inc.*, No. A2-01-

10   138, 2004 WL 224676, at *2 (D. N.D. Jan. 30, 2004) ("[T]he decision to abolish the vertical

11   privity requirement so that a non-privity plaintiff may recover direct economic damages for

12   breach of express warranty is one for the North Dakota Supreme Court.").  Finally, Plaintiffs also

13   seek to include class members from Ohio.  However, the Northern District of Ohio has already

14   ruled that an appliance's failure to meet the energy star program requirements after being

15   advertised with the energy star logo does not suffice as a breach of express warranty claim under

16   Ohio law.  *See Savett v. Whirlpool*, No. 12 CV 310, 2012 WL 3780451, at *9 (N.D. Ohio Aug.

17   31, 2012).

18          Based on the foregoing, Plaintiffs have not met their burden of showing that the laws of

19   the 33 jurisdictions do not have material differences.  Thus, the Court turns to the second prong of

20   California's three step governmental interest test and looks to whether "each jurisdiction's

21   interest in the application of its own law under the circumstances of the particular case [in order]

22   _____

23   the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant.");
     *Intergraph Corp v. Stearman*, 555 So.2d 1282, 1283 (1990) (stating that "[p]rivity is required in order to recover
     damages from the seller of a product for breach of express or implied warranties.") *with Fed. Ins. Co. v. Lazarra*

24   *Yachts of North Amer., Inc.*, No. 8:09–CV–607–T–27MAP, 2010 WL 1223126, at *6 (M.D. Fla. March 25, 2010)
     (applying Florida law and finding that a breach of express warranty claim could be brought under the Magnuson

25   Moss Warranty Act despite a lack of privity and stating that "[c]ourts have relaxed the privity requirement where the
     express warranty was clearly intended to extend coverage to subsequent owners."); *Smith v. Wm. Wrigley Jr. Co.*,
     663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009) (applying Florida law and denying a motion to dismiss an express

26   warranty claim on lack of privity based on "the particular facts of the case"); *Rentas v. DaimlerChrysler Corp.*, 936
     So.2d 747, 751 (2006) (allowing an express warranty claim to proceed despite the absence of privity and stating that

27   "[t]his court and other Florida appellate courts have expressly enforced written warranties in suits brought under the
     [Magnuson–Moss Warranty Act] against manufacturers where privity did not exist between the manufacturer and the

28   vehicle owner.").

1    to determine whether a true conflict exists." *Mazza*, 666 F.3d at 590.

2                    *iii.      Interests of Foreign Jurisdictions*

3           It is a principle of federalism that "each State may make its own reasoned judgment about

4    what conduct is permitted or proscribed within its borders." *State Farm Mut. Auto. Ins. Co. v.*

5    *Campbell*, 538 U.S. 408, 422 (2003). "[E]very state has an interest in having its law applied to its

6    resident claimants." *Zinser*, 253 F.3d at 1187. California law acknowledges that "a jurisdiction

7    ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders...."

8    *McCann*, 48 Cal. 4th at 97 (citations omitted). The Refrigerator sales at issue in this case took

9    place within 33 different jurisdictions, and each state has a strong interest in applying its own

10   consumer protection laws to those transactions. *See Mazza*, 666 F.3d at 591–92. "In our federal

11   system, states may permissibly differ on the extent to which they will tolerate a degree of

12   lessened protection for consumers to create a more favorable business climate for the companies

13   that the state seeks to attract to do business in the state." *Id.* at 592. "As the California's

14   Supreme Court recently re-iterated, each state has an interest in setting the appropriate level of

15   liability for companies conducting business within its territory." *Id.* (citing *McCann*, 48 Cal. 4th

16   at 91). "Getting the optimal balance between protecting consumers and attracting foreign

17   businesses, with resulting increase in commerce and jobs, is not so much a policy decision

18   committed to . . . district courts within our circuit, as it is a decision properly to be made by the

19   legislatures and courts of each state." *Id.* Thus, this Court concludes that each state has a strong

20   individual interest in applying its laws to sales that occurred within its borders and involving its

21   citizens.

22                    *iv.      Which State Interest is Most Impaired*

23          "California recognizes that 'with respect to regulating or affecting conduct within its

24   borders, the place of the wrong has the predominant interest.'" *Id.* at 593 (quoting *Hernandez v.*

25   *Burger*, 102 Cal. App. 3d 795, 802 (1980), *cited with approval by Abogados v. AT & T, Inc.*, 223

26   F.3d 932, 935 (9th Cir. 2000)). Thus, California considers the "place of the wrong" to be the state

27   where the last event necessary to make the actor liable occurred. *See McCann*, 48 Cal.4th at 94

28   n.12. Here, the last events necessary for liability as to the foreign class members—

                                                  17

1  communication of the advertisements to the claimants and their reliance thereon in purchasing the

2  Refrigerators—took place in the various foreign states, not in California.  These foreign states

3  have a strong interest in the application of their laws to transactions between their citizens and

4  corporations doing business within their state.  In contrast, California's interest in applying its law

5  to residents of other states is attenuated.  *See id.*; *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)

6  ("While protecting local investors is plainly a legitimate state objective, the State has no

7  legitimate interest in protecting nonresident shareholders.  Insofar as the Illinois law burdens out-

8  of-state transactions, there is nothing to be weighed in the balance to sustain the law.")

