1
2
3
4
5

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: scott@bursor.com
          ltfisher@bursor.com

6
7
8
9

**FARUQI & FARUQI, LLP**
Barbara A. Rohr (State Bar No. 273353)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-Mail: brohr@faruqilaw.com

10

*Attorneys for Plaintiffs and Co-Lead Class Counsel*
*(Additional Counsel on Signature Page)*

11

12

UNITED STATES DISTRICT COURT

13

EASTERN DISTRICT OF CALIFORNIA

14
15

KYLE DEI ROSSI and MARK LINTHICUM,
on behalf of themselves and those similarly
situated,

Case No. 2:12-CV-00125-TLN-CKD

16

Plaintiffs,

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT**

17

v.

18

WHIRLPOOL CORPORATION,

19

Defendant.

Date:  May 18, 2017
Time:  2:00 p.m.
Courtroom:  2 - 15th Floor

20
21

Judge:  Honorable Troy L. Nunley

22
23
24
25
26
27
28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 18, 2017 at 2:00 p.m. before the Honorable

Troy L. Nunley, United States District Court Judge for the Eastern District of California, 501 I

Street, Sacramento, California 95814, Plaintiffs Kyle Dei Rossi and Mark Linthicum, by and

through the undersigned counsel of record, will move and hereby do move, pursuant to Fed. R.

Civ. P. 23(e), for entry of the [Proposed] Order Approving Class Action Settlement ("Final

Approval Order").

This motion is based on:  (1) this Notice of Motion, Motion and Memorandum in support

thereof, (2) the Declaration of L. Timothy Fisher in Support of Plaintiffs' Motions for Final

Approval of Class Action Settlement and for an Award of Attorneys' Fees, Costs and Expenses,

and Service Awards filed herewith, (3) the Supplemental Declaration of Kathleen Wyatt, filed

herewith, (4) the papers and pleadings on file, and (5) the arguments of counsel at the hearing on

the Motion.


Dated: March 3, 2017            **BURSOR & FISHER, P.A.**


By: _____*/s/ L. Timothy Fisher*_____
              L. Timothy Fisher

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:  scott@bursor.com
        ltfisher@bursor.com

**FARUQI & FARUQI, LLP**
Barbara A. Rohr (State Bar No. 273353)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Plaintiffs and Class Counsel*

**VOZZOLO LLC**
Antonio Vozzolo (*pro hac vice*)
345 Route 17 South
Upper Saddle River, NJ 074578
Tel: 201-630-8820
Fax: 201-604-8400
Email: avozzolo@vozzolo.com

*Additional Counsel for Plaintiffs*

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION .................................................................................................... 1

II.    BACKGROUND OF THE CASE .......................................................................... 2

    A.    Pleadings and Motions ............................................................................. 2

    B.    Discovery ................................................................................................. 4

    C.    Class Certification ................................................................................... 5

    D.    Settlement ................................................................................................ 6

III.    THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ................................................................................................... 7

IV.    THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE AND REASONABLE ..................................................................................................... 8

    A.    Terms of the Settlement .......................................................................... 8

        1.    Monetary Relief for Class Members ........................................... 8

        2.    Release and Discharge of Claims ................................................ 9

        3.    Payment of Attorneys' Fees and Expenses ................................. 9

        4.    Compensation for the Class Representatives ............................. 10

        5.    Payment of Notice and Administrative Fees .............................. 10

    B.    Strength of Plaintiffs' Case ................................................................... 10

    C.    Risk of Continuing Litigation ............................................................... 11

    D.    Risk of Maintaining Class Action Status .............................................. 12

    E.    Extent of Discovery and Status of Proceedings .................................... 13

    F.    Experience and Views of Counsel ......................................................... 14

    G.    Presence of a Governmental Participant ............................................... 14

    H.    Reactions of Class Members .................................................................. 15

V.    NOTICE ............................................................................................................. 15

VI.    CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979)................................................................................. 7

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................................. 7, 8, 15

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)................................................................................. 7, 10

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ..................................................... 11, 12

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ................................................................................ 13

*Fulford v. Logitech, Inc.*,
  2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ....................................... 12

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)......................................................... 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................... 8, 15

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................. 13

*In re Netflix Privacy Litig.*,
  No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............... 7, 12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................................................. 14

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)..................................................................................... 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).............................................................................. 15

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982).............................................................................. 7, 10

*Petersen v. CJ Am., Inc.*,
  2016 U.S. Dist. LEXIS 140187 (S.D. Cal. Sept. 30, 2016)..................................... 14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................ 10, 11, 14