9         Under the facts and circumstances of this case, the Court finds that each class member's

10  breach of express warranty claim should be governed by the laws of the jurisdiction in which the

11  transaction took place.  Therefore, the Court finds that a class consisting of plaintiffs who

12  purchased their Refrigerators within the state of California is appropriate and would meet the

13  predominance test set forth in Rule 23(b)(3).  However, the Court finds that the differences and

14  nuances involving the laws governing the Plaintiffs' breach of express warranty claims prevents

15  common questions of law and fact from predominating any such claims that the proposed class

16  consisting of 33 jurisdictions may assert.  "[W]here the applicable law derives from the law of the

17  50 states, as opposed to a unitary federal cause of action, differences in state law will 'compound

18  the [ ] disparities' among class members from the different states."  *Chin v. Chrysler Corp.*, 182

19  F.R.D. 448, 453 (D. N.J. 1998) (quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 624

20  (1997)).  Thus, the Court turns to the second Rule 23(b)(3) requirement, superiority.

21             *2.      Superiority*

22         The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class

23  action is superior to other available methods for the fair and efficient adjudication of the

24  controversy."  Fed. R. Civ. P. 23(b)(3).  "Where it is not economically feasible to obtain relief

25  within the traditional framework of a multiplicity of small individual suits for damages, aggrieved

26  persons may be without any effective redress unless they may employ the class action device."

27  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *see also Ballard v. Equifax Check*

28  *Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce

1  compliance with consumer protection laws are 'desirable and should be encouraged.'").

2       Given the small size of each class member's claims in this situation, class treatment is not

3  merely the superior, but the only manner in which to ensure fair and efficient adjudication of the

4  present action.  *See* Bruno, 280 F.R.D. at 537 (finding superiority where the proposed class

5  member's individual claims were minimal); *Pecover v. Elec. Arts Inc.*, No. C 08-2820, VRW

6  2010 U.S. Dist. LEXIS 140632, at *68 (N.D. Cal. Dec. 21, 2010) ("[T]he modest amount at stake

7  for each purchaser renders individual prosecution impractical.  Thus, class treatment likely

8  represents plaintiffs' only chance for adjudication.")  Furthermore, "each member of the class

9  pursuing a claim individually would burden the judiciary, which is contrary to the goals of

10  efficiency and judicial economy advanced by Rule 23."  *Bruno*, 280 F.R.D. at 537–38; *see also*

11  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching

12  focus remains whether trial by class representation would further the goals of efficiency and

13  judicial economy.").  Thus, the Court finds that as to the proposed subclass of California

14  Plaintiffs, class certification is superior as to all of Plaintiffs' instant causes of action.  However,

15  the Court is not convinced that litigating 33 different jurisdictions' warranty law is superior to

16  other available methods for the fair and efficient adjudication of the controversy.  *See* Fed. R.

17  Civ. P. 23(b)(3).

18       As discussed previously in reference to predominance, the Court finds that Plaintiffs have

19  not met their burden of showing that litigating the warranty laws of 33 jurisdictions in one class

20  action is superior to other available methods of litigating these claims.  Specifically, the Court is

21  not convinced that the complexities involved in this matter can be overcome by the creation of

22  numerous subclasses.  "[W]hen the complexities of class action treatment outweigh the benefits

23  of considering common issues in one trial, class action treatment is not the 'superior' method of

24  adjudication. . . . If each class member has to litigate numerous and substantial separate issues to

25  establish his or her right to recover individually, a class action is not 'superior'."  *Zinser*, 253 F.3d

26  at 1192; *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a

27  few of the laws of the fifty states differ, the district judge would face an impossible task of

28  instructing a jury on the relevant law, yet another reason why class certification would not be the

1    appropriate course of action.")  For these reasons, the Court finds that this class action is a

2    superior way to litigate Plaintiffs' claims as to California residents, but declines to find that

3    Plaintiffs' proposed 33 jurisdiction class meets the superiority requirement.

4         **IV.   CONCLUSION**

5              For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART

6    Plaintiffs' Motion for Class Certification (ECF No. 105).  The Court orders as follows:

7              1.      Plaintiffs' motion to certify a class of all persons who purchased KitchenAid

8    KSRG25FV** and KSRS25RV** model refrigerators that were mislabeled as Energy Star

9    qualified in California is GRANTED as to all existing causes of action.

10             2.      Plaintiffs' motion to certify a 32-state and the District of Columbia ("D.C.") class

11   defined as all persons who purchased KitchenAid KSRG25FV** and KSRS25RV** model

12   refrigerators that were mislabeled as Energy Star qualified is DENIED.

13             IT IS SO ORDERED.

14   Dated:  April 27, 2015

15

16   _____

17   Troy L. Nunley
     United States District Judge

18

19

20

21

22

23

24

25

26

27

28