**STATUTES**

28 U.S.C. § 1715(b) .......................................................................................................... 10, 14

42 U.S.C. § 6295(b) ................................................................................................................. 2

**RULES**

Fed. R. Civ. P. 8(a) ................................................................................................................. 2

Fed. R. Civ. P. 9(b) ................................................................................................................. 2

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 2

Fed. R. Civ. P. 23 ............................................................................................................... 2, 7

Fed. R. Civ. P. 23(e) ............................................................................................................... 8

Fed. R. Civ. P. 23(e)(2) .......................................................................................................... 7

Fed. R. Civ. P. 23(f) ............................................................................................................... 6

**REGULATIONS**

10 C.F.R. § 430.32(a) .............................................................................................................. 2

**OTHER AUTHORITIES**

*Manual for Complex Litigation,* Fourth § 13.11 .............................................................. 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Kyle Dei Rossi and Mark Linthicum (collectively "Plaintiffs") respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Motion").

## I.    INTRODUCTION

This is a class action suit brought by Plaintiffs on behalf of themselves and all others similarly situated against Defendant Whirlpool Corporation ("Whirlpool") for misrepresenting its refrigerators models KSRG25FV** or KSRS25RV** (collectively "Refrigerators")[1] as Energy Star qualified and labeling them with the Energy Star logo.

This Court granted preliminary approval of the Settlement[2] on June 28, 2016.  The Settlement Class encompasses all end-users who purchased the Refrigerators in California.  Under the terms of the Settlement, Whirlpool has agreed to pay each member of the Settlement Class who submitted a valid claim either (1) a $55 cash payment, less any voluntary payment paid by Whirlpool through Whirlpool's Voluntary Customer Satisfaction Program, or (2) a 10% rebate of the purchase price of a new KitchenAid-brand major appliance.  2/5/2016 Fisher Decl., Ex. A §§ IV.B-C (Dkt. No. 173-1).  Plaintiffs' damages expert calculated that Whirlpool's conduct caused Class Members to face $66.65 in increased energy expenses.  *See* 7/31/14 Declaration of Colin Weir ("7/31/2014 Weir Decl.") at 7.  The Settlement thus provides Class Members with an 82.5% (55/66.65) recovery of the increased energy costs over the average life of the Refrigerator – without the delay or the risk of continued litigation.

In accordance with the notice program approved by the Court, direct mail and email notice was sent to end-user purchasers for whom Whirlpool had address information.  *See* Declaration of Kathleen Wyatt ("Wyatt Decl."), ¶¶ 1-10.  To date, no Class Member has submitted an objection or

---

[1] The last two digits of KitchenAid models KSRG25FV** and KSRS25RV**, indicated by **, merely describe their color, *e.g.*, KSRG25FVMS (monochromatic stainless steel), KSRG25FVMT (monochromatic satina), KSRG25FVBL (black), and KSRG25FVWH (white-on-white).

[2] The Class Action Settlement Agreement and Release of all Claims ("Settlement" or "Settlement Agreement") and its exhibits are attached as Exhibit A to the 2/5/2016 Declaration of L. Timothy Fisher ("2/5/2016 Fisher Decl."), filed with the Motion for Preliminary Approval, Dkt. No. 173. All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement.

opted out.  *Id.* ¶¶ 9-10; Declaration of L. Timothy Fisher in Support of Motion for an Award of

Attorneys' Fees, Costs and Expenses ("3/3/2017 Fisher Decl."), ¶ 36.  As shown below, the

Settlement not only satisfies Rule 23's "fair, reasonable, and adequate" standard, it is an

outstanding result for Plaintiffs and the Settlement Class.  The Court should grant final approval.

## II.    BACKGROUND OF THE CASE

### A.    Pleadings and Motions

On January 17, 2012, Plaintiffs filed their Class Action Complaint, which alleged that

Whirlpool's KSRG25FV** and KSRS25RV** model refrigerators were mislabeled as Energy Star

qualified in violation of the federal standard for energy efficiency under the National Appliance

Energy Conservation Act of 1987 ("NAECA").  *See* Dkt. No. 1; *see also* 42 U.S.C. § 6295(b); 10

C.F.R. § 430.32(a).  Plaintiffs alleged that although the Refrigerators were advertised and marketed

as Energy Star qualified, the Refrigerators consumed significantly more energy than stated on the

labels and in advertising.  Plaintiffs brought claims for breach of express warranty, breach of the

implied warranty of merchantability, unjust enrichment, violation of the Magnuson-Moss Warranty

Act, violation of the California Consumer Legal Remedies Act ("CLRA"), violation of the

California Unfair Competition Law ("UCL"), violation of the California False Advertising Law

("FAL"), and violation of the consumer protection laws of the various states.

On March 12, 2012, Whirlpool moved to dismiss Plaintiffs' complaint pursuant to FRCP

12(b)(6).  Dkt. No. 18.  Whirlpool alleged that Plaintiffs had failed to satisfy the requirements of

FRCP 8(a) and 9(b).  Dkt. No. 18-1.  Whirlpool also claimed that Plaintiffs' warranty claims were

deficient because they had failed to adequately allege any warranty and the manufacturer's limited

written warranty had expired.  *Id.*  That same day, Whirlpool also moved to strike Count VIII of

Plaintiffs' complaint on the grounds that Plaintiffs had not separately asserted claims under the

consumer protection laws of the 49 states (other than Ohio) and the District of Columbia.  Dkt. No.

17.  Plaintiffs opposed Whirlpool's motions to dismiss and to strike on July 11, 2012.  Dkt. Nos. 36

and 38.

On September 5, 2012, Judge Mendez held a hearing on Whirlpool's motions.  The Court

granted the motion to dismiss with leave to amend except on Plaintiffs' claim for unjust

enrichment, which was dismissed with prejudice.  Dkt. No. 55.  The Court denied Whirlpool's motion to strike as moot.  *Id.*  The Court requested that Plaintiffs include additional allegations in their amended complaint regarding Plaintiffs' understanding of the Energy Star logo and their reliance on the Energy Star logo in connection with their purchases of their refrigerators.  The Court also requested that Plaintiffs add additional facts regarding Plaintiffs' 2008 purchases of their refrigerators and the disqualification of those refrigerators by the Department of Energy ("DOE") in 2011.

On September 25, 2012, Plaintiffs filed their First Amended Class Action Complaint.  Dkt. No. 56.  Plaintiffs' First Amended Complaint added 17 pages of additional allegations regarding the Energy Star program, statements made by Whirlpool regarding the Energy Star program and Plaintiffs' purchases of their refrigerators.  *Id.*  The amended complaint also removed Best Buy and Pacific Sales as Defendants.

On October 15, 2012, Whirlpool moved to dismiss Plaintiffs' amended complaint. Whirlpool again argued that the Energy Star logo could not be the basis for a breach of warranty claim because the logo "contains no affirmation of any specific fact."  Dkt. No. 59-1 at 1. Whirlpool also claimed that many of the statements included in Plaintiffs' amended complaint could not be a basis for any of Plaintiffs' claims because there was no allegation that Plaintiffs saw or relied on those statements prior to purchasing their refrigerators.  *Id.*  On December 5, 2012, Plaintiffs filed their opposition to Whirlpool's motion to dismiss.  Dkt. No. 62.

On March 28, 2013, Judge Mendez issued an order granting Whirlpool's motion to dismiss without prejudice.  Dkt. No. 67.  The Court held that Plaintiffs had "failed to plead the exact terms of the alleged warranty."  *Id.* at 8.  The Court also concluded that Plaintiffs had failed to cite "any misrepresentation that Defendant conveyed to them."  *Id.* at 13.  Nevertheless, the Court granted Plaintiffs leave to amend for a second time, but warned that "this is the second chance [the Court] has given Plaintiffs to properly plead their claims in this action and it is unlikely that the Court will permit any further chances to amend in order to avoid dismissal with prejudice of this case."  *Id.* at 17-18.

1    Plaintiffs filed their 77-page Second Amended Class Action Complaint on April 24, 2013.

2    Dkt. No. 71.  Plaintiffs added 26 additional pages of allegations detailing the precise

3    representations made to Plaintiffs, the history and significance of the Energy Star logo and

4    program, and Whirlpool's participation in the Energy Star program.

5    Whirlpool filed its third motion to dismiss on May 21, 2013.  Dkt. No. 72.  Whirlpool again

6    argued that Plaintiffs failed to "plead what allegedly false or misleading information Plaintiffs

7    personally understood the Energy Star logo to convey prior to purchasing their KitchenAid

8    refrigerators."  *Id.* at 1.  Plaintiffs opposed Whirlpool's motion on August 5, 2013.  Dkt. No. 77.

9    On October 25, 2013, this Court[3] issued an order granting Whirlpool's motion in part and

10   denying it in part.  Dkt. No. 81.  The Court held that "Defendant's adhesion of the Energy Star

11   certification to its products falls within the statutory definition of an express warranty pursuant to

12   California Law," and that "Plaintiffs have sufficiently pled their breach of express warranty claim."

13   *Id.* at 7-8.  The Court also held that Plaintiffs had properly alleged their claims under the CLRA,

14   FAL and the unfair and fraudulent prongs of the UCL.  *Id.* at 12-15, 17-19.  The Court granted

15   Whirlpool's motion to dismiss Plaintiffs' claims for breach of the implied warranty of

16   merchantability, for violation of the Magnusson-Moss Warranty Act, and under the unlawful prong

17   of the UCL.  *Id.* at 9-12, 16-17.

18   On November 18, 2013, Whirlpool filed its answer to Plaintiffs' Second Amended Class

19   Action Complaint.  Dkt. No. 86.  Whirlpool's answer ended a nearly two-year battle over the

20   pleadings.

21   **B.    Discovery**

22   On December 23, 2013, Plaintiffs served their First Set of Requests for Production of

23   Documents.  Over the next nine months, Whirlpool produced 17,629 pages of documents.

24   Plaintiffs' counsel spent significant time reviewing and analyzing those documents in preparation

25   for depositions and for their motion for class certification.

26

27

28   [3] This case was re-assigned from Judge Mendez to Your Honor on April 3, 2013.  Dkt. No. 68.

1   Plaintiffs also served nine interrogatories on Whirlpool seeking information about, among

2   other things, the number of Refrigerators sold, the identity of all retailers who sold the refrigerators

3   and the revenue generated from the sales of the refrigerators.

4   Whirlpool also served discovery on Plaintiffs.  Plaintiffs responded to Whirlpool's

5   interrogatories and document requests on February 12, 2014.  Plaintiffs amended their responses on

6   June 4, 2014.  Whirlpool took the deposition of Plaintiff Linthicum in Los Angeles on June 9,

7   2014.  Whirlpool took the deposition of Plaintiff Dei Rossi on June 10, 2014, in Sacramento.

8   **C.      Class Certification**

9   On July 31, 2014, Plaintiffs filed their motion for class certification.  Dkt. No. 105.

10  Plaintiffs submitted 35 exhibits totaling 325 pages of evidence with their motion.  Dkt. Nos. 105-2-

11  7.  Plaintiffs Dei Rossi and Linthicum submitted declarations in support of the motion.  Dkt. Nos.

12  105-8 and 105-9.  Additionally, Plaintiffs' damages expert Colin Weir of Economics and

13  Technology, Inc., submitted a declaration in support of the motion.  Mr. Weir proposed two

14  methods of calculating classwide damages.  First, Mr. Weir proposed a calculation of energy

15  expense damages wherein consumers would receive payment for the additional expense associated

16  with operating the Refrigerators at less energy-efficient levels.  7/31/14 Weir Decl. at 3-5.  Mr.

17  Weir estimated the energy expense damages at $66.65 over the estimated lifespan of the

18  Refrigerators.  *Id*.  Mr. Weir also proposed a regression analysis to determine the portion of the

19  price attributable to the Energy Star logo.  *Id*. at 6-16.

20  On September 18, 2014, Whirlpool filed its opposition to Plaintiffs' motion for class

21  certification.  Dkt. No. 111.  Whirlpool submitted eight declarations in support of their opposition.

22  Whirlpool submitted declarations from five expert witnesses as well as three Whirlpool employees.

23  It also filed a motion to strike Mr. Weir's declaration in support of Plaintiffs' motion for class

24  certification.

25  After Whirlpool filed its opposition to the motion for class certification, Plaintiffs took the

26  depositions of Whirlpool's experts Dr. Laurentius Marais, Dr. Carol Scott and Dr. John Fessler on

27  October 9, 2014, October 15, 2014 and October 17, 2014, respectively.

28

1    Plaintiffs filed their reply in support of their motion for class certification on November 24,

2    2014.  Plaintiffs submitted 27 additional exhibits with their class certification reply brief as well as

3    a declaration from Dr. Elizabeth Howlett regarding the significance of the Energy Star logo and its

4    impact on consumers from a marketing perspective.  Plaintiffs also filed an opposition to

5    Whirlpool's motion to strike Mr. Weir's declaration.

6    Whirlpool subsequently filed a motion to strike Dr. Howlett's declaration.  Plaintiffs filed

7    an opposition to that motion on January 2, 2014.  Dkt. No. 140.

8    On April 28, 2015, this Court granted Plaintiffs' motion for class certification in part and

9    denied it in part.  Dkt. No. 160.  The Court certified a class of all persons who purchased the

10   Refrigerators in California.  *Id*. at 20.  The Court denied Plaintiffs' motion to certify a class in any

11   other state and Whirlpool's motions to strike the declarations submitted by Mr. Weir and Dr.

12   Howlett.  *Id*. at 1-2, fn. 1 and 20.

13   On May 12, 2015, Whirlpool filed a petition for permission to appeal pursuant to Fed. R.

14   Civ. P. 23(f) with the Ninth Circuit Court of Appeals.  Plaintiffs filed their response to Whirlpool's

15   23(f) petition on May 22, 2015.  31.  On July 29, 2015, the Ninth Circuit Court of Appeals denied

16   Whirlpool's 23(f) petition.

17   **D.    Settlement**

18   Shortly after the Court issued its order on class certification, the parties began to have

19   informal discussions regarding settlement.  3/3/2017 Fisher Decl., ¶ 32.  On October 8, 2015, the

20   parties had a full-day settlement meeting in New York City.  *Id*.  At the conclusion of that meeting,

21   the parties executed a preliminary term sheet setting forth the basic terms of the settlement.  *Id*.

22   Specifically, the parties agreed that the settlement would provide for a $55 cash payment, or a 10%

23   rebate on the purchase of another KitchenAid-brand appliance.  *Id*.  On October 28, 2015, the

24   parties executed a binding term sheet that more fully memorialized the agreement reached at the

25   October 8 meeting.  *Id.*, ¶ 33.

26   For the next three months, the parties continued negotiating the terms of the settlement and

27   working on preparing the settlement agreement and motion for preliminary approval.  *Id.*, ¶ 34.

28   The negotiations were difficult and fraught with challenges that imperiled the settlement several

1 times. *Id.* Ultimately, the parties executed the Class Action Settlement Agreement on February 5,

2 2016. Exh. A to Dkt. No. 173-1. Plaintiffs filed their motion for preliminary approval of the

3 settlement shortly thereafter. Dkt. No. 173.

4       On June 28, 2016, the Court granted Plaintiffs' motion for preliminary approval. Dkt. No.

5 176.

6 **III.**     **THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

7       In evaluating a class action settlement under Rule 23, a district court must determine

8 whether the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

9 In evaluating the fairness of a class action settlement, courts are mindful that the law favors the

10 compromise and settlement of class action suits. *See*, *e.g.*, *Churchill Village, L.L.C. v. Gen. Elec.*,

11 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

12 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The *Manual*

13 *for Complex Litigation* states:

14
15         The judge can encourage the settlement process by asking at the first pretrial conference whether settlement discussions have occurred or might be scheduled.

16
17 *Manual*, Fourth § 13.11 at 167. "Courts have afforded a presumption of fairness and

18 reasonableness of a settlement agreement where that agreement was the product of non-collusive,

19 arms' length negotiations by capable and experienced counsel." *In re Netflix Privacy Litig.*, No.

20 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013). Where, as here, the

21 settlement negotiations were conducted at arm's-length by experienced class action counsel,

22 counsel's assessment and judgment are entitled to a presumption of reasonableness, and the court is

23 entitled to rely heavily upon counsel's assessment and judgment. *Boyd v. Bechtel Corp.*, 485 F.

24 Supp. 610, 622 (N.D. Cal. 1979). Indeed, "the court's intrusion upon what is otherwise a private

25 consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

26 necessary to reach a reasoned judgment that the agreement is not the product of fraud or

27 overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

28 whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

Ultimately, however, the decision to approve a settlement is committed to the sound discretion of the trial judge. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## IV.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE AND REASONABLE

In answering the question of whether a settlement is fair, adequate and reasonable as prescribed by Rule 23(e), district courts have been instructed to balance several factors:  (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026; *Churchill*, 361 F.3d at 575.   Here, the balance of the factors demonstrates that settlement warrants final approval because it is fair, adequate and reasonable.

### A.     Terms of the Settlement

#### 1.     <u>Monetary Relief for Class Members</u>

Pursuant to the terms of the Settlement, Class Members can choose one of the following Settlement benefits:

**(1)     Cash Option**: Whirlpool will provide a cash payment of $55, less any voluntary payment paid by Whirlpool through Whirlpool's Voluntary Customer Satisfaction Program.  Each Class Member is entitled to one cash payment of $55 for each Class Refrigerator that he or she purchased.  For example, if a Class Member bought two Class Refrigerators, then that Class Member would be eligible to receive two cash payments of $55 each, less any voluntary payment paid by Whirlpool through Whirlpool's Voluntary Customer Satisfaction Program;[4] or, in the alternative,

**(2)     Rebate Option:** Whirlpool will provide a 10% rebate of the purchase price of a New KitchenAid-brand Major Appliance, without any cap as to the maximum amount of the rebate, to any member of the Class who submits a valid

---

[4] If a Class Member has already received compensation through Whirlpool's Voluntary Customer Satisfaction Program, and if that compensation exceeded $55, then such Class Member is not entitled to any cash payment from Whirlpool.

claim.  The rebate for the purchase of a New KitchenAid-brand Major Appliance will be 10% off the retail purchase price (not to include sales taxes, delivery fees, and installation charges).  Such rebate shall be in addition to any other sales promotion that Whirlpool or any retailer or seller offers towards a New KitchenAid-brand Major Appliance.  Each Class Member shall be entitled to one rebate for each Class Refrigerator that he or she purchased.  If a Class Member bought two Class Refrigerators, for example, then that Settlement Class Member would be eligible to receive two rebates.

2/5/2016 Fisher Decl., Ex. A §§ IV.B-C (Dkt. No. 173-1).

Plaintiffs' damages expert Colin B. Weir calculated that Whirlpool's conduct caused Class Members to incur $66.65 in increased energy expenses over the average lifespan of the Refrigerators.  *See* 7/31/14 Declaration of Colin Weir at 7.  The cash payment of $55 thus provides Class Members with an 82.5% (55/66.65) recovery of the increased energy costs without the delay or the risk of continued litigation.

### 2.    Release and Discharge of Claims

The Settlement Agreement provides for a specific release of all claims or causes of action that relate to any of the alleged defects, malfunctions, or inadequacies of the Refrigerators that are described and/or alleged in the Second Amended Class Action Complaint in this Action or that could have been alleged in this Action.  *See* 2/5/2016 Fisher Decl., Ex. A § IX (Dkt. No. 173-1).  The release will forever terminate this litigation involving Whirlpool and the Plaintiffs in this action, once the Settlement becomes effective as defined in the Settlement Agreement.

### 3.    Payment of Attorneys' Fees and Expenses

The Parties have agreed to negotiate in good faith concerning the award of attorneys' fees and costs to be paid by Whirlpool to Class Counsel.  *Id.* § VIII.  Parties failed to reach an agreement on an amount of attorneys' fees and costs as of yet.  Accordingly, Plaintiffs will move for an award of attorneys' fees, and Whirlpool will then have the opportunity to oppose that motion.  Under the terms of the Settlement Agreement, the amount of attorneys' fees and costs to

be paid to Class Counsel will be subject to Court approval and will be paid separate and apart from any amounts to be paid to the Class.  *Id.*

### 4.    Compensation for the Class Representatives

In addition to the relief discussed above, Whirlpool has also agreed to pay incentive awards to the Class Representatives, Mark Linthicum and Kyle Dei Rossi, in the amount of $4,000 each. *Id.* § VIII.D.

### 5.    Payment of Notice and Administrative Fees

Whirlpool shall pay directly to the administrator handling the administration of the Settlement the reasonable costs and expenses of providing notice to the Class and administering the settlement in accordance with the Settlement Agreement.[5]  *Id.* § V.

### B.    Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

When Plaintiffs' counsel engaged in arm's-length negotiations with Whirlpool's counsel, Plaintiffs' counsel was thoroughly familiar with the applicable facts, legal theories and defenses. 3/3/2017 Fisher Decl., ¶¶ 2-36.  Plaintiffs' theory of recovery is premised on the fact that the DOE and independent testing show that the Refrigerators did not meet Energy Star efficiency requirements for permitted energy use.  SAC ¶ 73-98.  On this basis, the DOE revoked the Energy Star status of these model refrigerators.  *Id.*  Plaintiffs claim that Whirlpool affixed Energy Star logos to the Refrigerators that substantially misrepresented the Refrigerators actual energy

---

[5] Notice costs also include notification to the Attorney General of the United States and the Attorney General of California in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

consumption.  *Id.*  As a result, Plaintiffs suffered a loss of money in the form of increased energy costs.  SAC ¶ 97.

Although Plaintiffs believe their claims have merit, Whirlpool's defenses reduced Plaintiffs' likelihood of success and posed significant risk to them obtaining any recovery.  For example, Whirlpool vigorously challenged Plaintiffs' theory of damages and asserted that there was no reliable method of calculating class wide damages.  Whirlpool also argued that Energy Star qualification does not violate the CLRA, UCL, and FAL because it is not likely to deceive a reasonable consumer.  Indeed, a trier of fact could conclude that a reasonable consumer would not rely on the Energy Star representation and decide the case in favor of Whirlpool.  Since it is clear that Whirlpool would present a vigorous defense, and that there is no assurance that the Class would prevail at trial, the Settlement provides the Class the best opportunity to obtain significant relief.  3/3/2017 Fisher Decl., ¶ 54.  The Settlement abrogates the risks that might have prevented the Class from obtaining relief.  *Id.*

### C.    Risk of Continuing Litigation

Proceeding in this litigation in the absence of settlement poses substantial risks to the Class.  The Class could recover nothing if Whirlpool were to obtain summary judgment, obtain an order excluding one or more of Plaintiffs' experts on a motion in limine, obtain an order decertifying the class, or prevail at trial or on appeal.  3/3/2017 Fisher Decl., ¶ 54.  Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Even assuming Plaintiffs survived Defendant's motions for summary judgment or to exclude Plaintiffs' experts, Plaintiffs would have to convince the jury to accept their expert's test for measuring energy efficiency and reject contrary testimony from Defendant's highly-qualified experts.  3/3/2017 Fisher Decl., ¶ 54.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version of energy efficiency would be accepted by the jury.  *Id.*  Even if Plaintiffs were to prevail on the issue of liability, there would still be risks in

establishing the existence of monetary damages based on increased energy use during the life of the Refrigerators.  *Id.*  The experience of Plaintiffs' counsel has taught them that the above-described factors can make the outcome of trial extremely uncertain.  *Id.*

Moreover, even if Plaintiffs were to prevail at trial, risks to the class remain.  For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298 *1 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100 million.  *Id.*  However, weeks later, the trial court overturned the verdict, entering judgment n.o.v. for the individual defendants, and ordered a new trial with respect to the corporate defendant.  *Id.* at *2.  By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of the appellate process.  Careful consideration of the above risks supports approval of the Settlement as fair, adequate and reasonable.

### D.   Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation discussed above, Plaintiffs would also face significant risks in maintaining class status through trial.  Whirlpool forcibly opposed class certification and continues to maintain that class certification is inappropriate.  Even though the Court certified a class, the Class could be decertified at any time on Whirlpool's, or the Court's own, motion.  *See In re Netflix Privacy Litigation*, 2013 WL 1120801, at *6 ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement") (internal citations omitted).

While Plaintiffs maintain that class treatment is appropriate in this case, the fact that actual energy damages vary between Class Members creates a risk of decertification.  3/3/2017 Fisher Decl., ¶ 54.  These energy damages can vary based on the energy costs where a Class Member lives and the way in which Class Members used their Refrigerators.  The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that Class members would be left without any recovery…at all."  *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).  Indeed, the Settlement Agreement provides a *guaranteed* recovery of $55 for Class Members who submit a Valid Claim form, regardless of the total number of claims submitted.  2/5/2016 Fisher Decl., Ex. A § IV.B (Dkt. No.

173-1).  Since the risks of maintaining a class action and succeeding on the merits are substantial, this bird in the hand is worth two in the bush, and the Settlement should be given final approval.

**E.       Extent of Discovery and Status of Proceedings**

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

In this case, there can be no doubt that Class Counsel had sufficient information to make an informed decision about the merits of this case.  This case is more than five-years old.  Plaintiffs survived a contentious battle over the pleadings, conducted extensive discovery and obtained an order certifying the Class.  3/3/17 Fisher Decl., ¶¶ 2-31.  Moreover, prior to filing this case, Plaintiffs' counsel conducted an extensive investigation, including: FOIA requests; consultation with an independent expert who provided a detailed analysis of each product's energy consumption and associated costs; a thorough search of publicly available sources to locate and analyze all available documents related to Defendant's Refrigerators, including the U.S. Department of Energy's guidelines and notices of noncompliance with the applicable federal energy conservation standards; extensive discussions with an economic consultant; review of documents from putative class members relating to the practices described in the complaints; legal research and briefing into the sufficiency of the claims; and numerous interviews with witnesses and members of the putative class.  *Id.*, ¶ 2-36.  During their investigation, counsel received, examined and analyzed information, documents, and materials that enabled them to assess the likelihood of success on the merits, and to enter into arm's-length negotiations fully informed.  *Id.*; *see Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) (there was sufficient evidence before the parties to allow them to consider the strengths and weaknesses of their respective cases).  The parties reached agreement on the terms of the Settlement Agreement through counsel's vigorous debate of legal and factual theories, and extensive arm's-length

negotiations. [6]  3/3/2017 Fisher Decl., ¶¶ 33-37.  Thus, this factor weighs strongly in favor of approval.

### F.    Experience and Views of Counsel

The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Plaintiffs' counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  3/3/2017 Fisher Decl., ¶¶ 37-41.  Indeed, this Court found that Faruqi & Faruqi, LLP, and Bursor & Fisher, P.A., are qualified to represent the settlement class as co-lead class counsel.  Order Granting Class Certification in Part at 9, Dkt. No. 160; Preliminary Approval Order at 9, Dkt. No. 176.  Based on their collective experience, Class Counsel concluded that the Settlement Agreement provides exceptional results for the Class while sparing the Class from the numerous uncertainties that would result from continued and protracted litigation.  3/3/2017 Fisher Decl., ¶ 54.  This factor also supports a finding by the Court that the Settlement is fair, adequate and reasonable.

### G.    Presence of a Governmental Participant

The government need not be involved with a class action settlement.  However, the Class Action Fairness Act ("CAFA") requires that notice of the settlement be delivered to the Attorney General of the United States, and to each attorney general of each state where class members reside.  28 U.S.C. § 1715(b).  Here, no attorney general has objected.  3/3/2017 Fisher Decl., ¶ 36. The lack of government involvement weighs in favor of approving the Settlement as agreed to by the Parties.  *See Petersen v. CJ Am., Inc.*, 2016 U.S. Dist. LEXIS 140187, at *8 (S.D. Cal. Sept. 30,

---

[6] The material terms of the Settlement Agreement were only realized after nearly four months of negotiations, consisting of numerous in-person meetings, telephonic conferences and e-mail exchanges between counsel for the parties beginning in October 2015 and continuing through February 2016.  Fisher Decl. ¶¶ 32-36.

2016) (granting final approval of a consumer class action settlement and acknowledged that appropriate notice regarding the settlement and that "no such objections or comments were received.").

### H.    Reactions of Class Members

To date, no Class Member has objected to, or opted out of, the Settlement.[7]  3/3/2017 Fisher Decl., ¶ 36; *see also Churchill*, 361 F.3d at 577 (weighing the low number of objectors in favor of settlement).  The absence of objections raises a strong presumption that the terms of the Settlement are favorable to the Class.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class action settlement are favorable to the class members.").  As of March 3, 2017, despite the fact that Notice was successfully mailed to over 2,037 Settlement Class Members (98% of the total 2,084 notices mailed), no class member opted out.  Supplemental Declaration of Kathleen Wyatt at ¶¶ 4, 9-10; *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness").  Since not a single Class Member has objected or opted out, this factors weighs heavily in favor of Settlement approval and the Court should find that the "presumption of fairness" applies in this case.

### V.    NOTICE

The Parties agreed to a notice plan, which the Court approved in its Preliminary Approval Order.  *See* Dkt. No. 173 at 5 ("The Court, having reviewed the proposed Prequalified Notice, FAQ, Publication Notice, Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and California laws and due process.").  The approved notice plan informed the Settlement Class of their rights and followed a comprehensive plan for delivery of notice by U.S.

---

[7] The deadlines for filing objections or opting out have not yet occurred.  The deadline to object or opt-out of the Settlement is March 10, 2017.  After that deadline, Plaintiffs will submit a supplemental declaration attesting to the number of objections and opt-outs.

postal mail, e-mail, publication and Internet placement, and was the best notice practicable given

the circumstances of this action.  Furthermore, the notices accurately informed Class Members of

the salient terms of the Settlement Agreement, the date of the final approval hearing and the rights

of all parties, including the rights to file objections and to opt out of the Class.  *See* Dkt. 176 at 4-5.

Indeed, this method of giving notice (similar if not identical to the method used in countless other

class actions) was appropriate because it provided a fair opportunity for members of the Settlement

Class to learn about the Settlement Agreement and to make an informed decision regarding the

proposed Settlement.  Thus, the notices and the procedures embodied in the notices amply satisfy

the requirements of due process.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval

to the Settlement Agreement and enter the Final Approval Order in the form submitted herewith.


Dated:  March 3, 2017                                   **BURSOR & FISHER, P.A.**


By: _____*/s/ L. Timothy Fisher*_____
                  L. Timothy Fisher

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: scott@bursor.com
         ltfisher@bursor.com

**FARUQI & FARUQI, LLP**
Barbara A. Rohr (State Bar No. 273353)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90067
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email:  brohr@faruqilaw.com

*Co-Lead Class Counsel*

**VOZZOLO LLC**
Antonio Vozzolo (*pro hac vice*)
345 Route 17 South
Upper Saddle River, NJ 074578

Tel: 201-630-8820
Fax: 201-604-8400
Email: avozzolo@vozzolo.com

*Additional Counsel for Plaintiffs*